1
2
3
4
5
6
7
8
9

Rob Bonta
Attorney General of California
Andrew M. Vogel
Supervising Deputy Attorney General
Norma N. Franklin
Deputy Attorney General
State Bar No. 266827
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6690
  Fax:  (916) 731-2121
  E-mail:  Norma.Franklin@doj.ca.gov
*Attorneys for Defendants*
*John Ainsworth, Executive Director of the*
*California Coastal Commission, and Donne*
*Brownsey, Chair of the California Coastal*
*Commission*

10

IN THE UNITED STATES DISTRICT COURT

11

FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

WESTERN DIVISION

13

14
15

**JACK WALL and WALL FAMILY TRUST,**

16

Plaintiffs,

17

v.

18
19
20
21

**JOHN AINSWORTH, in his official capacity as Executive Director of the California Coastal Commission, and DONNE BROWNSEY, in her official capacity as Chair of the California Coastal Commission,**

22

Defendants.

2:22-CV-4668-FMO-SK

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Date:  October 6, 2022
Time:  10:00 a.m.
Dept.:  Courtroom 6D
Judge:  Hon. Fernando M. Olguin

Trial Date:  None Scheduled
Action Filed: 7/8/2022

23
24
25
26
27
28

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE FERNANDO M. OLGUIN, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

In accordance with Federal Rule of Evidence 201, Defendants John Ainsworth and Donne Brownsey (Defendants) submit this Request for Judicial Notice in support of Defendants' concurrently-filed Motion to Dismiss Plaintiffs' Complaint for Declaratory and Injunctive Relief, currently noticed for hearing on October 6, 2022 at 10:00 a.m.

Defendants request judicial notice of the following:

1.  Plaintiffs' Verified Petition for Writ of Administrative Mandate and Complaint for Declaratory Relief filed on July 3, 2019 in the Superior Court of California, County of Santa Barbara, Case Number  19CV03464.  A true and correct copy of this document is attached hereto as Exhibit "A".

2.  Plaintiffs' Memorandum in Support of the Petition for Writ of Administrative Mandate filed on December 7, 2020 in the Superior Court of California, County of Santa Barbara, Case Number 19CV03464.  A true and correct copy of this document is attached hereto as Exhibit "B".

3.  Judgment on Plaintiffs' Petition for Writ of Mandate entered on June 4, 2021 in the Superior Court of California, County of Santa Barbara, Case Number 19CV03464.  A true and correct copy of this document is attached hereto as Exhibit "C".

4.  Appellants' Opening Brief on Appeal filed on August 16, 2021 in the California Court of Appeal, Second Appellate District, Division 6, Case Number B312912.  A true and correct copy of this document is attached hereto as Exhibit "D".

5.  The Opinion of the California Court of Appeal, Second Appellate District, Division 6, filed on December 16, 2021, and certified for publication in *Wall, et al.*

1  *v. California Coastal Commission*, 72 Cal.App.5th 943 (Cal. Ct. App. 2021).  A

2  true and correct copy of the Opinion is attached hereto as Exhibit "E".

3        Courts may take judicial notice of facts not subject to reasonable dispute that

4  can be accurately and readily determined from sources whose accuracy cannot be

5  reasonably questioned.  Fed. R. Evid. 201(b)(2).  For example, the court may take

6  judicial notice of the records of state courts, including state court written opinions

7  and final judgments.  *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984

8  (9th Cir. 1997)(noting that a court "may properly take judicial notice of the papers

9  filed" in both federal and state court proceedings); *Robinson Rancheria Citizens*

10  *Council v. Borneo, Inc.* 970 F.2d 244, 248 (9th Cir. 1992)("[W]e may take notice of

11  proceedings in other courts, both within and without the federal judicial system, if

12  those proceedings have a direct relation to the matters at issue.")  The proceedings

13  before the Superior Court of California for the County of Santa Barbara in case

14  number 19CV03464 and before the California Court of Appeal in case number

15  B312912 are directly related to the matters raised by Plaintiffs' complaint, and may

16  be dispositive in this case.

17        Accordingly, Defendants respectfully request that the Court take judicial

18  notice of Exhibits A through E attached hereto.

19  Dated:  September 1, 2022            Respectfully submitted,

20                                       ROB BONTA

21                                       Attorney General of California

22                                       ANDREW M. VOGEL
                                     Supervising Deputy Attorney General

23

24                                       NORMA N. FRANKLIN

25                                       Deputy Attorney General
                                     *Attorneys for Defendants*

26                                       *John Ainsworth, Executive Director of*
                                     *the California Coastal Commission,*

27                                       *and Donne Brownsey, Chair of the*
                                     *California Coastal Commission*

28

# EXHIBIT A

1   J. DAVID BREEMER, No. 215039
    Email: jbreemer@pacificlegal.org
2   Pacific Legal Foundation
    930 G Street
3   Sacramento, California 95814
    Telephone: (916) 419-7111
4   Facsimile: (916) 419-7747

5   Attorney for Petitioners and Plaintiffs

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
7/3/2019 8:35 AM
By: Sarah Sisto, Deputy

8               SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF SANTA BARBARA

11  JACK WALL and WALL FAMILY TRUST,        No. _19CV03464_____

12          Petitioners and Plaintiffs,     **VERIFIED PETITION FOR
                                            WRIT OF ADMINISTRATIVE
13      v.                                  MANDATE AND COMPLAINT FOR
                                            DECLARATORY RELIEF**
14  CALIFORNIA COASTAL COMMISSION,

15          Respondent and Defendant.

## INTRODUCTION

Jack Wall and the Wall Family Trust (Walls) file this suit against the California Coastal Commission's (Commission) unconstitutional and unlawful denial of a permit for a pool to be used in conjunction with a single-family home located in the Hollister Ranch area of Santa Barbara County. This action is brought pursuant to Code of Civil Procedure (CCP) Sections 1094.5 and 1060 and California Public Resources Code Sections 30801 and 30804. All further statutory references are to Public Resources Code Section 30000, *et seq.* (Coastal Act) unless otherwise noted. By this verified petition, Petitioners allege:

## BACKGROUND

1.      Petitioners own a residentially developed 101-acre parcel of real property, located in Hollister Ranch, in Santa Barbara County. The property is an inland parcel, designated County Assessor Parcel No. 083-670-011. It is located almost a mile from the Pacific shore.

Verified Petition for Writ of Admin. Mandate and
Complaint for Declaratory Relief          1

RJN 5

2.      The Walls applied to Santa Barbara County (County) to build a pool and spa next to their home. The County initially approved the permit, but the Commission subsequently took jurisdiction and denied the permit on the ground that construction of the pool violated the Coastal Act's public access policies and rules. As owners of the land, and applicants for the permit, the Wall Family Trust is an aggrieved person pursuant to Section 30801, and entitled to seek a writ of mandate.

3.      Respondent and Defendant Commission is the state administrative body authorized under the Public Resources Code to apply the California Coastal Act of 1976, Section 30000, *et seq.* (Coastal Act), consistent with the limits of that Act and the United States Constitution, to certify a local government's Local Coastal Program (LCP) as the operative rules for building in the relevant coastal area, and to apply the rules of a certified LCP when a local permit decision is appealed to the Commission.

4.      The Commission may sue and be sued under Coastal Act Section 30334.

5.      The Commission has certified an LCP for Santa Barbara County and the County government has adopted that LCP. The rules of the certified LCP supply the operative building rules in the coastal zone, which encompasses the Walls' property.

6.      As a local government with an adopted and certified LCP, the County has initial coastal development permit (CDP) jurisdiction. Accordingly, Hollister Ranch coastal permit applicants like the Walls must submit their application to the County, for consideration under the LCP. The County's final decision on a coastal permit may, in some circumstances, be appealed to the Commission. When such an appeal occurs, the Commission may hear the permit issue on a de novo basis, by independently applying the LCP standards and Coastal Act rules, as applicable.

7.      In this case, the Commission appealed the County's approval of the Walls' application for a pool to itself and ultimately denied a permit for the pool on the basis that it interferes with public beach access and conflicts with the public access policies of the County's LCP and Coastal Act.

8.      The Commission's denial for lack of an adequate (in its view) public access condition violates the unconstitutional conditions doctrine that enforces constitutional protections

Verified Petition for Writ of Admin. Mandate and
Complaint for Declaratory Relief            2

RJN 6

against uncompensated takings of private property. It is also unlawful because the public access policies the Commission purports to enforce do not apply to the Walls' application. Alternatively, it is illegal and invalid because the Coastal Act and the County's LCP require the Commission to approve permits to Hollister Ranch applicants subject only to a condition requiring payment of a $5,000 in-lieu fee. The Court should declare the denial unconstitutional and unlawful and issue a writ of mandate compelling the Commission to approve the Walls' permit or, alternatively, issue a writ compelling permit issuance subject only to the condition that the Walls pay a $5,000 in-lieu fee under Coastal Act Section 30610.8.

## FACTUAL ALLEGATIONS

*The Property's Character*

9.     The property at the heart of this dispute lies in the northern part of Santa Barbara County, California, in a private, 14,500-acre area called Hollister Ranch (Ranch). The Ranch is a working cattle ranch that has been subdivided into 100 acre+ parcels. Some of these parcels are developed with single family homes and accessory agricultural structures (like barns and stables). But many others remain undeveloped. The Pacific Ocean lies along the southwestern boundary of the Ranch.

10.     The Wall property is designated as Hollister Ranch Parcel No. 36. The parcel lies three-quarters of a mile inland from the beach.

11.     The Walls' property is not along the shoreline. The title to the Wall parcel does not include any interest in land adjacent to the coast at the Ranch and the Walls have no legal right or ability to allow public access at the Ranch or to grant easements along the coast allowing such use.

12.     No one has ever used the Wall parcel as a public beach access area.

13.     Approximately two decades ago, the parcel was lawfully developed with a single family home. Later, a small guesthouse and barn were added.

14.     In 2018, the Walls applied to the County of Santa Barbara to build a 60 ft. by 16 ft. swimming pool, detached 8 ft. by 12 ft. in-ground spa, associated equipment, and excavation of 89 cu. yds. of soil to be exported off site.

///

Verified Petition for Writ of Admin. Mandate and
Complaint for Declaratory Relief                3

15.     The proposed swimming pool and spa would be located adjacent to and to the south and west of the existing residence. The project does not involve the removal of any trees or native vegetation.

***Relevant Legal Background***

16.     In approximately 1980, the California Legislature adopted an amendment to the Coastal Act designed to address potential public access issues in subdivided, but vacant, coastal areas where individual owners could not grant public access.

17.     The relevant law, Section 30610.3 of the Coastal Act, created a scheme requiring property owners seeking to build on vacant lots in certain coastal subdivisions to pay an in-lieu public access fee designed to fund the purchase of public access ways.

18.     Section 30610.3 specifically states, in pertinent part:

(a)   Whenever the commission determines (1) that public access opportunities through an existing subdivided area, which has less than 75 percent of the subdivided lots built upon, or an area proposed to be subdivided are not adequate to meet the public access requirements of this division and (2) that individual owners of vacant lots in those areas do not have the legal authority to comply with public access requirements as a condition of securing a coastal development permit for the reason that some other person or persons has legal authority, the commission shall implement public access requirements as provided in this section.

(b)   The commission, on its own motion or at the request of an affected property owner, shall identify an area as meeting the criteria specified in subdivision (a). After an area has been identified, the commission shall, after appropriate public hearings adopt a specific public access program for the area and shall request that the State Coastal Conservancy, established pursuant to Division 21 (commencing with Section 31000), implement the program. The access program shall include, but not be limited to, the identification of specific land areas and view corridors to be used for public access, any facilities or other development deemed appropriate, the commission's recommendations regarding the manner in which public access will be managed, and the types of permitted public uses. The State Coastal Conservancy shall, pursuant to its authority, implement the public access program.

(c)   The State Coastal Conservancy shall be authorized to expend funds when appropriated from the Coastal Access Account for the purchase of lands and view easements and to pay for any development needed to carry out the public access program specified in subdivision (a). Not more than 5 percent of the amount of funds necessary to carry out each public access program may be provided as a grant to the State Coastal Conservancy for its administrative costs incurred in carrying out the access program.

(d)   The State Coastal Conservancy may enter into any agreement it deems necessary and appropriate with any state or local public agency or with a private association authorized to perform those functions for the operation and maintenance of any access facilities acquired or developed pursuant to this section.

Verified Petition for Writ of Admin. Mandate and
Complaint for Declaratory Relief                    4

RJN 8

(e) Every person receiving a coastal development permit or a certificate of exemption for development on any vacant lot within an area designated pursuant to this section shall, prior to the commencement of construction, pay to the commission, for deposit in the Coastal Access Account, an "in-lieu" public access fee. The amount of each fee shall be determined by dividing the cost of acquiring the specified lands and view easements by the total number of lots within the identified area. The proportion of the acquisition cost that can be allocated to lots built upon pursuant to permits that were not subject to public access conditions under this division or the California Coastal Zone Conservation Act of 1972 (former Division 18 (commencing with Section 27000)) shall be paid from the Coastal Access Account. An "in-lieu" public access fee may be in the form of an appropriate dedication, in which event the lots to which the dedication can be credited shall not be counted toward the total number of lots used in arriving at the "in-lieu" public access fee share for each remaining lot.

19.     When Hollister Ranch, the Commission, and Coastal Conservancy could not agree on the specific framework and fee amounts for implementing an in-lieu fee program at the Ranch under Section 30610.3, the parties sought and reached a settlement to avoid further delays in implementation. In 1982, the state Legislature enshrined the compromise into law through enactment of Section 30610.8 of the Act.

20.     Section 30610.8 provides that one seeking to build on *a vacant lot* in the Ranch can build as soon as they pay a $5,000 in-lieu public access fee to the Coastal Conservancy.

21.     Section 30610.8 specifically states:

(a)   The Legislature hereby finds and declares that a dispute exists at the Hollister Ranch in Santa Barbara County with respect to the implementation of public access policies of this division and that it is in the interest of the state and the property owners at the Hollister Ranch to resolve this dispute in an expeditious manner. The Legislature further finds and declares that public access should be provided in a timely manner and that in order to achieve this goal, while permitting property owners to commence construction, the provisions of this section are necessary to promote the public's welfare.

(b)   For purposes of Section 30610.3 and with respect to the Hollister Ranch public access program, the in-lieu fee shall be five thousand dollars ($5,000) for each permit. Upon payment by the applicant for a coastal development permit of this in-lieu fee to the State Coastal Conservancy for use in implementing the public access program, the applicant may immediately commence construction if the other conditions of the coastal development permit, if any, have been met. No condition may be added to a coastal development permit that was issued prior to the effective date of this section for any development at the Hollister Ranch.

22.     The land use rules in the County's Local Coastal Program—certified by the Commission in 2018 as consistent with the Coastal Act—incorporate Section 30610.3 and Section 30610.8 for certain Ranch permit applicants.

Verified Petition for Writ of Admin. Mandate and Complaint for Declaratory Relief                5

RJN 9

23.     Land Use Plan Policy 2-15 states:

The County shall not issue permits for non-exempt development on the Hollister Ranch unless the Coastal Commission certifies that the requirements of PRC Section 30610.3 have been met by each applicant or that the Commission finds that access is otherwise provided in a manner consistent with the access policies of the Coastal Act.

24.     Gaviota Coast Plan Development Standard REC-3 (Hollister Ranch Public Access) specifically states:

In order to mitigate for the potential impacts to public access from the development of Hollister Ranch, a fee consistent with Section 30610.8 of the California Public Resources Code shall be required as a condition of each coastal development permit issued for development in Hollister Ranch.

**THE COUNTY'S APPROVAL AND COMMISSION'S APPEAL**

25.     On November 15, 2018, Santa Barbara County approved a CDP for the Walls' proposed pool construction, finding that it was consistent with the Commission-certified Local Coastal Program.

26.     In approving the permit, the County did not require the Walls to pay any public access in-lieu fee, likely because their lot is not "vacant" as required by Coastal Act Section 30610.3 and because there is no connection between the Walls' parcel and public access.

27.     On December 18, 2018, members of the Commission appealed the County approval to themselves and the rest of the Commission on the basis that it raised a "substantial issue" regarding consistency with public access policies. The appeal is Appeal No. A-4-STB-18-0074.

28.     The Commission's appeal documentation alleged that:

[T]he approved project is inconsistent with the public access and recreation policies of Chapter 3 of the Coastal Act and the County's certified LCP. Gaviota Coast Plan Development Standard REC-3 of the County's certified Land Use Plan specifically requires that a fee consistent with Coastal Act Section 30610.8 is required as a condition of each permit issued for development at Hollister Ranch. The County of Santa Barbara did not require an in-lieu fee as a condition of the subject coastal development permit. Therefore, the approved project is inconsistent with Gaviota Coast Plan Development Standard REC-3.

29.     On February 7, 2019, the Commission found that a substantial issue justified the exercise of its de novo review. By this vote, the Commission voided the prior County approval of the Walls' permit.

Verified Petition for Writ of Admin. Mandate and Complaint for Declaratory Relief          6

RJN 10

30.     The Commission staff subsequently issued a staff report and recommendation related to de novo review of the Walls' pool application, and set the matter for a final de novo Commission hearing on May 9, 2019.

31.     In its report on de novo review, the staff recommended approval of the Wall permit on the condition that the Walls pay the $5,000 in-lieu fee established by Coastal Act Section 30610.8.

32.     In so doing, the staff report stated:

> When Sections 30610.3 and 30610.8 were added to the Coastal Act, the Legislature's intent was to create an in-lieu fee program to allow for development at Hollister Ranch to proceed without applicants having to wait for the final resolution of the actual provision of public access, while simultaneously securing funds for the ultimate goal of providing public access to the Ranch's coastline.

33.     The staff report further stated:

> [T]he Legislature's intent in adding Sections 30610.3 and 30610.8 to the Coastal Act was to create an in-lieu fee program to allow for development at Hollister Ranch to proceed without applicants having to wait for the final resolution of the actual provision of public access, while simultaneously securing funds for the ultimate goal of providing public access to the Ranch's coastline.

34.     With respect to the Walls' pool application, the staff report concluded: "[I]n order for the proposed development to be consistent with the County's certified LCP, the applicant must pay a $5,000 in-lieu fee prior to obtaining the CDP for the proposed development."

**_The Commission's Final Decision and Findings_**

35.     On May 9, 2019, the Commission held a public hearing related to de novo review of the Walls' pool application.

36.     The Commission heard the staff's recommendation, as outlined in its report.

37.     The Commission also heard oral statements and considered written testimony from representatives of the Gaviota Coastal Trail Alliance, a group of Santa Barbara County beach access advocates. The Alliance urged the Commission to ignore the in-lieu fee provision in Section 30610.8 and deny the Wall permit outright until the Ranch as a whole dedicated actual public access on the Ranch to the public.

38.     The Commission also heard from its staff attorney, who stated: "[T]he legislature set up this very specific scheme in this very specific place and stated quite explicitly that, upon

Verified Petition for Writ of Admin. Mandate and
Complaint for Declaratory Relief                          7

1   payment of the $5,000 fee, individuals would be allowed to build whatever it is they are proposing,

2   immediately . . . ."

3        39.     The Commission attorney also observed that the in-lieu fee provision in Section

4   30610.8 set "a hard legal line that leaves not a whole lot of flexibility for us to go back and try and

5   get other types of access" from Ranch permit applicants.

6        40.     When the Commission closed the public portion of the hearing to consider the issue

7   themselves, one Commissioner began by rejecting the staff attorney's analysis. She stated that she

8   thought several failed 2018 state legislative bills that sought to alter Coastal Act Section 30510.3

9   and 30610.8 indicated the Commission was "free to do whatever we needed to do" in regard to

10  access at the Ranch (beyond imposing a $5,000 fee). She further commented that a $5,000 in-lieu

11  fee is "not realistic" and complained that "they" (apparently referring to the Ranch as a whole) had

12  not provided actual public access.

13       41.     A second Commissioner agreed that the body should overlook Section 30610.8,

14  stating that "money is not the same as access, particularly this amount of money and this access for

15  this property."

16       42.     A third Commissioner summed up her view and those of the prior two

17  Commissioners, by stating: "The Commission is signaling we believe that it is the essential

18  elements of the Coastal Act that apply in this particular case, which is that the people of the state

19  of California have access, must have access, *as part of the exchange* between those who must come

20  to us and request permits . . . . (Emphasis added.)

21       43.     This same Commissioner noted that "[actual] public access to this amazing resource

22  and area has primacy over in-lieu fees" notwithstanding the language in Section 30610.8.

23       44.     A final Commissioner echoed other Commissioners in rejecting the staff analysis

24  and application of 30610.8 and stated flatly that the Commission "can't be continuing to approve

25  [Ranch] projects" without actual access for the public.

26       45.     Ultimately, the Commission made an adjudicative decision denying the permit on

27  the ground that it is inconsistent with Santa Barbara Land Use Plan Policy 2-15. Again that

28  provision states:

Verified Petition for Writ of Admin. Mandate and
Complaint for Declaratory Relief     8

The County shall not issue permits for non-exempt development on the Hollister Ranch unless the Coastal Commission certifies that the requirements of PRC Section 30610.3 have been met by each applicant or that the Commission finds that access is otherwise provided in a manner consistent with the access policies of the Coastal Act.

46.     In reaching its decision and denying the Wall permit, the Commission failed to consider the nature of the Walls' specific project or its lack of impact on public beach access.

47.     The Commission made no finding that the Walls' project interferes with, or harms, public beach access.

48.     It made no finding that the Walls have the ability to dedicate a public beach access way on Ranch property along or adjacent to the coast.

49.     The Commission made no finding that denying the Walls' permit in order to extract actual public beach access from them or other Ranch owners is constitutional or lawful under the Coastal Act.

## FIRST CAUSE OF ACTION

**Administrative Mandate (CCP § 1094.5)—Failure to Proceed in Accordance with the Law of Unconstitutional Conditions**

50.     Paragraphs 1 through 49 set forth above are realleged and incorporated herein by this reference.

51.     The Fifth Amendment to the United States Constitution applies to the states through the Fourteenth Amendment.

52.     The Takings and Just Compensation Clauses of the Fifth Amendment prohibit the government from taking private property without just compensation. Article I, Section 19(a), of the California Constitution states: "Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."

53.     Section 30010 of the Coastal Act prohibits the Commission from making any decision that takes private property without just compensation. The section specifically states:

The Legislature hereby finds and declares that this division is not intended, and shall not be construed as authorizing the commission, port governing body, or

Verified Petition for Writ of Admin. Mandate and
Complaint for Declaratory Relief                    9

local government acting pursuant to this division to exercise their power to grant or deny a permit in a manner which will take or damage private property for public use, without the payment of just compensation therefor. This section is not intended to increase or decrease the rights of any owner of property under the Constitution of the State of California or the United States.

54.     The Unconstitutional Conditions Doctrine enforces constitutional just compensation guarantees by ensuring that government agencies do not coerce permit applicants to donate property to the public (for free) to obtain a permit, when appropriation of the property would normally require payment of just compensation. *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595 (2013).

55.     The Commission may not deny a permit because of a permit applicant's failure to submit to a permit condition that is unrelated to the impact of the proposed project.

56.     The Commission may not deny a permit because of an applicant's failure to submit to a permit condition that is disproportionate in nature and extent to the adverse public impacts of the proposed development.

57.     The Commission did not find and cannot find a link between the impacts of the Walls' pool project and the need for a public access condition. The project located three quarters of a mile from the shore on an inland parcel does not impact or harm or effect public beach access. Therefore, the Commission could not lawfully or constitutionally deny the permit due to the lack of an adequate public access condition.

58.     The Commission did not find and cannot find that a public access condition is roughly proportional in nature and extent to the impact of the Walls' pool project. There is no reasonable relationship between the Walls' project on an inland parcel and the need for beach access.

59.     The permit denial is not reasonably related or proportionate to the impacts of the Walls' project, and amounts to a violation of the Unconstitutional Conditions Doctrine as implemented through the Fifth Amendment to the U.S. Constitution and Article I, Section 19, of the California Constitution.

///

///

Verified Petition for Writ of Admin. Mandate and Complaint for Declaratory Relief          10

RJN 14

60.     There is an actual controversy as to the constitutionality of the denial of the Walls' permit sufficient to justify declaratory relief.

61.     A declaration that the denial violates federal and/or state constitutional prohibitions on unconstitutional conditions is appropriate and necessary to clarify the rights and duties of the parties.

**SECOND CAUSE OF ACTION**

**Administrative Mandate (CCP § 1094.5)—Abuse of Discretion
by Failing to Act in the Manner Required by Law**

62.     Paragraphs 1 through 61 set forth above are realleged and incorporated herein by this reference.

63.     The Commission's denial of the Walls' permit is not authorized by the Coastal Act or the County's LCP because neither allows, much less requires, the imposition of actual public access or in-lieu public access fees on a developed lot, like the Walls' property.

64.     Under the Coastal Act and LCP, only *vacant* Hollister Ranch lots are potentially subject to the in-lieu fee in Section 30610.8.

65.     The rules of LCP Policy 2-15 and the in-lieu fee provisions of Coastal Act Section 30610.3, which it incorporates, do not apply to the Walls' developed lot.

66.     Therefore, the denial of the Walls' permit is not in accordance with law, is ultra vires, and an abuse of discretion.

67.     Alternatively, if LCP Policy 2-15, and the in-lieu fee provisions of Coastal Act Section 30610.3, which it incorporates, lawfully and constitutionally apply to the Walls' permit, the denial of the Walls' permit is not in accordance with law because the County LCP and Coastal Act allow only a $5,000 in-lieu fee as a permit condition.

68.     If LCP Policy 2-15 lawfully applies to the Walls' permit, the Commission abused its authority in failing to follow the provision by approving the permit subject to the $5,000 in-lieu fee.

///

///

Verified Petition for Writ of Admin. Mandate and
Complaint for Declaratory Relief                    11

1

**RELIEF REQUESTED**

2          WHEREFORE, Petitioners and Plaintiffs pray for judgment against Respondent and

3    Defendant California Coastal Commission as follows:

4          1.       A judgment that the denial of the Walls' permit for lack of a public access condition

5    violates the Unconstitutional Conditions Doctrine and is invalid.

6          2.       For a peremptory writ of mandate commanding the Commission to issue a permit to

7    the Walls for their pool project without any public access condition or in-lieu fee.

8          3.       Alternatively, if a public access condition is lawful and constitutional in this case,

9    the Walls request a writ of mandate compelling the Commission to issue the permit subject only to

10   the $5,000 public access in-lieu fee identified in Coastal Act Section 30610.8.

11         4.       Attorneys' fees under Code of Civil Procedure Section 1021.5.

12         5.       For such other relief that the Court deems just and proper.

13   DATED: July 1, 2019.

14                                          Respectfully submitted,

15

16                                          s/ J. David Breemer
                                            J. DAVID BREEMER
17
                                            Attorney for Petitioners and Plaintiffs
18

19

20

21

22

23

24

25

26

27

28

Verified Petition for Writ of Admin. Mandate and
Complaint for Declaratory Relief                    12

# VERIFICATION

I, Jack Wall, declare as follows:

I have read the foregoing Verified Petition for Writ of Administrative Mandate and Complaint for Declaratory Relief and, except for matters stated on information and belief, the facts stated therein are true on my own knowledge, and as to those matters stated on information and belief, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was executed this **26** day of **June**, 2019, at **San Pedro**, California.

_Jack Wall_
JACK WALL

# EXHIBIT B

J. DAVID BREEMER, No. 215039
Email: jbreemer@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

Attorney for Petitioners and Plaintiffs

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
12/7/2020 9:23 AM
By: Elizabeth Spann, Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA BARBARA

| | |
|---|---|
| JACK WALL and WALL FAMILY TRUST, | No. 19CV03464 |
| Petitioners and Plaintiffs, | **MEMORANDUM IN SUPPORT OF THE PETITION FOR A WRIT OF ADMINISTRATIVE MANDATE** |
| v. | |
| CALIFORNIA COASTAL COMMISSION, | Place: Department 4 |
| Respondent and Defendant. | Judge: Honorable Donna D. Geck |
| | Action Filed: July 3, 2019 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................3

LEGAL AND FACTUAL BACKGROUND ..........................................................................6

ARGUMENT ......................................................................................................................13

   I.    THE PERMIT DENIAL FOR LACK OF AN ACCESS CONDITION
        VIOLATES THE UNCONSTITUTIONAL CONDITIONS DOCTRINE ......................13

     A.   The *Nollan/Dolan/Koontz* Unconstitutional Conditions Doctrine..................................13

     B.   The Denial of the Walls' Permit for Lack of a Public Beach
          Access Condition Violates *Nollan* and *Dolan* ................................................................15

   II.   THE DENIAL IS UNLAWFUL BECAUSE THE COASTAL ACT
        ALLOWS ACCESS CONDITIONS ONLY FOR DEVELOPMENT
        ON *VACANT* RANCH PARCELS.......................................................................................18

  III.   EVEN IF CONDITIONS ARE LAWFUL FOR THE WALLS' PROPOSAL,
        THE COASTAL ACT ALLOWED ONLY A $5,000 IN-LIEU FEE—BUT
        THAT FEE IS ITSELF UNCONSTITUTIONAL UNDER *NOLLAN/DOLAN*.................20

CONCLUSION ...................................................................................................................22

DECLARATION OF SERVICE ..........................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Association for Retarded Citizens v. Department of Developmental Servs.*,
    38 Cal. 3d 384 (1985) ..................................................................................... 19-20

*Burke v. California Coastal Comm'n*,
    168 Cal. App. 4th 1098 (2008) .............................................................................. 19

*Dolan v. City of Tigard*,
    512 U.S. 374 (1994) ......................................................................................... 13-16

*Ehrlich v. City of Culver City*,
    12 Cal. 4th 854 (1996) ............................................................................ 16-18, 22

*Hollister Ranch Owners Association v. Becerra*,
    No. CV 20-00453, 2020 WL 5047903 (C.D. Cal. May 18, 2020) ........................ 6

*Koontz v. St. Johns River Water Management Dist.*,
    570 U.S. 595 (2013) ...................................................................................... 5, 13-16

*Lechuza Villas West v. California Coastal Comm'n*,
    60 Cal. App. 4th 218 (1997) ................................................................................ 6-7

*McAllister v. County of Monterey*,
    147 Cal. App. 4th 253 (2007) ........................................................................... 6, 20

*Nollan v. California Coastal Comm'n*,
    483 U.S. 825 (1987) ......................................................................................... 13-15

*Remmenga v. California Coastal Comm'n*,
    163 Cal. App. 3d 623 (1985) .......................................................................... 15, 22

*Rose v. State*,
    19 Cal. 2d 713 (1942) ........................................................................................... 19

*San Francisco Taxpayers Ass'n v. Board of Supervisors*,
    2 Cal. 4th 571 (1992) ........................................................................................... 19

*Schneider v. California Coastal Comm'n*,
    140 Cal. App. 4th 1339 (2006) ......................................................................... 18-19

*Security National Guaranty, Inc. v. California Coastal Comm'n*,
    159 Cal. App. 4th 402 (2008) ..................................................................... 18-19, 21

*Surfside Colony, Ltd. v. California Coastal Comm'n*,
    226 Cal. App. 3d 1260 (1991) ......................................................................... 15, 17

*Yamaha Corp. of America v. State Bd. of Equalization*,
    19 Cal. 4th 1 (1998) ............................................................................................. 19

*Yost v. Thomas*,
    36 Cal. 3d 561 (1984) ........................................................................................... 20

## Statutes

Civ. Code § 3534 ................................................................................................... 19

Pub. Res. Code § 30000, *et seq.* .............................................................................. 6

    § 30519(a) ............................................................................................................ 6

    § 30600(a) ............................................................................................................ 6

    § 30610.3 ..........................................................................................7-8, 18-19, 21

    § 30610.3(e) .................................................................................... 5, 8, 18-20

    § 30610.8 ...................................................................................... 5, 9, 20-21

    § 30610.8(a) ......................................................................................... 7, 9, 18

    § 30610.8(b) ........................................................................................... 9, 20

This Petition for a Writ of Administrative Mandate arises from the California Coastal Commission's (Commission) unconstitutional and unlawful denial of a permit for a small pool on a residentially developed, inland parcel at Hollister Ranch (Ranch), Santa Barbara County. Petitioners Jack Wall and the Wall Family Trust (Walls) filed the suit pursuant to Code of Civil Procedure (CCP) Section 1094.5 after the Commission denied the pool permit because the Walls did not agree to donate public beach access, without just compensation, as a condition of approval.

The Commission's refusal to grant the permit because the Walls did not donate a public access easement on private land is unlawful because it violates the unconstitutional conditions doctrine. *See Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 604-06 (2013). That doctrine protects property owners from being forced to accede to permit conditions that are unrelated to the impact of their proposed project. *Id.* The Walls' small, inland pool project has no impact on public beach access and, therefore, the attempt to condition the permit on provision of such access is unconstitutional and illegal.

The permit denial is also unlawful under state law because the public beach access policies, which the Commission purported to follow in denying the permit for lack of an access condition, are not applicable to developed parcels, like the Walls'. Pub. Res. Code § 30610.3(e); *see* AR at 7-8 (setting out § 30610.3(e)). Alternatively, even if the Commission is authorized to impose a condition on a vacant Ranch parcel like the Walls', the Coastal Act allowed only a $5,000 in-lieu fee. *Id.* § 30610.8. However, that a fee is statutorily permissible does not mean it is constitutional. The Commission cannot constitutionally impose a $5,000 fee to advance public beach access in this case for the same reason that it cannot impose actual access: there is no connection between the impact of the Wall project and any public access harm that could be mitigated by an in-lieu fee.

Given the clarity of the legal rules and facts supporting the Walls in this case, it is remarkable that the Commission went ahead and denied their permit. The only rational explanation for its decision is that the agency sought to punish the Walls for the past actions of Ranch owners and to send a "give us actual access" message to other Ranch owners who may need a coastal permit in the future. The Court should declare the Commission's action unconstitutional and illegal and

///

issue a writ of mandate compelling the agency to approve the Walls' permit without any access condition.

## LEGAL AND FACTUAL BACKGROUND

### The General Coastal Act Permitting Scheme

Under the California Coastal Act, Pub. Res. Code § 30000, *et seq.*, property owners must generally secure a Coastal Development Permit (CDP) before building in the coastal zone, an area which includes Hollister Ranch. Pub. Res. Code § 30600(a). The Coastal Act channels the issuance of most CDP's through local governments that have adopted a Local Coastal Program (LCP) certified by the Commission. Pub. Res. Code § 30519(a). Once a local government has a certified LCP, it has initial coastal development permitting authority. Santa Barbara County has an LCP. Accordingly, permit applicants like the Walls must submit their CDP applications to the County. However, the County's final decision on CDP applications may, in some circumstances, be appealed to the Commission. When an appeal occurs and the Commission takes the appeal, it considers the permit issue on a de novo basis, by independently applying the applicable LCP and Coastal Act rules. AR at 211; *see generally McAllister v. County of Monterey*, 147 Cal. App. 4th 253, 273-74 (2007).

### Hollister Ranch Permitting Scheme

The Ranch is a 14,500-acre area of property just south of Point Conception. It was originally created as a ranch and farm operation. AR at 213. *See generally Hollister Ranch Owners Association v. Becerra*, No. CV 20-00453, 2020 WL 5047903, at *1-2 (C.D. Cal. May 18, 2020) (discussing Ranch history). In the early 1970's, the Ranch was subdivided into approximately 135 100-acre+ parcels, AR at 214, and a number of common areas, while remaining a working cattle ranch. A number of the Ranch parcels are now developed with a home (only one home is allowed within a two-acre building envelope on each 100-acre parcel) and accessory structures (like stables). But some parcels remain vacant. The Pacific Ocean lies along the southwestern boundary of the Ranch. The Ranch property owners own the shorelands lying inland of the mean high-water mark, an area that includes most dry sandy beaches. The state owns the (wet) beach areas lying seaward of the mean high-water mark. *Lechuza Villas West v. California Coastal Comm'n*, 60 Cal.

App. 4th 218, 235 (1997). Ranch parcels are served by private roads; there is no public road in the Ranch. AR at 76.

The Ranch is subject to special coastal permitting rules that supplement the general Coastal Act permitting scheme described above. Such rules originate from a 1970's-era controversy between Ranch owners and the State of California regarding the state's attempts to obtain public beach access, without compensation, across vacant Ranch property. Pub. Res. Code § 30610.8(a); AR at 293:11-15. As the 1970's came to a close, the California Legislature amended the Coastal Act to address the access dispute. *Id.*; AR at 214. The relevant statutory enactments—Section 30610.3 and Section 30610.8 of the Coastal Act—required Ranch property owners seeking permits to build on vacant lots to pay an in-lieu (of actual access) fee designed to create a fund for acquisition of public access at the Ranch. AR at 217-18.

In 2019, after the Commission's action on the Wall permit was final, the legislature amended Sections 30610.3 and 30610.8 by passing Assembly Bill 1680. Among other changes, the legislature increased the amount of the in-lieu fee in Section 30610.8 from $5,000 to $33,000. The 2019 amendments are not relevant here, however, since the Commission decided the Walls' permit under the prior version of the statute, which is described below.

**SECTION 30610.3: General framework for public access fees on Ranch parcels**

The original and applicable version of Public Resources Code Section 30610.3 states[1]:

> (a)  Whenever the commission determines (1) that public access opportunities through an existing subdivided area, which has less than 75 percent of the subdivided lots built upon, or an area proposed to be subdivided are not adequate to meet the public access requirements of this division and (2) that individual owners of vacant lots in those areas do not have the legal authority to comply with public access requirements as a condition of securing a coastal development permit for the reason that some other person or persons has legal authority, the Commission shall implement public access requirements as provided in this section.

> (b)  The Commission, on its own motion or at the request of an affected property owner, shall identify an area as meeting the criteria specified in subdivision (a). After an area has been identified, the Commission shall, after appropriate public hearings adopt a specific public access program for the area and

---

[1] The original, applicable Coastal Act provisions related to the Ranch are set out in the administrative record and the Walls will accordingly cite predominately to that record when quoting and discussing the relevant versions of Public Resources Code Sections 30610.3 and 30610.8.

shall request that the State Coastal Conservancy, established pursuant to Division 21 (commencing with Section 31000), implement the program. The access program shall include, but not be limited to, the identification of specific land areas and view corridors to be used for public access, any facilities or other development deemed appropriate, the commission's recommendations regarding the manner in which public access will be managed, and the types of permitted public uses. The State Coastal Conservancy shall, pursuant to its authority, implement the public access program.

(c)   The State Coastal Conservancy shall be authorized to expend funds when appropriated from the Coastal Access Account for the purchase of land and view easements and to pay for any development needed to carry out the public access program specified in subdivision (a). Not more than 5 percent of the amount of funds necessary to carry out each public access program may be provided as a grant to the State Coastal Conservancy for its administration incurred in carrying out the access program.

(d)   The State Coastal Conservancy may enter into any agreement it deems necessary and appropriate with any state or local public agency or with a private association authorized to perform those functions for the operation and maintenance of any access facilities acquired or developed pursuant to this section.

(e)   Every person receiving a coastal development permit or a certificate of exemption for development on any vacant lot within an area designated pursuant to this section shall, prior to the commencement of construction, pay to the commission, for deposit in the Coastal Access Account, an "in-lieu" public access fee. The amount of each fee shall be determined by dividing the cost of acquiring the specified lands and view easements by the total number of lots within the identified area. The proportion of acquisition cost that can be allocated to lots built upon pursuant to permits that were not subject to public access conditions under this division or the California Coastal Zone Conservation Act of 1972 (former Division 18 (commencing with Section 27000)) shall be paid from the Coastal Access Account. An "in-lieu" public access fee may be in the form of an appropriate dedication, in which event the lots to which the dedication can be credited shall not be counted toward the total number of lots used in arriving at the "in-lieu" public access fee share for each remaining lot.

AR at 217-18.

The Commission designated the Ranch as an area subject to Section 30610.3 in the early 1980's. AR at 214. However, Ranch owners and the Commission could not agree on the mechanisms for implementing Public Resources Code Section 30610.3. The parties sought a settlement to avoid further delays, which the state legislature enshrined into law by enacting Section 30610.8 of the Coastal Act. AR at 215, 218.

///

///

///

**SECTION 30610.8: The $5,000 fee for Ranch parcels subject to Section 30610.3**

Section 30610.8 clarified that Ranch permit applicants subject to Section 30610.3 can fulfill that provision's in-lieu of public access fee mandate by paying $5,000 when seeking a permit. AR at 218.

Section 30610.8 specifically states:

> (a)   The Legislature hereby finds and declares that a dispute exists at the Hollister Ranch in Santa Barbara County with respect to the implementation of public access policies of this division and that it is in the interest of the state and the property owners at the Hollister Ranch to resolve this dispute in an expeditious manner. The Legislature further finds and declares that public access should be provided in a timely manner and that in order to achieve this goal, while permitting property owners to commence construction, the provisions of this section are necessary to promote the public's welfare.

> (b)   For purposes of Section 30610.3 and with respect to the Hollister Ranch public access program, the in-lieu fee shall be five thousand dollars ($5,000) for each permit. Upon payment by the applicant for a coastal development permit of this in-lieu fee to the State Coastal Conservancy for use in implementing the public access program, the applicant may immediately commence construction if the other conditions of the coastal development permit, if any, have been met. No condition may be added to a coastal development permit that was issued prior to the effective date of this section for any development at the Hollister Ranch.

AR at 218-19.

The land use rules in the County's Local Coastal Program generally mirror Section 30610.3 and Section 30610.8 for certain Ranch permit applicants. For instance, Santa Barbara County Land Use Plan Policy 2-15 states:

> The County shall not issue permits for non-exempt development on the Hollister Ranch unless the Coastal Commission certifies that the requirements of PRC Section 30610.3 have been met by each applicant or that the Commission finds that access is otherwise provided in a manner consistent with the access policies of the Coastal Act.

AR at 219. The Gaviota Coast Plan Development Standard REC-3 (Hollister Ranch Public Access) part of the LCP further states:

> In order to mitigate for the potential impacts to public access from the development of Hollister Ranch, a fee consistent with Section 30610.8 of the California Public Resources Code shall be required as a condition of each coastal development permit issued for development in Hollister Ranch.

*Id.*

///

**The Wall Property and Initial Permit Process**

The Walls own a residentially developed 101.95-acre parcel of real property in Hollister Ranch. The property is designated as Santa Barbara County Assessor Parcel No. 083-670-011 and as Hollister Ranch Parcel No. 36. AR at 213.

The Walls' property is not near the beach. It is located almost a mile inland from the Pacific shore. *Id.* No one has ever used, or ever could use, the Wall parcel as a public beach access area. The title to the Wall parcel does not include any interest in land adjacent to the Ranch coast and the Walls have no legal right or ability to allow public access at the Ranch or to grant access easements along the coast. AR at 153, 214.

Approximately two decades ago, the Walls' parcel was lawfully developed with a single-family home. AR at 61, 213. In 2018, the Walls applied to the County to build a 60 ft. by 16 ft. swimming pool, detached 8 ft. by 12 ft. in-ground spa, associated equipment, and excavation of 89 cu. yds. of soil to be exported off site. The proposed swimming pool and spa was designed for family get-togethers and was to be located adjacent to the existing residence on the southwestern side. On November 15, 2018, Santa Barbara County approved a CDP for the pool, finding that it was consistent with the County's LCP. In so doing, the County did not require the Walls to agree to public access or pay a public access in-lieu fee. This was most likely because the parcel is not vacant and is therefore exempt from a fee under Section 30610.3(e), although the County decision does not explicitly document the County's reasons.

On December 18, 2018, members of the Commission appealed the County's approval of the Wall permit to the Commission, asserting that there was a "substantial issue" about whether approval was consistent with Coastal Act public access policies. AR at 162-78. The Commission's appeal specifically alleged:

> [T]he approved project is inconsistent with the public access and recreation policies of Chapter 3 of the Coastal Act and the County's certified LCP. Gaviota Coast Plan Development Standard REC-3 of the County's certified Land Use Plan specifically requires that a fee consistent with Coastal Act Section 30610.8 is required as a condition of each permit issued for development at Hollister Ranch. The County of Santa Barbara did not require an in-lieu fee as a condition of the subject coastal

development permit. Therefore, the approved project is inconsistent with Gaviota Coast Plan Development Standard REC-3.

AR at 167.

On February 7, 2019, the Commission found that a substantial issue regarding the Wall permit justified the agency's assertion of appellate jurisdiction and the exercise of de novo review over the permit issue. AR at 206. The Commission staff subsequently issued a staff report and recommendation related to de novo review of the Walls' pool application. AR at 208-24. In its report, the Commission staff recommended approval of the Wall permit on the condition that the Walls pay the $5,000 in-lieu fee established by Coastal Act Section 30610.8. AR at 211-12. In so doing, the staff report stated:

> When Sections 30610.3 and 30610.8 were added to the Coastal Act, the Legislature's intent was to create an in-lieu fee program to allow for development at Hollister Ranch to proceed without applicants having to wait for the final resolution of the actual provision of public access, while simultaneously securing funds for the ultimate goal of providing public access to the Ranch's coastline.

AR at 215.

The staff report further stated: "[I]n order for the proposed development to be consistent with the County's certified LCP, the applicant must pay a $5,000 in-lieu fee prior to obtaining the CDP for the proposed development." AR at 221.

**The Commission's Final Decision and Findings**

On May 9, 2019, the Commission held a public hearing on its de novo review of the Walls' pool proposal. AR at 208, 287. The Commission heard the staff's report and recommendation. The Commission also heard from its staff attorney, who stated: "[T]he legislature set up this very specific scheme and this very specific place, and stated quite explicitly that upon payment of the $5,000 fee, individuals would be allowed to build whatever it is they're proposing immediately." AR at 293:17-20. The Commission attorney also observed that the in-lieu fee provision in Section 30610.8 set "a hard legal line that leaves not a whole lot of flexibility for us to go back and try and get other types of access" from Ranch permit applicants. *Id.* at 293:12-22.

At the Wall hearing, the Commission also considered oral statements and written testimony from the Gaviota Coastal Trail Alliance, a group of Santa Barbara County coastal activists. The

Alliance urged the Commission to ignore the $5,000 in-lieu fee provision in Section 30610.8 and deny the Wall permit outright until they and other Ranch owners dedicated actual public access to private Ranch properties. AR at 291-92.

As the Commission closed the public hearing to decide the permitting issue, one Commissioner quickly rejected the staff attorney's analysis. She stated that she thought the Commission was not limited to a $5,000 in-lieu fee, but was "free to do whatever we needed to do" to impose actual access at the Ranch. AR at 294:3. She further commented that a $5,000 in-lieu fee is "not realistic" and complained that "they"—apparently referring to Ranch owners—had not provided actual public access at the Ranch. *Id.* at 294:10-12. A second Commissioner agreed that the agency should overlook Section 30610.8, stating that "money is not the same as access . . . [p]articularly this amount of money and this access for this property." AR at 294:23-24.

A third Commissioner summed up her and the prior Commissioners' views by stating: "[T]he Commission is signaling we believe that it is the essential elements of the Coastal Act that applies in this particular case[, w]hich is that the people of the State of California have access, *must have access as part of the exchange between those whom must come to us, and request permits* . . . . AR at 295:1-4 (emphasis added). The same Commissioner noted that obtaining "[actual] public access to this amazing resource and area has primacy over in lieu fees." *Id.* at 295:6-7. One more Commissioner joined the Commission's rejection of the staff analysis, and the application of 30610.8, stating that the Commission "can't be continuing to approve [Ranch] project[]" permits without securing actual public access in return. *Id.* at 295:15-16.

Ultimately, the Commission denied the permit on the ground that approval was inconsistent with Santa Barbara Land Use Plan Policy 2-15. That provision states:

> The County shall not issue permits for non-exempt development on the Hollister Ranch unless the Coastal Commission certifies that the requirements of PRC Section 30610.3 have been met by each applicant or that the Commission finds that access is otherwise provided in a manner consistent with the access policies of the Coastal Act.

AR at 9. In denying the Wall permit, the Commission specifically found that "[b]ecause public access and public recreational opportunities . . . are not proposed to be provided concurrently with

///

new development in this case, the Commission found the proposed development to be inconsistent with Policy 2-15 and related provisions of the LCP and Coastal Act." AR at 1.

In reaching its decision, the Commission failed to consider the inland location of the Wall property, the lack of any public access point or road near the property, or the private and de minimis nature of the Walls' pool project. The Commission made no finding that the Walls' project interferes with, or harms, public beach access. It made no finding that the Walls have the ability to dedicate a public access on other Ranch property. The Commission made no finding that requiring actual public access as a permit condition is related, reasonable, and proportionate to the Walls' pool project.

## ARGUMENT

### I.   THE PERMIT DENIAL FOR LACK OF AN ACCESS CONDITION VIOLATES THE UNCONSTITUTIONAL CONDITIONS DOCTRINE

The Walls' first claim asserts that the Commission's denial is not in accordance with law because it violates the federal unconstitutional conditions doctrine set out in *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), *Dolan v. City of Tigard*, 512 U.S. 374 (1994), and *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595 (2013). Under this jurisprudence, the Commission may not constitutionally deny a permit because the applicant refuses to submit to an "exaction"—a permit condition requiring a dedication of property to the public—which is unrelated and disproportionate to the project. Such an exaction is simply a taking of property, and a permit cannot be constitutionally denied because an applicant refuses to bow to an uncompensated taking. As shown below, the Walls were put into this very scenario by the Commission, and therefore, the denial must be invalidated.

### A.   The *Nollan/Dolan/Koontz* Unconstitutional Conditions Doctrine

In *Nollan*, the Supreme Court considered whether the Commission could constitutionally exact a public access easement from a beachfront homeowner as a condition of a building permit. 483 U.S. at 834. The Court held that the government may not exact property as a permit condition when there is no "essential nexus" between the purposes of the exaction and the social impact of the proposed building project. *Id.* at 837-38. The Court recognized that the government can

constitutionally exact property to mitigate public harms directly arising from the project. *Id.* But when there is no connection between project impact and exaction, the exaction is simply a disguised, uncompensated taking of property. *Id.* Under this rationale, the Court struck down the public easement exaction in *Nollan* because the Nollans' project did not harm public access or cause the need for public access. *Id.* at 838-39.

In *Dolan*, the Court elaborated on the strength of the required connection between an exaction and a development's impact. 512 U.S. at 386. *Dolan* involved building permit conditions that required a hardware store owner to dedicate portions of her land to the public for a bike path and storm water run-off area. *Id.* at 377-83. The Court held that an exaction must be related and roughly proportionate "in nature and extent" to the "proposed development" *Id.* at 391. Together, *Nollan* and *Dolan* allow "the government to condition approval of a permit on the dedication of property [including money] to the public so long as there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal." 570 U.S. at 605-06.

Lastly, in *Koontz*, the Court held that the *Nollan* and *Dolan* tests apply when the government *denies* a permit because the applicant would not submit to an exaction. *Id.* at 606 ("The principles that undergird our decisions in *Nollan* and *Dolan* do not change depending on whether the government *approves* a permit on the condition that the applicant turn over property or *denies* a permit because the applicant refuses to do so."). "As in other unconstitutional conditions cases in which someone refuses to cede a constitutional right in the face of coercive pressure, the impermissible denial of a governmental benefit is a constitutionally cognizable injury." *Id.* at 607. *Koontz* also confirmed that an in-lieu fee is an exaction subject to *Nollan* and *Dolan*. *Id.* at 613.

In all three cases, the Court emphasized that the *Nollan/Dolan* tests require a more substantial connection between an exaction and project impacts than the typical due process/rational basis standard. *Id.* A "generalized" connection is inadequate. *Dolan*, 512 U.S. at 389. A link between an exaction and a project must be direct and based on "individualized"

///

///

evidence about the particular development at issue.[2] 512 U.S. at 391. In *Surfside Colony, Ltd. v. California Coastal Comm'n*, 226 Cal. App. 3d 1260, 1268 (1991), the court of appeal confirmed, holding that "*Nollan* [] requires a substantial relationship between the public burden posed by proposed construction and conditions imposed by the government to permit that construction." The *Surfside* court emphasized that *Nollan* requires *site specific* evidence of a connection between the purposes of a exaction and the impact of the subject project, *id.*

### B.     The Denial of the Walls' Permit for Lack of a Public Beach Access Condition Violates *Nollan* and *Dolan*

In this case, the County granted the Walls' permit without any public access condition or in-lieu fee. This was proper since the County had not made, and could not make, a finding that the Walls' proposal to build a pool nearly a mile inland impacted public beach access. *Koontz*, 570 U.S. at 605-06.

The Commission went in an entirely different direction, however, concluding that the Wall permit has to be denied because actual public access was "not proposed to be provided" with the Walls' development. AR at 1. This was a strange and unlawful determination given the facts of the record. The Commission concedes that the Walls' parcel and proposed pool is far from the beach. It recognizes that there is no public road or area nearby. It is impossible for the Walls to harm beach access or even promote it since their land is not adjacent to the beach, and the Walls do not own other land at the Ranch.

How then, does one account for the Commission's denial of the Walls' permit for lack of public access? To put it bluntly, it was a decision meant to teach the Ranch a lesson. The Commissioners made clear at the Walls' public hearing that they were upset with the actions of Ranch owners in the past and that they intended to use the Walls as an example for other Ranch

---

[2]In the early 1980's a few California decisions, such as *Remmenga v. California Coastal Comm'n*, 163 Cal. App. 3d 623 (1985), accepted an indirect or looser connection between project and permit condition. Such decisions were, of course, issued prior to *Nollan* and *Dolan* and their requirement of a direct, tighter connection between exaction and project. *See Nollan*, 483 U.S. at 830 (citing *Remmega* in discussing the "indirect" connection rationale that the *Nollan* Court would proceed to reject). *Remmenga* and similar early California decisions have no bearing on the application of *Nollan* and *Dolan* to modern exaction disputes, like this one.

property owners to give up public access. AR at 295:2-4 ("[T]he people of the State of California . . . must have access as part of the exchange between those who[] must come to us, and request permits or other actions."); AR at 291:2:6 (staff explains to the Commission that other Ranch permit applications were in the cue behind the Walls' and that "the Commission's direction on this [Walls] matter today would be very helpful to our staff as we prepare to bring those other items to you in the future"). The Wall denial was meant to send this message: give us actual public access or you will not get permits. *Id.*; *see also* AR at 295:15 ("[W]e can't be continuing to approve projects without access.").

The problem for the Commission is that the *Nollan/Dolan/Koontz* line of cases requires the government to make a permit conditioning decision that is based on, and tailored to, the impacts of the applicant's specific proposal. 512 U.S. at 391; *Ehrlich v. City of Culver City*, 12 Cal. 4th 854, 880 (1996) ("[G]overnment [must] demonstrate a *factually* sustainable proportionality between the effects of a proposed land use and a given exaction . . . ."). Government officials cannot require a permit condition that is unrelated or disproportionate to the specific project at issue, and it cannot deny a permit if the applicant fails to agree to such an untailored condition. *Koontz*, 570 U.S. at 606-07. Thus, regardless of how it feels about the Ranch as a whole, the Commission was required to only seek a condition that is related and proportionate to the impact of the Walls' pool proposal. *See Dolan*, 512 U.S at 391-96. Indeed, under *Dolan*, the agency "must make some sort of *individualized* determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.* at 391 (emphasis added). The Commission made no such determination here, and it could not do so given that the record before it is devoid of any evidence or finding that the Walls' small, inland pool project impacts public beach access.

The Commission will likely argue that there is a link between the Walls' project and public access because the Wall property is part of a larger Ranch subdivision that contains parcels which may have an impact on access if developed. But, as discussed above, this is far too indirect a link. *Dolan*, 512 U.S. at 389 ("generalized statements as to the necessary connection between the required dedication and the proposed development"). As the California Supreme Court made clear, "government [must] demonstrate a *factually sustainable* proportionality between the effects of a

proposed land use and a given exaction." *Ehrlich*, 12 Cal. 4th at 880 (emphasis added). More specifically, a "fee . . . must *be tied more closely* to the actual impact of the land-use change" than any possible connection the Commission may posit here. *Id.* at 884 (emphasis added). Indeed, any attempt to connect the Walls' pool proposal to public access issues by reference to possible impacts of possible development at other Ranch locations is speculative, not site specific and woefully inadequate for purposes of *Nollan/Dolan*. *Surfside Colony*, 226 Cal. App. 3d at 1268.

Finally, the Commission may suggest that then-pending legislative processes related to Hollister Ranch played into its decision to deny the Wall permit. AR at 11. But those state processes have nothing to do with the constitutionality of a public access condition on the Walls' permit. No legislation could change the inland location of their parcel, the lack of any nearby public area, and the resulting utter absence of a connection between the Walls' pool project and public beach access. That is, no state legislative or administrative act could create the necessary connection between the effects of the Walls' project and public access, given the undisputed nature of the Walls' property and project. Moreover, when faced with the purported possibility of pending legislative action, the Commission did not *delay* a decision on the Wall permit—it chose to flatly deny the project under the then-prevailing law. It made a choice to apply that law in a manner adverse to the Walls, and it now must defend its decision under that legal and factual framework. It cannot do so. Without evidence of a relationship between the Walls' pool project and the actual public beach access condition the Commission sought in denying the Wall permit, the Commission's decision violates the *Nollan* and *Dolan* doctrine.

Further, even assuming arguendo that the Commission could find some connection between the Walls' proposal and public beach access, the actual access exaction the Commission seeks from the Walls is widely disproportionate in nature to any impact from installation of a small pool on their parcel. The Walls' property—located one mile inland, and unconnected to any public road or access point—is developed with a private residential structure that has existed for over 20 years. As in *Ehrlich*, the Commission's access demand is not seeking to mitigate any public loss directly caused by the Walls' construction of a pool and spa. It is seeking to leverage the permitting process

///

in an area where public amenities are desired to coerce them without compensation. *Ehrlich*, 12 Cal. 4th at 883-85.

Without any finding or evidence of a direct and proportionate relationship between the demand that the Walls donate public beach access and the actual impact of their particular pool project, the denial of the Walls' permit easily violates the Unconstitutional Conditions Doctrine. The proper remedy is to invalidate the denial and grant a writ of mandate compelling issuance of the Walls' application as submitted, and without any public access condition.

## II. THE DENIAL IS UNLAWFUL BECAUSE THE COASTAL ACT ALLOWS ACCESS CONDITIONS ONLY FOR DEVELOPMENT ON *VACANT* RANCH PARCELS

Even assuming for the sake of argument that the Commission could constitutionally require public access as a condition of the Walls' pool permit (it cannot), the denial remains unlawful because the Coastal Act only allows public access conditions (namely, an in-lieu fee) to be imposed on development of *vacant* Ranch parcels. Pub. Res. Code § 30610.3(e). That provision states: "Every person receiving a coastal development permit or a certificate of exemption *for development on any vacant lot* within an area designated pursuant to this section shall, prior to the commencement of construction, pay to the commission, for deposit in the Coastal Access Account, an 'in-lieu' public access fee." *Id.* (emphasis added). Recall that this in-lieu fee mandated was adopted by the legislature for the Ranch to resolve dispute and delay over the state's push for actual public access at the Ranch. Pub. Res. Code § 30610.8(a). The public access fee program in 30610.3 and 30610.8 became the exclusive Coastal Act method for seeking access at the Ranch through permitting. But, under 30610.3, only permits seeking to build on vacant Ranch lots are subject to that in-lieu fee requirement.

The Commission may argue that it has general Coastal Act authority to impose actual public access conditions and that it can use this to impose conditions on developed Ranch parcels. But it cannot. Section 30610.3 is specific and controlling on the issue. *Security National Guaranty, Inc. v. California Coastal Comm'n*, 159 Cal. App. 4th 402, 419 (2008); *Schneider v. California Coastal Comm'n*, 140 Cal. App. 4th 1339, 1344 (2006) ("A court does not . . . defer to an agency's view when deciding whether a regulation lies within the scope of the authority delegated by the

Legislature." (quoting *Yamaha Corp. of America v. State Bd. of Equalization*, 19 Cal. 4th 1, 11 n.4
(1998))). As noted above, that statutory provision was carefully and purposefully enacted to govern
all public access permitting issues at the Ranch. The provisions in Sections 30610.3 and 30610.8
establish a controlling exception from more general Coastal Act policies. *San Francisco Taxpayers
Ass'n v. Board of Supervisors*, 2 Cal. 4th 571, 577 (1992) ("It is well settled . . . that a general
provision is controlled by one that is special, the latter being treated as an exception to the former."
(quoting *Rose v. State*, 19 Cal. 2d 713, 723-24 (1942))); *see also* Civ. Code § 3534 ("Particular
expressions qualify those which are general."). Because Section 30610.3 speaks clearly and directly
to the issue of public access conditioning at the Ranch, the Commission must apply that specific
authority and may not go further under its alleged, general Coastal Act powers. *Security National
Guaranty, Inc.*, 159 Cal. App. 4th at 419 ("That an agency has been granted some authority to act
within a given area does not mean that it enjoys *plenary* authority to act in that area."); *Burke v.
California Coastal Comm'n*, 168 Cal. App. 4th 1098, 1108 (2008) ("[I]f a development under the
Coastal Act fits within the language of the statutory exception, the exemption applies even though
the consequence may be some aesthetic or other harm to the environment.").

The Commission may resort to local policies to buttress its apparent belief that it can impose
public access conditions on developed Ranch parcels, notwithstanding contrary language in Section
30610.3(e). It may refer specifically to (1) County Land Use Policy 2-15, which states (in short)
that the Commission will not issue permits at the Ranch unless the requirements of Section
30610.3(e) are met or "access is otherwise provided," and (2) Gaviota Coast Development Standard
REC-3, which states that the in-lieu public access fee section set out in 30610.8 is required for all
permit applications at the Ranch. AR at 9.

The foregoing, local provisions do not mention the "vacant" lot requirement for access
conditions in Public Resources Code Section 30610.3(e). But neither the County nor Commission
could rewrite or erase the provisions of Section 30610.3 through administrative action, such as
adoption/certification of County Land Use Plan policies. *Schneider*, 140 Cal. App. 4th at 1348
("Administrative action that is not authorized by, or is inconsistent with, acts of the Legislature is
void." (quoting *Association for Retarded Citizens v. Department of Developmental Servs.*, 38 Cal.

3d 384, 391 (1985))). In considering a permit application on appeal (as here), the Commission must apply County LCP polices consistently with Section 30610.3—including its reservation of access conditions for *vacant* Ranch lots. AR at 211 (development at the Walls' "project site" must be "reviewed for consistency with the public access and recreation policies of the Coastal Act"); *Yost v. Thomas*, 36 Cal. 3d 561, 572 (1984) (The Coastal Act contemplates "local discretion and autonomy in planning subject to review for conformity to statewide standards."). Even if the County LCP policies for conditioning Ranch permits were valid under the Coastal Act without the vacant lot limitation in Section 30610.3 (they are not), the Commission could not and did not rely only on LCP rules in this case. Instead it had to apply the Coastal Act's public access policies which include the vacant lot requirement in Section 30610.3. AR at 211, *McAllister*, 147 Cal. App. 4th at 273 (Permits "for development between the nearest public road and the sea . . . must include a specific finding that the development is in conformity with the *public access and public recreation policies of the Coastal Act*." (emphasis added; citation omitted)).

The bottom line is that Section 30610.3(e) of the Coastal Act is controlling with respect to public access permit conditions at the Ranch, and its terms plainly state that only "vacant" Ranch lots can be subject to a public access condition (*i.e.*, in-lieu fee). It is undisputed that the Walls' residential property is developed and not vacant. The Commission could not lawfully impose a public access condition on the Walls' proposal. *See* AR at 7 (quoting Pub. Res. Code § 30610.3(e)). Therefore, it could not deny the permit for lack of such condition.

### III.   EVEN IF CONDITIONS ARE LAWFUL FOR THE WALLS' PROPOSAL, THE COASTAL ACT ALLOWED ONLY A $5,000 IN-LIEU FEE—BUT THAT FEE IS ITSELF UNCONSTITUTIONAL UNDER *NOLLAN/DOLAN*

If the Court finds that Public Resources Code Section 30610.3 allows access conditions on developed Ranch parcels, the Commission was statutorily limited to exacting a $5,000 in-lieu fee. In this regard, the controlling provision is Public Resources Code Section 30610.8. It states that "[f]or purposes of Section 30610.3 and with respect to the Hollister Ranch public access program, the in-lieu fee shall be five thousand dollars ($5,000) for each permit." Pub. Res. Code § 30610.8(b). There is no ambiguity in this provision. As shown earlier, Section 30610.3 sets up a specific public access conditioning scheme for the Ranch, creating a fee program in lieu of requiring

actual access. Section 30610.8 completes the scheme by establishing an explicit amount for the fee required by Section 30610.3, and the LCP incorporates this specific fee mandate. *See* Gaviota Coast Plan Development Standard REC-3, AR at 9.

At the time of the Walls' permit hearing, the Commission staff made crystal clear that Section 30610.8 was the operative standard and the only condition the Commission could consider was a $5,000 fee. AR at 288:27-28; *id.* at 289:1 ("[S]ection 30610.8 fixed the amount of the in lieu fee at $5000 per permit. Of course, as you're aware there is currently a potential bill pending that would raise that amount, that's not passed into law yet."). The Commission staff further explained to the Commission that the "legislative balance that was struck [by Section 30610.8] was to allow owners to develop once they paid the in lieu fees." AR at 290:18-19.

The Commission staff attorney confirmed this view, explaining to the Commission that Section 30610.8 set a "hard legal line that leaves not a whole lot of flexibility for us to go back and try and get other types of access, or require other types of access." AR at 293:20-22. However, the Commission did not like the legislature's choice of a $5,000 in-lieu fee for Ranch permits because it viewed that requirement as qualitatively and quantitatively inadequate. AR at 294:23-24 ("[M]oney is not the same as access. Particularly this amount of money and this access for this property . . . ."); *id.* at 294:10 (a $5,000 fee is not "realistic"); *id.* at 295:2-4 ("the people of the State of California . . . must have [actual] access as part of the exchange between those whom must come to us, and request permits").

The Commission is not a super-legislature. It has no authority to ignore Coastal Act provisions with which it disagrees and to make up its own, contrary requirements . *Security National Guaranty, Inc.*, 159 Cal. App. 4th at 419 ("The Commission, like all administrative agencies, has no inherent powers; it possesses only those powers that have been granted to it by the Constitution or by statute. . . . [It] literally has *no power to act* . . . unless and until [the Legislature] confers power upon it." (citations omitted)). The Coastal Commission's job is to administer Coastal Act provisions as written, *id.* ("[I]f the Commission takes action that is inconsistent with, or that simply is not authorized by, the Coastal Act, then its action is void."), subject, of course, to Constitutional limitations. The problem for the Commission here is that even if it had followed the

letter of the Coastal Act and attempted to condition the Wall permit only on a payment of a $5,000 in-lieu (of public access) fee, that requirement would still be unconstitutional under *Nollan*/*Dolan*. A fee to advance public access would be as disconnected from the impact of the Walls' project as a condition demanding actual access. Since there is no evidence that the Walls' specific pool project harms or effects public beach access, demanding in-lieu mitigation fee to secure public beach access impacts is unrelated and disproportionate (in nature) to the Walls' pool plans. *Ehrlich*, 12 Cal. 4th at 883-85.

The Commission will undoubtedly argue that the California Court of Appeal's decision in *Remmenga* allows the imposition of a public access fee. *See Remmenga v. California Coastal Comm'n*, 163 Cal. App. 3d 623 (1985). But *Remmenga* is no longer good law in this area because it predates *Nollan* and *Dolan*, as well as *Ehrlich*, the California Supreme Court's definitive statement on application of *Nollan* and *Dolan* to land use conditions exacting fees. A public access fee fails in this case under these controlling precedents because of the lack of any direct or proportionate relationship between the impacts of the Walls' project and the need to protect public beach access.

## CONCLUSION

The Court should grant the Petition and issue a writ of mandate compelling the Commission to issue the Walls' permit without any public access condition.

DATED: December 7, 2020.

Respectfully submitted,


s/ J. David Breemer
            J. DAVID BREEMER

Attorney for Petitioners and Plaintiffs

**DECLARATION OF SERVICE**

I, J. David Breemer, declare as follows:

I am a resident of the State of California, residing or employed in Sacramento, California. I am over the age of 18 years and am not a party to the above-entitled action. My business address is 930 G Street, Sacramento, California 95814.

I hereby certify that on December 7, 2020, I electronically served the attached MEMORANDUM IN SUPPORT OF THE PETITION FOR A WRIT OF ADMINISTRATIVE MANDATE by transmitting a true copy via E-Service to One Legal efiling system on the persons listed as follows:

>LOUISE A. WARREN
>California Coastal Commission
>455 Market Street, Suite 300
>San Francisco, CA 94105
>
>ANDREW CONTREIRAS
>Deputy Attorney General
>California Department of Justice
>600 W Broadway, Suite 1800
>San Diego, CA 92101-3375

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 7th day of December, 2020, at Sacramento, California.

>s/ J. David Breemer
>J. DAVID BREEMER

# EXHIBIT C

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA BARBARA**

| | | | |
|---|---|---|---|
| Dated and Entered: | 06/04/2021 | Time: | 10:00 AM |
| Judicial Officer: | Donna D Geck | | |
| Deputy Clerk: | Kristi Temple | Dept: | SB Dept 4 |
| Deputy Sheriff: | Marco Diaz | | |
| Court Reporter: | Michelle Sabado | Case No: | 19CV03464 |

## Jack Wall et al vs California Coastal Commission

Parties Present:

| David Breemer | Petitioner's Attorney |
|---|---|
| Andrew Conteiras | Respondent's Attorney |

**NATURE OF PROCEEDINGS***:* **Motion: Judgment on Petition for Writ of Administrative Mandate**

The matter proceeded via Zoom.

The Court adopted the tentative ruling as follows:

**RULING**:

As set forth herein, the petition of petitioners Jack Wall and Wall Family Trust for writ of mandate is granted in part. This matter is remanded to respondent California Coastal Commission to reconsider the appeal of petitioners' application for coastal development permit and to address the issues set forth herein.

**Background:**

Petitioners Jack Wall and Wall Family Trust are the owners of a 101.95-acre parcel of real property within Hollister Ranch and identified as Hollister Ranch Parcel 36 (APN 083-670-011) (the Property) in Santa Barbara County. (Administrative Record [AR] 3 [the point citation reference is to the AR page number with leading zeros omitted].) (Note: The exact designation of ownership is not specified in the moving papers. The Wall Family Trust is identified as the owner of the Property in the permit. (AR 17.) "Legal title to property owned by a trust is held by the trustee, and common law viewed the trustee as the owner of the trust's property." (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1343.) The petition and all paper treat Wall and the Wall Family Trust collectively as the owner. The court follows this designation.) The Ranch is a working cattle ranch that has been in operation for over 100 years. (AR 3.) The Ranch has approximately 8.5 miles of shoreline that includes several cove beaches. (*Ibid.*) The Property is approximately three-quarters of a mile inland from the beach. (*Ibid.*)

There is an existing residence on the Property. (AR 15.) In an application dated July 3, 2018, petitioners applied for a permit for the construction of a 60 ft. by 16 ft. swimming pool and detached 8 ft. by 12 ft. spa within 25 feet of the existing main residence (the Project). (AR 3, 18.) The permit application also identifies four previous permits/ applications for the Property. (AR 17.)

**MINUTE ORDER**

On November 15, 2018, Santa Barbara County (County) approved a coastal development permit (CDP) for the Project (Project CDP) pursuant to the County's Local Coastal Program (LCP). (AR 3.) California Coastal Commissioners Carole Groom and Steve Padilla appealed the approval by the County of the Project CDP. (AR 163-178.)

On January 31, 2019, petitioner Wall sent a letter to the Coastal Commission (Commission) addressing the appeal. (AR 179-180.) The letter states that there have been three prior CDPs for the Property: the first in 1992 for a water well, septic system, and cistern; the second in 2002 for grading, and for the construction of a main house and guest house; and the third for a barn structure. (AR 179.) None of these permits were appealed to the Commission and by their terms became final. (*Ibid.*) The original in-lieu fee was paid by the previous owner in July 1992. (*Ibid.*) Subsequent CDPs were not charged in-lieu fees by the County. (*Ibid.*) Wall states he has no control over the issue of public access. (*Ibid.*) The letter concludes that the only issue he can resolve at this time is the payment of the $5,000 in-lieu fee, which he would be willing to pay if the Commission would allow the project to move forward. (AR 180.)

On May 9, 2019, the Coastal Commission (Commission) held a hearing and denied the application for the Project CDP. (AR 1.) The Commission found that in the local approval of the permit for the Project, the County did not require payment of the $5,000 in-lieu fee. (AR 5.) The in-lieu fees are designed to go toward implementing a public access program to the coastline of the Ranch. (AR 10.) The Commission concluded that "the further expansion of development beyond the single-family dwelling would be inconsistent with the Coastal Act and [Local Coastal Program (LCP)], as issues regarding public access and permitted future development are being resolved in a comprehensive manner." (AR 11.)

On July 3, 2019, petitioners filed this petition for writ of administrative mandate and complaint for declaratory relief. The petition asserts that the rules applied by the Commission do not apply to the Project, either because they do not apply by their terms or because they cannot be constitutionally applied.

On September 13, 2019, the Commission adopted revised findings relating to its denial of the Project CDP.

On November 20, 2020, the Commission filed its answer to the petition, admitting and denying allegations thereof and asserting six affirmative defenses.

**Analysis:**

This is review by petition for writ of administrative mandamus of the Project CDP issued initially by the County and then denied on appeal by the Commission.

The California Coastal Act of 1976 (Coastal Act) (Pub. Resources Code, § 30000 et seq.) provides that that, following certification of a local government's land use plan by the Commission, the Commission delegates authority over coastal development permits to the local government. (*Lindstrom v. California Coastal Com.* (2019) 40 Cal.App.5th 73, 91–92 (*Lindstrom*).) "After a local government grants a coastal development permit, certain types of permit decisions may be appealed to the Commission by the applicant, any aggrieved person, or two members of the Coastal Commission [citation]. As relevant here, an appeal to the Commission is authorized for '[d]evelopments approved by the local government between the sea and the first public road paralleling the sea or within 300 feet of the inland extent of any beach or of the mean high tideline of the sea where there is no beach, whichever is the greater distance.' [Citation.] ' "If the Commission determines that an appeal presents a substantial issue, the permit application is reviewed de novo; in effect, the Commission hears the application as if no local governmental unit was previously involved, deciding for itself whether the proposed project satisfies legal

standards and requirements." ' [Citations.] The Commission's jurisdiction on appeal, however, is limited. [Citation.] Specifically, '[t]he grounds for an appeal ... shall be limited to an allegation that the development does not conform to the standards set forth in the certified local coastal program or the public access policies set forth in [the Coastal Act].' [Citation.] In addition, the Commission's jurisdiction on appeal includes imposing reasonable terms and conditions on the permit, as the Coastal Act provides '[a]ny permit that is ... approved on appeal, ... shall be subject to reasonable terms and conditions in order to ensure that such development or action will be in accordance with the provisions of this division.' [Citation.]" (*Id.* at p. 92, fn. omitted.)

"As our Supreme Court has observed, ' "[u]nder the Coastal Act's legislative scheme, ... the [LCPs] and the development permits issued by local agencies pursuant to the Coastal Act are not solely a matter of local law, but embody state policy." [Citation] "In fact, a fundamental purpose of the Coastal Act is to ensure that state policies prevail over the concerns of local government." ' ' " (*Lindstrom*, *supra*, 40 Cal.App.5th at p. 92, quoting *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 794.)

"To obtain judicial review of a decision or action of the Commission, any aggrieved person has the right to file a petition for writ of mandate pursuant to section 1094.5 of the Code of Civil Procedure. [Citation.] ' " 'The inquiry in such a case shall extend to the questions of whether the [Commission] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.' " [Citation] An abuse of discretion is established if the Commission failed to proceed in the manner required by law, its order or decision is not supported by the findings, or its findings are not supported by substantial evidence. [Citation] [¶] The trial court presumes that the agency's decision is supported by substantial evidence, and the party challenging that decision bears the burden of demonstrating the contrary. [Citation] In reviewing the agency's decision, the court examines the whole record and considers all relevant evidence, including that evidence which detracts from its decision. [Citation.] "Although this task involves some weighing to fairly estimate the worth of the evidence, that limited weighing does not constitute independent review where the court substitutes its own findings and inferences for that of the Commission. Rather, it is for the Commission to weigh the preponderance of conflicting evidence, as [the court] may reverse its decision only if, based on the evidence before it, a reasonable person could not have reached the conclusion reached by it." ' [Citation.]" (*Lindstrom*, *supra*, 40 Cal.App.5th at p. 93.)

The parties here characterize the actions of the Commission quite differently. Petitioners principally argue that the denial of the Project CDP is in effect the imposition by the Commission of unconstitutional conditions. The Commission principally argues that the Project CDP was constitutionally denied as inconsistent with the Coastal Act.

(1)     Unconstitutional Conditions Principles

The principles upon which petitioners rely for their assertion that the Commission imposed unconstitutional conditions are set out in three decisions of the United States Supreme Court: *Nollan v. California Coastal Commission* (1987) 483 U.S. 825 [107 S.Ct. 3141, 97 L.Ed.2d 677] (*Nollan*), *Dolan v. City of Tigard* (1994) 512 U.S. 374 [114 S.Ct. 2309, 129 L.Ed.2d 304] (*Dolan*), and *Koontz v. St. Johns River Water Management District* (2013) 570 U.S. 595 [133 S.Ct. 2586, 186 L.Ed.2d 697] (*Koontz*).

As summarized by the California Supreme Court in *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435 (*California Building*):

"As a general matter, the unconstitutional conditions doctrine imposes special restrictions upon the government's otherwise broad authority to condition the grant of a privilege or benefit when a proposed

condition requires the individual to give up or refrain from exercising a constitutional right. [Citations.] In the takings context, the special limitations imposed by the unconstitutional conditions doctrine upon which [the plaintiff] relies derive from the United States Supreme Court's decisions in [*Nollan*] and [*Dolan*].

"In both *Nollan, supra,* 483 U.S. 825, … and *Dolan, supra,* 512 U.S. 374, … the high court considered the validity of ad hoc administrative decisions regarding individual land-use permit applications that required a property owner, as a condition of obtaining a sought-after permit, *to dedicate a portion of the property to public use.* In *Nollan,* the California Coastal Commission had conditioned its grant of a permit to allow the property owner to demolish a small beachfront bungalow and construct a three-bedroom residence upon the owner's agreement to grant an easement to the public to enter and cross the owner's beachfront property near the water's edge. In *Dolan,* the city had conditioned its grant of a permit to allow the property owner to substantially increase the size of its existing retail business upon the owner's agreement to give a strip of the property to the city for use as part of a public flood-control greenway and bike path.

"In *Nollan, supra,* 483 U.S. 825, … in explaining why the takings clause justified special scrutiny of the coastal commission's imposition of the challenged permit condition at issue in that case, the high court began its analysis by observing: 'Had California simply required the Nollans to make an easement across their beachfront available to the public on a permanent basis in order to increase public access to the beach, rather than conditioning their permit to rebuild their house on their agreeing to do so, we have no doubt there would have been a taking.' [Citation.] Similarly, in *Dolan,* the high court noted that 'had the city simply required petitioner to dedicate a strip of land ... for public use, rather than conditioning the grant of her permit to redevelop her property on such a dedication, a taking would have occurred.' [Citation.] Because under the takings clause a property owner has the right to be paid just compensation when the government takes his or her property for public use, the court in *Nollan* declared that special scrutiny of a governmental action is warranted '*where the actual conveyance of property* is made a condition for the lifting of a land-use restriction, since in that context there is heightened risk that the [government's] purpose is avoidance of the compensation requirement, rather than the stated police-power objective' upon which the condition is ostensibly based. [Citation.] Thereafter, the *Nollan* and *Dolan* decisions proceeded to explain and describe the nature and extent of the special scrutiny that is called for under the takings clause when the government conditions the grant of a land use permit on the property owner's agreement to dedicate a portion of its property for public use without the payment of just compensation. Under *Nollan* and *Dolan,* the government may impose such a condition only when the government demonstrates that there is an 'essential nexus' and 'rough proportionality' between the required dedication and the projected impact of the proposed land use. [Citations.]

"More recently, in [*Koontz*], the high court held that the *Nollan/Dolan* test applies not only when the government conditions approval of a land use permit on the property owner's dedication of a portion of the property for public use but also when it conditions approval of such a permit upon the owner's payment of money. In *Koontz,* the property owner applied for a permit to develop a portion of an undeveloped parcel of land, most of which was classified as wetlands by the state. In his application, the owner agreed to dedicate a portion of the property to the local public water management district as a conservation easement, but the district considered the size of the property owner's proposed conservation easement to be inadequate and instead proposed that the property owner either dedicate a larger portion of the property as a conservation easement or, alternatively, pay for the improvement of other district-owned wetlands within several miles of the owner's property. The property owner refused to accede to the district's proposal, and brought an action in Florida state court against the district, contending among other matters that the district's proposal that he pay a sum of money as an alternative to dedicating an additional portion of his property was itself subject to the *Nollan/Dolan* test and thus that the district was required to show that the amount of money in question satisfied the 'essential nexus' and

'rough proportionality' requirements set forth in those decisions. The Florida Supreme Court rejected the property owner's contention on the ground that a permit condition that requires a property owner to pay or spend money, as contrasted with a condition that requires the owner to give the public a tangible interest in real property, does not provide a basis for a takings claim, and thus was not subject to the *Nollan/Dolan* test.

"In *Koontz* [citation], a majority of the United States Supreme Court disagreed with the Florida Supreme Court's conclusion on this point. The majority began its analysis of this issue by noting 'as an initial matter that if we accepted this argument [that the *Nollan/Dolan* test does not apply to a permit condition that requires the property owner to pay money] it would be very easy for land-use permitting officials to evade the limitations of *Nollan* and *Dolan*. Because the government need only provide a permit applicant with one alternative that satisfies the nexus and rough proportionality standards, a permitting authority wishing to exact an easement could simply give the owner a choice of either surrendering an easement or making a payment equal to the easement's value.... For that reason and those that follow, we reject respondent's argument and hold that so-called "monetary exactions" must satisfy the nexus and rough proportionality requirements of *Nollan* and *Dolan*.' [Citation.]

"It is clear from the decision in *Koontz* [citation], that the *Nollan/Dolan* standard applies to the type of 'so-called "monetary exactions" ' [citation] involved in *Koontz* itself—that is, a monetary payment that is a substitute for the property owner's dedication of property to the public and that is intended to mitigate the environmental impact of the proposed project. However, the full range of monetary land-use permit conditions to which the *Nollan/Dolan* test applies under the *Koontz* decision remains at least somewhat ambiguous. [Fn.] Nonetheless, the *Koontz* decision explicitly acknowledges that '[a] predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing.' [Citation.] Or, in other words, the condition is one that would have constituted a taking of property without just compensation if it were imposed by the government on a property owner outside of the permit process. [Citations.] Nothing in *Koontz* suggests that the unconstitutional conditions doctrine under *Nollan* and *Dolan* would apply where the government simply restricts the use of property without demanding the conveyance of some identifiable protected property interest (a dedication of property or the payment of money) as a condition of approval. It is the governmental requirement that the property owner convey some identifiable property interest that constitutes a so-called 'exaction' under the takings clause and that brings the unconstitutional conditions doctrine into play." (*California Building*, *supra*, 61 Cal.4th at pp. 457–461.)

In order to address petitioners' argument of unconstitutional conditions, it is first necessary to consider the nature and application of in-lieu fees under the Coastal Act.

(2)     In-Lieu Fees

Petitioners argue that statutory in-lieu fees either do not apply to the Project or that the application of such in-lieu fees would be an unconstitutional condition under *Nollan*/*Dolan* test. The Commission argues that in-lieu fees are required and constitutional.

        (A)     Background of In-Lieu Fees

In its findings in this case, the Commission explained the history of in-lieu fees:

"In 1971, Hollister Ranch was subdivided into 135 100-acre (plus) parcels. During the late 1970s, the Commission approved several permits for new homes within Hollister Ranch, and conditioned each of them to require offers to dedicate (OTDs) easements to provide pedestrian trails, recreation areas, and a

shuttle system for transporting the public to the coast at the ranch. The property owners sued, arguing that they were unable to convey the easements required by their permits because the land underlying the main accessways was owned and controlled by a third party-the Hollister Ranch Owners' Association (HROA). Before the court issued a decision on the merits, Assembly Bill 643 was passed to amend the Coastal Act to add Section 30610.3, and the presiding judge declined to rule on the merits of the case." (AR 3.)

Public Resources Code section 30610.3 now provides (as amended in 2003 and 2004):

"(a)    Whenever the commission determines (1) that public access opportunities through an existing subdivided area, which has less than 75 percent of the subdivided lots built upon, or an area proposed to be subdivided are not adequate to meet the public access requirements of this division and (2) that individual owners of vacant lots in those areas do not have the legal authority to comply with public access requirements as a condition of securing a coastal development permit for the reason that some other person or persons has legal authority, the commission shall implement public access requirements as provided in this section.

"(b)    The commission, on its own motion or at the request of an affected property owner, shall identify an area as meeting the criteria specified in subdivision (a). After an area has been identified, the commission shall, after appropriate public hearings adopt a specific public access program for the area and shall request that the State Coastal Conservancy, established pursuant to Division 21 (commencing with Section 31000), implement the program. The access program shall include, but not be limited to, the identification of specific land areas and view corridors to be used for public access, any facilities or other development deemed appropriate, the commission's recommendations regarding the manner in which public access will be managed, and the types of permitted public uses. The State Coastal Conservancy shall, pursuant to its authority, implement the public access program.

"(c)    The State Coastal Conservancy shall be authorized to expend funds when appropriated from the Coastal Access Account for the purchase of lands and view easements and to pay for any development needed to carry out the public access program specified in subdivision (a). Not more than 5 percent of the amount of funds necessary to carry out each public access program may be provided as a grant to the State Coastal Conservancy for its administrative costs incurred in carrying out the access program.

"(d)    The State Coastal Conservancy may enter into any agreement it deems necessary and appropriate with any state or local public agency or with a private association authorized to perform those functions for the operation and maintenance of any access facilities acquired or developed pursuant to this section.

"(e)    Every person receiving a coastal development permit or a certificate of exemption for development on any vacant lot within an area designated pursuant to this section shall, prior to the commencement of construction, pay to the commission, for deposit in the Coastal Access Account, an 'in-lieu' public access fee. The amount of each fee shall be determined by dividing the cost of acquiring the specified lands and view easements by the total number of lots within the identified area. The proportion of the acquisition cost that can be allocated to lots built upon pursuant to permits that were not subject to public access conditions under this division or the California Coastal Zone Conservation Act of 1972 (former Division 18 (commencing with Section 27000)) shall be paid from the Coastal Access Account. An 'in-lieu' public access fee may be in the form of an appropriate dedication, in which event the lots to which the dedication can be credited shall not be counted toward the total number of lots used in arriving at the "in-lieu" public access fee share for each remaining lot.

"(f)      For purposes of determining the acquisition costs specified in subdivision (e), the State Coastal
Conservancy may, in the absence of a fixed price agreed to by both the State Coastal Conservancy and
the seller, specify an estimated cost based on a formal appraisal of the value of the interest proposed to
be acquired. The appraisal shall be conducted by an independent appraiser under contract with the State
Coastal Conservancy and shall be completed within 120 days of the adoption of the specific public
access program by the commission pursuant to subdivision (b). The appraisal shall be deemed suitable
for all purposes of the Property Acquisition Law (Part 11 (commencing with Section 15850 of the
Government Code)). For every year following public acquisition of the interests in land specified as part
of a public access program and prior to payment of the required 'in-lieu' fee, a carrying cost factor equal
to 5 percent of the share attributable to each lot shall be added to any unpaid 'in-lieu' public access fee,
provided, however, that a lot owner may pay the 'in-lieu' public access fee at any time after public
acquisition in order to avoid payment of the carrying cost factor.

"(g)      No provision of this section may be applied within any portion of the unincorporated area in the
County of Sonoma, commonly known as the Sea Ranch." (Pub. Resources Code, § 30610.3.) (Note: The
entire text of section 30610.3 is provided here for context and reference; specific text is repeated below
where helpful to the discussion.)

The Commission continued in its findings and explanation of the history of in-lieu fees:

"Assembly Bill 643 revised the Coastal Act to add Section 30610.3, which creates an alternative for
owners of subdivided lots to provide comprehensive coastal access when they are unable to provide
parcel-by-parcel access through individual permits. This process begins when the Commission formally
designates an area as eligible. The Commission then prepares an access program for the area outlining
what type of public uses will be permitted, the facilities that will be provided, and how the program will be
managed. Once adopted, the Coastal Conservancy is responsible for implementing the program. After
Assembly Bill 643 was enacted, the court handling the Hollister property owners' lawsuit recognized the
potential to apply this legislation to Hollister Ranch, and remanded the case back to the Commission in
July 1980 for further consideration. In January of that year, the Commission adopted a resolution
designating Hollister Ranch as an appropriate area for an in-lieu fee program pursuant to Section
30610.3.

"Following this designation, staff from the Commission and the Coastal Conservancy worked together to
develop an access program for Hollister Ranch. The staff determined that fieldwork would be necessary
to accurately evaluate the area's natural resources and appropriately site the proposed access facilities.
This fieldwork required surveying the common areas of the Ranch, as well as nineteen private parcels.
The HROA allowed staff to visit the common areas; however, fourteen of the then nineteen landowners
would not give permission for staff to survey their property. After concluding that a survey of only five of
the nineteen private parcels would be inadequate, staff was forced to limit its fieldwork to the common
areas of the Ranch.

"Nevertheless, Commission and Conservancy staff prepared the Hollister Ranch Coastal Access
Program based on the limited data available. The program calls for a phased and monitored approach to
opening and managing access to the Ranch. It proposes the construction of beach facilities for 100-150
daily users, with pedestrian trails, bicycle paths, and shuttle vans to access those facilities. The program
also prioritizes protection of sensitive habitat areas and acknowledges the property owners' privacy
expectations. Both agencies jointly adopted the program on August 18, 1981 (with revisions adopted in
May 1982, and revised findings for those revisions adopted in August 1982).

"However, without adequate access to Hollister Ranch property, the Conservancy could not obtain
necessary appraisal data. The Conservancy therefore had no way to determine the cost of acquiring and

developing the public access easements proposed in the plan. Without knowing the costs, staff could not calculate the value of the in-lieu fees necessary to fund the program, as required by Section 30610.3. As a result, the Conservancy was unable to implement the Hollister Ranch Coastal Access Program.

"Recognizing that the establishment of an in-lieu fee could be delayed indefinitely if the landowners did not cooperate in the appraisal process, in February 1982, the Legislature passed Assembly Bill 321 ([Stats. 1982, ch. 43, § 23, p. 128]), which added Section 30610.8 to the Coastal Act. This legislation fixed the amount of the in-lieu fee at Hollister Ranch at $5,000 per permit in 1982 and appropriated $500,000 for expenditure by the Conservancy to implement the access program. When adding Sections 30610.3 and 30610.8 to the Coastal Act, the Legislature's intent was to create an in-lieu fee program to allow initial development at Hollister Ranch without applicants having to wait for final resolution of the actual provision of public access, while simultaneously securing funds toward the ultimate goal of providing public access to the Ranch's coastline. However, the Legislature also intended for the access programs to result in timely public access, as evidenced in Section 30610.8, which states that 'public access should be provided in a timely manner.' To date, implementation of a public access program at Hollister Ranch has not been fulfilled." (AR 3-4.)

Former Public Resources Code section 30610.8, prior to its amendment in 2019, effective January 1, 2020—that is, as it existed at the time of the Commission's denial now under consideration—provided:

"(a)    The Legislature hereby finds and declares that adispute exists at the Hollister Ranch in Santa Barbara County withrespect to the implementation of public access policies of thisdivision and that it is in the interest of the state and the propertyowners at the Hollister Ranch to resolve this dispute in anexpeditious manner. The Legislature further finds and declares thatpublic access should be provided in a timely manner and that inorder to achieve this goal, while permitting property owners tocommence construction, the provisions of this section are necessaryto promote the public's welfare.

"(b)    For purposes of Section 30610.3 and with respect to theHollister Ranch public access program, the in-lieu fee shall be fivethousand dollars ($5,000) for each permit. Upon payment by theapplicant for a coastal development permit of this in-lieu fee to theState Coastal Conservancy for use in implementing the public accessprogram, the applicant may immediately commence construction ifthe otherconditions of the coastal development permit, if any, havebeen met. No condition may be added to a coastal developmentpermit that was issued prior to the effective date of this section forany development at the Hollister Ranch.

"(c)    It is the intent of the Legislature that the State CoastalConservancy and the State Public Works Board utilize theirauthority provided under law to implement, as expeditiously aspossible, the public access policies and provisions of this division atthe Hollister Ranch in Santa Barbara County.

"(d)    Notwithstanding provision 2 of category (2) of Item3760-490-721 of the Budget Act of 1984, all in-lieu fees receivedpursuant to this section shall be deposited in the State CoastalConservancy Fund and shall be available for appropriation to theconservancy for the purposes specified in subdivision (d) of Section5096.151." (Stats. 1984, ch. 1551, § 1, p. 5473.) (Note: The 1984 amendment of section 30610.8 only revised subdivision (d) to conform to the then-current budget act and did not otherwise change section 30610.8. The entire text of former section 30610.8 is provided here for context and reference; specific text is repeated below where helpful to the discussion.)

The Commission continued in its findings and explanation of the history of in-lieu fees:

"In 2018, Assemblymember Limon authored a bill, AB 2534, that, among other things, would have clarified existing law and created funding mechanisms to provide public access to the public's tide and

submerged lands within Hollister Ranch. On September 30, 2018, Governor Brown vetoed AB 2534 stating, 'this bill relies on the implementation of a coastal access program adopted in 1982 ... it is now outdated.' Governor Brown asked that state agencies 'work together to craft a sensible and fiscally responsible plan.' Accordingly, on March 1, 2019, the staffs of the Coastal Commission, State Lands Commission, Coastal Conservancy, and Department of Parks and Recreation entered into an inter-agency Collaboration Agreement to further the State of California's public policy of responsibly expanding and enhancing the public's access to and along the coast and the public's cultural, educational and recreational experiences at Hollister Ranch. The purpose of this Agreement is to develop a new, contemporary Public Access Program informed by meaningful and comprehensive public outreach and stakeholder engagement in a timely manner. As such, the effort of public outreach and engagement to develop a contemporary Public Access Program is currently underway.

"On November 7, 2018, prior to the County's action on the subject CDP, the Commission certified the Gaviota Coast Plan, which functions as a stand-alone area plan that is a component of the County's LCP. Certification of the Gaviota Coast Plan applied new goals, policies, and development standards developed specifically for the Gaviota Coast Plan area, which includes Hollister Ranch. These goals, policies, and development standards address protection of environmental resources, agricultural resources, and public access among other land use issues. Development within the plan area also continues to be subject to the policies and provisions of the remainder of the County's LCP. One of the Gaviota Coast Plan development standards (Development Standard REC-3) reflects Coastal Act Section 30610.8, which requires payment of a fee for each CDP issued for development in Hollister Ranch." (AR 5.)

The development standard cited by the Commission is:

"Hollister Ranch Public Access. In order to mitigate for the potential impacts to public access from the development of Hollister Ranch, a fee consistent with Section 30610.8 of the California Public Resources Code shall be required as a condition of each coastal development permit issued for development in Hollister Ranch." (Santa Barbara County, Gaviota Coast Plan (adopted Nov. 8, 2016, cert. by Cal. Coastal Com., Nov. 7, 2018) Development Std. REC-3, p. 4-39.)

       (B)    Application of In-Lieu Fees

Petitioners argue that the in-lieu fees apply only to the initial construction on a parcel and not to any subsequent construction such as the Project. Petitioners point out that section 30610.3, subdivision (e) provides: "Every person receiving a coastal development permit or a certificate of exemption *for development on any vacant lot* within an area designated pursuant to this section shall, prior to the commencement of construction, pay to the commission … an 'in-lieu' public access fee." (Italics added.) Petitioners argue that because the $5,000 in-lieu fee was adopted "to resolve dispute and delay over the state's push for actual public access at the Ranch," the $5,000 fee with the limitation of subdivision (e) provides "the exclusive Coastal Act method of seeking access at the Ranch through permitting." (Petitioners' memorandum in support [POB], p. 18.)

The Commission argues that section 30610.3 and former section 30610.8 are related but distinct statutes with different fees. (Note: As noted above, the text of section 30610.8 has since been amended. The court thus refers to the operative text as the former section.) Subdivision (b) of former section 30610.8 provides: "For purposes of Section 30610.3 and with respect to the Hollister Ranch public access program, the in-lieu fee shall be five thousand dollars ($5,000) for each permit." This language is contrasted with the language of section 30610.3, subdivision (e) which is requires payment by "each person receiving a coastal development permit" for development on vacant land. The former is expressly

on a per permit basis; the latter is on a per person basis. Moreover, former section 30610.8 is the later-enacted and more specific statute.

In reply to the Commission's argument, petitioners point to the language of former section 30610.8, subdivision (b) prefacing the fee as "[f]or purposes of section 30610.3." Petitioners argue that this compels a construction of former section 30610.8 that includes the limitation of development on vacant parcels. Petitioners thus conclude that the $5,000 fee does not apply to their Project.

" 'Our role in interpreting statutes is to ascertain and effectuate the intended legislative purpose. [Citations.] We begin with the text, construing words in their broader statutory context and, where possible, harmonizing provisions concerning the same subject. [Citations.] If this contextual reading of the statute's language reveals no ambiguity, we need not refer to extrinsic sources. [Citations.]' [Citation.]" (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 478.) "If, however, 'the statutory language may reasonably be given more than one interpretation, "courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." ' " (*Heckart v. A-1 Self Storage, Inc.* (2018) 4 Cal.5th 749, 757, internal quotation marks and citations omitted.)

Former section 30610.8 is ambiguous in that the meaning of the phrase "for purposes of section 30610.3" is unclear. However, the history of sections 30610.3 and 30610.8 together with the statutory scheme provides a persuasive basis to explain the application of former section 30610.8 here. Section 30610.3, subdivisions (e) and (f) provide a statutory scheme whereby acquisition costs for acquisition of interest in public land as part of the public access program identified in section 30610.3 is funded by apportioning those costs to the affected subdivided area. As noted above, former section 30610.8 sets an amount as an in-lieu fee "per permit" without reference to the acquisition costs of interest in land for the more general use "in implementing the public accessprogram". Where, as the history of these provisions informs us, owners at Hollister Ranch refused to cooperate so as to calculate total acquisition costs for apportionment in calculating the fee under section 30610.3, it is reasonable that the Legislature would adopt a different funding mechanism to implement a more generic public access program at Hollister Ranch that is not dependent upon specific acquisition costs and correspondingly not limited by apportionment principles. Thus, the most harmonious interpretation of the "for purposes of section 30610.3" preface to former section 30610.8, subdivision (b) is to explain, consistent with the provisions relating to public access programs and their management in section 30610.3, that the amounts collected under former section 30610.8 were to be used in the manner and for the purposes of public access programs authorized and described in section 30610.3.

Unlike section 30610.3's apportionment scheme, under petitioners' reading of former section 30610.8, the maximum amount to be funded from the in-lieu fees for all time would be $5,000 per parcel, regardless of the actual expected acquisition costs contemplated by section 30610.3 and regardless of whether delay by non-cooperation caused those expected acquisition costs to increase with the value of the land. This reading would be expected to make public access at Hollister Ranch less financially viable, particularly as time passes so as to reward non-cooperation and delay. This reading is contrary to the strong statements of Legislative policy to provide public access. (Pub. Resources Code, §§ 30001.5, subds. (a)-(c), 30610.3, subd. (a), 30610.8, subds. (a) & (c); Pub. Resources Code, former § 30610.8, subds. (a) & (c).)

Based upon the foregoing, the court concludes that the development of a vacant lot limitation of section 30610.3 does not apply to limit the application of the $5,000 in-lieu fee "per permit" of former section 30610.8. Thus, the $5,000 in-lieu fee of former section 30610.8 applies to each CDP issued for development and not merely to the initial CDP issued for the development of a vacant parcel. Consequently, the $5,000 in-lieu fee applies to the Project CDP.

There is no dispute that the $5,000 in-lieu fee has not been paid. (However, as discussed below, there is a remaining, unresolved issue as to whether in-lieu fees unpaid for prior CDPs are a further impediment to the Project CDP.) Petitioners further argue that requiring payment of the $5,000 in-lieu fee is an unconstitutional condition.

(C)     Constitutionality of In-Lieu Fee

The Commission argues that the unconstitutional conditions doctrine does not apply in the first instance because the Commission denied the Project CDP and did not condition its grant or denial upon dedication of interests in property or upon the payment of an ad hoc fee. The Commission did, however, provide as its principal basis for denial the fact of nonpayment of the in-lieu fee.

"In the local approval of the permit that is the subject of this appeal, the County did not require payment of the $5,000 in-lieu fee. Additionally, the County does not have a record of in-lieu fees being paid in connection with prior County coastal development permits issued for any of the existing development on the property, which includes a single-family residence and guesthouse approved for development in 2001, a barn approved in 2010, and an accessory storage structure approved in 2011." (AR 5.) "The project as proposed does not include the in-lieu fee payment as required by LUP Policy 2-15 and Gaviota Coast Plan Development Standard REC-3, and the proposed project therefore does not meet the standards of LUP Policy 2-15 and Coastal Act Section 30610.3." (AR 11.)

As discussed above, the $5,000 in-lieu fee is required by section 30610.8. In approving the Project CDP, the County did not also require payment of the $5,000 in-lieu fee. There was therefore no reason—and no mechanism—for petitioners to pay that fee. The absence of a payment condition for that in-lieu fee was the first ground upon which the appeal to the Commission was made. (AR 149.) As noted above, petitioners expressed their willingness to pay that fee to resolve the appeal. There is therefore a fundamental problem in a de novo appeal to the Commission in which the result is—at least in part—that petitioners were given no opportunity to pay a statutorily required fee and yet denied their application because they did not pay the statutorily required fee. Because the in-lieu fee is required by statute and the Commission did not condition the permit on the payment of the fee, the Commission has in that regard abused its discretion by failing to proceed in the manner required by law.

Because the court concludes that, at least, the $5,000 in-lieu fee was statutorily due and the Commission should have, but did not, condition approval of the Project CDP on the payment of the $5,000 in-lieu fee. (As discussed below, although payment of the $5,000 in-lieu fee is a necessary condition for CDP approval, other conditions may also apply.) The failure of the Commission to make such a condition because it denied the application outright does not mean that petitioners were not subject to a necessary condition for approval that they may argue was an unconstitutional condition under the *Nollan/Dolan* test. In other words, had the Commission acted correctly (and payment of in-lieu fees was the only unmet condition), then payment of money would be a requirement for issuance of the CDP which could potentially run into *Nollan/Dolan* scrutiny.

Petitioner's argument that the $5,000 in-lieu fee is an unconstitutional condition runs immediately into the decisions of the California courts that have held such a fee is constitutional. Directly in on point is *Remmenga v. California Coastal Commission* (1985) 163 Cal.App.3d 623 (*Remmenga*).

In *Remmenga*, in 1977 the petitioners acquired a lot in Hollister Ranch located more than a mile from the coast. (*Remmenga, supra,* 163 Cal.App.3d at p. 626.) In 1978, the petitioners filed an application with the Commission for permission to construct a single family residence. (*Ibid.*) In 1982, the Legislature adopted the 1982 urgency measure adding former section 30610.8. (*Ibid.*) The petitioners then sought a writ of

mandate from the trial court to compel the Commission to issue a CDP without payment of the $5,000 fee required by former section 30610.8. (*Id.* at p. 625.) The trial court denied the petition. (*Ibid.*)

One issue presented in *Remmenga* on appeal was whether former section 30610.8, as applied to the petitioners there, "exacts an unconstitutional condition for receipt of a permit—the payment of money in lieu of dedication of a right of way to the coast." (*Remmenga*, *supra*, 163 Cal.App.3d at p. 627.) After reviewing then-current precedents, the *Remmenga* court found former section 30610.8 constitutional as against the unconditional conditions challenge:

"In the present case, the Legislature had ample basis upon which to conclude that construction of the proposed improvement between the first public road and the coast, in combination with improvement of other lots in that area, would have a cumulative adverse impact on the public's constitutional right of access. Government studies have demonstrated that hundreds of miles of publicly owned tidelands have been walled off from public access by private development. [Citations.] [¶] The importance of public access is recognized in the California Constitution, Article X, Section 4, which states: 'No individual, partnership, or corporation, claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this State, shall be permitted to exclude the right of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the Legislature shall enact such laws as will give the most liberal construction to this provision, so that access to the navigable waters of this State shall be always attainable for the people thereof.' [¶] Petitioner's proposed improvement may constitute only a small impediment to public access, but when viewed as a part of the entire subdivision as it develops in the future the proposed improvement may well be a link in a chain barring access or making access more difficult and costly. [¶] If the Hollister Ranch had not previously been subdivided and were now applying for subdivision approval, public access to the shore could constitutionally have been required. [Citations.] The fact that the ownership has been divided into 135 lots should not foreclose the access requirement as a condition of development. Each lot owner may be required, not to provide total access, but to participate in providing it. This is the plan devised and mandated by the Legislature." (*Remmenga*, *supra*, 163 Cal.App.3d at p. 630.)

Petitioners here assert that *Remmenga* is "no longer good law in this area because it predates *Nollan* and *Dolan*, as well as [*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854 (*Ehrlich*)], the California Supreme Court's definitive statement on the application of *Nollan* and *Dolan* to land use conditions exacting fees." (POB, at p. 22.) While agreeing that the reasoning of *Remmenga* predates the *Nollan/ Dolan* test, the Commission argues that nothing has abrogated the holding of *Remmenga* and *Erhlich* and later cases have upheld legislative in-lieu fees of the type required by section 30610.8.

In *Ehrlich*, the plaintiff acquired vacant property and obtained city approval to develop the site as a private tennis club and recreational facility. (*Ehrlich*, *supra*, 12 Cal.4th at p. 860.) (Note: Unless otherwise stated, citations to *Ehrlich* are to the plurality opinion.) After operating the facility for several years, the facility was closed as a result of financial losses. (*Id.* at p. 861.) Discussions took place between the city and the plaintiff about the use of the property, with the city noting its concern about the need for recreational facilities within the city. (*Id.* at pp. 861-862.) Ultimately, the city decided not to purchase the property itself, but, at the same time, the city disapproved plaintiff's application to construct a condominium complex on the site. (*Id.* at p. 862.) The existing site improvements were then demolished. (*Ibid.*)

In attempting to restructure the project, the plaintiff in *Ehrlich* was informed by the city that the project would not be approved unless the plaintiff agreed to build new recreational facilities for the city. (*Ehrlich*, *supra*, 12 Cal.4th at p. 862.) The plaintiff filed his petition for writ of mandate and complaint for

damages. (*Ibid.*) In subsequent discussions with the city, the city voted to approve the plaintiff's application conditioned upon payment of certain monetary extractions: "In lieu of the construction of four tennis courts as a condition of approval, the city required the payment of $280,000 'to be used' as stated in the ratifying ordinance, 'for additional [public] recreational facilities as directed by the City Council.' " (*Ibid.*) The amount of the fee was based upon a city study which showed that the replacement costs for the recreational facilities lost as a result of amending the specific plan. (*Ibid.*) The city also required the plaintiff to pay a fee under the city's "art in public places" program. (*Ibid.*) Under the city's ordinance, new residential development projects of more than four units, as well as all commercial, industrial, and public building projects with a building valuation exceeding $500,000, were required to provide "art work" (as defined by the ordinance) for the project in an amount equal to 1 percent of the total building valuation, or to pay an equal amount in cash to the city art fund. (*Ibid.*) The plaintiff made written protests regarding these fees, which were rejected by the city, and the plaintiff proceeded with his challenge that these fees constituted unconstitutional conditions. (*Id.* at p. 863.)

On appeal in *Ehrlich*, the Court of Appeal affirmed the judgment as to the in-lieu art fee but reversed as to the recreation fee. (*Ehrlich*, *supra*, 12 Cal.4th at p. 864.) The United States Supreme Court granted certiorari, vacated the decision of the Court of Appeal, and remanded the case for further consideration in light of its opinion in *Dolan*. (*Ibid.*) On remand, the Court of Appeal reached the same result as before. (*Ibid.*) The California Supreme Court then granted review. (*Ibid.*)

The California Supreme Court in *Ehrlich* did not provide a single opinion of the court but instead provided multiple opinions. The plurality opinion of Justice Arabian, joined by Chief Justice Lucas and then-Justice George, held that the recreation fee, as calculated was an unconstitutional condition, but that some portion of the recreation fee could potentially be justified on a subsequently-developed record. (*Ehrlich*, *supra*, 12 Cal.4th at p. 884 (plur. opn. of Arabian, J.).) "Under this view of the constitutional role of the consolidated 'essential nexus' and 'rough proportionality' tests, it matters little whether the local land use permit authority demands the actual *conveyance* of property or the *payment* of a monetary exaction." (*Id.* at p. 876.) The art fee, on the other hand, was upheld against this challenge:

"Nevertheless, we agree with the city that the art in public places fee is not a development exaction of the kind subject to the *Nollan-Dolan* takings analysis. As both the trial court and the Court of Appeal concluded, the requirement to provide either art or a cash equivalent thereof is more akin to traditional land use regulations imposing minimal building setbacks, parking and lighting conditions, landscaping requirements, and other *design* conditions such as color schemes, building materials and architectural amenities. Such aesthetic conditions have long been held to be valid exercises of the city's traditional police power, and do not amount to a taking merely because they might incidentally restrict a use, diminish the value, or impose a cost in connection with the property." (*Id.* at p. 886.)

Justice Mosk filed a concurring opinion in which he stated agreement with the judgment of the court and the analysis and holding that the art fee was constitutional. (*Ehrlich*, *supra*, 12 Cal.4th at p. 887 (conc. opn. of Mosk, J.).) As to the recreation fee, Justice Mosk noted: "Only when the government engages in the physical taking or invasion of real and personal property, or singles out individual property owners by conditioning development permits on the payment of ad hoc fees not borne by a larger class of developers or property owners, does the heightened scrutiny of *Nollan* and *Dolan* apply." (*Id.* at pp. 887–888.) Justice Kennard, joined by Justice Baxter, also agreed with the plurality as to the art fee:

"I concur in the judgment insofar as it upholds the 'art in public places' fee. I agree with the majority that this fee, imposed under an ordinance of general applicability, is not subject to the 'essential nexus' and 'rough proportionality' requirements that the United States Supreme Court established in [*Nollan*] and [*Dolan*] to determine whether certain development conditions violate the takings clause of the Fifth Amendment to the United States Constitution. I further agree with the majority that the art in public

places fee is valid under traditional standards for judging the constitutional validity of development requirements of general applicability." (*Ehrlich*, *supra*, 12 Cal.4th at p. 903 (conc. & dis. opn. of Kennard, J.).)

Justice Werdegar filed an opinion concurring in the judgment and stating agreement with much of the reasoning of the plurality opinion, including that portion relating to the art fee. (*Ehrlich*, *supra*, 12 Cal.4th at p. 912 (conc. & dis. opn. of Werdegar, J.).)

A majority in *Ehrlich* further agreed that to the extent a development mitigation fee is *not* subject to heightened scrutiny under *Nollan* and *Dolan,* there must nonetheless be a "reasonable relationship" between the fee and the deleterious impacts for mitigation of which the fee is collected. (*Ehrlich, supra,* 12 Cal.4th at pp. 865, 867, 50 Cal.Rptr.2d 242, 911 P.2d 429 (plur. opn. of Arabian, J.); *id.* at p. 897, 50 Cal.Rptr.2d 242, 911 P.2d 429 (conc. opn. of Mosk, J.).) There was therefore unanimity in *Ehrlich* that the art fee was constitutional because the *Nollan/Dolan* test applies to ad hoc monetary exactions but not to legislative in-lieu fees.

*Ehrlich* was followed by the California Supreme Court's decision in *San Remo Hotel L.P. v. City And County of San Francisco* (2002) 27 Cal.4th 643 (*San Remo Hotel*). In *San Remo Hotel*, the plaintiffs were owners of a hotel, which at the time was renting its rooms to longer-term residents, sought approval from the City of San Francisco to rent all of its rooms to tourists or other daily renters. (*Id.* at p. 649.) The plaintiffs eventually received approval but were required to obtain a conditional use permit and to help replace the lost residential units lost by the conversion, which the plaintiffs elected to do by paying an in-lieu fee. (*Ibid.*) The plaintiffs challenged these conditions by petition for writ of mandate, which was denied by the trial court. (*Ibid.*) The Court of Appeal reversed. (*Ibid.*)

The California Supreme Court granted review and reversed the Court of Appeal. (*San Remo Hotel*, *supra*, 27 Cal.4th at pp. 649–650.) The *San Remo Hotel* court noted: "The Court of Appeal held that housing replacement fees assessed under the [ordinance] were subject to *Nollan/Dolan/Ehrlich* review because they were exacted discretionarily and applied only to a relatively small number of property owners rather than to 'every other property in the City.' Plaintiffs defend that analysis, while the City argues for the more deferential constitutional scrutiny applicable to land use regulations made generally applicable by legislative enactment to a class of property owners. [¶] We agree with the City." (*Id.* at p. 668.)

"The 'sine qua non' for application of *Nollan/Dolan* scrutiny is thus the 'discretionary deployment of the police power' in 'the imposition of land-use conditions in individual cases.' [Citation.] Only 'individualized development fees warrant a type of review akin to the conditional conveyances at issue in *Nollan* and *Dolan*.' [Citations.]" (*San Remo Hotel*, *supra*, 27 Cal.4th at p. 670.) "We decline plaintiffs' invitation to extend heightened takings scrutiny to all development fees, adhering instead to the distinction we drew in *Ehrlich* …, [*Landgate, Inc. v. California Coastal Commission* (1998) 17 Cal.4th 1006], and [*Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952], between ad hoc exactions and legislatively mandated, formulaic mitigation fees." (*Id.* at pp. 670-671.)

The California Supreme Court's most recent decision on this issue is *California Building*, *supra*, 61 Cal.4th 435, from 2015—after the United States Supreme Court's decision in *Koontz*, *supra*, 570 U.S. 595. In *California Building*, the issue presented was the application of the unconstitutional conditions doctrine to an inclusionary housing ordinance by the City of San Jose that, among other features, required all new residential development projects of 20 or more units to sell at least 15 percent of the for-sale units at a price that is affordable to low or moderate income households. (*California Building*, *supra*, 61 Cal.4th at p. 442.) The trial court agreed with the plaintiff trade association that conditions of the

**MINUTE ORDER**

ordinance constituted unconstitutional exactions and enjoined enforcement of the ordinance. (*Id.* at p. 443.) The Court of Appeal reversed and the Supreme Court granted review. (*Ibid.*)

On review in *California Building*, the Supreme Court summarized the decisions of the United States Supreme Court as quoted above. The California Building court also discussed the art fee at issue in *Ehrlich*:

"By contrast, with respect to the public art condition—which required the developer either (1) to pay into the city art fund a fee equal to 1 percent of the total building valuation, or (2) to contribute an approved work of public art of an equivalent value that could be placed on site or donated to the city for placement elsewhere—the court in *Ehrlich* did not evaluate the validity of the condition by asking whether or not the amount of the required fee or value of the work of art was reasonably related to the adverse impact that the proposed development would have on the existing state of public art in the city. The purpose of the public art requirement in question was not to replace existing public art that would be eliminated by a proposed project or to mitigate any adverse impact on the amount of public art in the community that would result from the proposed development. Instead, the purpose of the public art requirement was to increase the works of public art that are present in the community for the general benefit of the community as a whole, by requiring all future large development projects to provide some public art or to pay an in lieu fee to be used for the acquisition of public art in another location. Given this purpose, application of a legal test that would limit all public art requirements only to those requirements that mitigate the impact of a proposed project would have resulted in the invalidation of the challenged condition. Instead, in *Ehrlich* this court upheld the validity of the public art requirement (including the related in lieu public art fee) upon finding that the requirement (and related in lieu fee) was reasonably related to the constitutionally legitimate public purpose of increasing the amount of publicly accessible works of art for the benefit of the community and the public as a whole. [Citations.]" (*California Building*, *supra*, 61 Cal.4th at pp. 475–476.)

The *California Building* court addressed the continuing vitality of the distinction between ad hoc fees and legislatively prescribed fees after *Koontz*:

"An additional ambiguity arises from the fact that the monetary condition in *Koontz,* like the conditions at issue in *Nollan* and *Dolan,* was imposed by the district upon an ad hoc basis upon an individual permit applicant, and was not a legislatively prescribed condition that applied to a broad class of permit applicants. In this respect, the money payment at issue in *Koontz* was similar to the monetary recreational-mitigation fee at issue in this court's decision in [*Ehrlich*], where we held that because of the greater risk of arbitrariness and abuse that is present when a monetary condition is imposed on an individual permit applicant on an ad hoc basis, the validity of the ad hoc fee imposed in that case should properly be evaluated under the *Nollan/Dolan* test. [Citations.] The *Koontz* decision does not purport to decide whether the *Nollan/Dolan* test is applicable to legislatively prescribed monetary permit conditions that apply to a broad class of proposed developments. [Citations.] Our court has held that legislatively prescribed monetary fees that are imposed as a condition of development are not subject to the *Nollan/Dolan* test." (*California Building*, *supra*, 61 Cal.4th at p. 461, fn. 11.)

Justice Werdegar, the author of the court's opinion in *San Remo Hotel*, joined the majority opinion in *California Building* and filed a concurrence to address the vitality of *San Remo Hotel* after developments by the United States Supreme Court. (*California Building*, *supra*, 61 Cal.4th at p. 483 (conc. opn. of Werdegar, J.).) Justice Werdegar asked: "Given the high court's abandonment of the idea that a regulation works a taking of private property if it does not substantially advance a legitimate government interest, how should our statement in *San Remo Hotel*—that legislatively formulated mitigation fees must, as a constitutional as well as a statutory matter, be reasonably related to the

development's impacts—be understood? Does *San Remo Hotel* state a takings test or a due process test?" (*Id.* at p. 485.) Justice Werdegar answered her question:

"In light of *[Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528 [125 S.Ct. 2074, 161 L.Ed.2d 876] (*Lingle*)]*, I believe, *San Remo Hotel's* reasonable relationship test for legislatively formulated mitigation fees is best understood to state a due process standard, not a takings one. As the *Lingle* court emphasized, regulatory takings law is centrally concerned not with the 'fit' between a regulation and its goals but with the burdens the regulation imposes on a property owner, both absolutely and relative to others in the community. 'The owner of a property subject to a regulation that *effectively* serves a legitimate state interest may be just as singled out and just as burdened as the owner of a property subject to an *ineffective* regulation.... Likewise, an ineffective regulation may not significantly burden property rights at all, and it may distribute any burden broadly and evenly among property owners.' [Citation.] *San Remo Hotel's* reasonable relationship test does not focus on the absolute or relative burden of a mitigation fee, but on whether it is reasonably justified by the legislative goal of mitigating development impacts. As such, it relates most naturally not to whether private property has been taken but to whether the fee regulation is 'so arbitrary or irrational that it runs afoul of the Due Process Clause.' [Citation.]

"As explained in the majority opinion, in a due process challenge to police power regulations, the burden of proof is on the party challenging the ordinance, rather than on the government: the challenger must demonstrate that the measure lacks a reasonable relationship to the public welfare. [Citation.] A developer challenging a legislatively mandated mitigation fee under *San Remo Hotel* would thus need to show the fee lacks a substantial relationship to the deleterious impacts of, or public resource needs created by, the development. This mode of means-ends scrutiny has been generally equated to the rational-basis standard. [Citation.] Under this deferential form of analysis, for the challenger to show that the city or other entity imposing a fee had not undertaken individualized studies to determine the size of fee needed for mitigating the impacts of each development presumably would not be enough. I am unaware of any decisions suggesting a mitigation fee is arbitrary or irrational merely because it is not demonstrably proportionate to individual development impacts, so long as the fee schedule's overall scale and structure has a real and substantial relationship to the public measures needed to accommodate and mitigate the effects of the development." (*California Building*, *supra*, 61 Cal.4th at pp. 485–486 (conc. opn. of Werdegar, J.).)

Taking all of this together, the $5,000 in-lieu fee at issue here falls squarely within the class of legislatively mandated fees, including the art fee upheld in *Ehrlich*, which is not subject to the *Nollan/Dolan* analysis as stated in *California Building*. As discussed above with respect to the difference between Public Resources Code section 30610.3 and former section 30610.8, because of the practical failure of section 30610.3 to assess in-lieu fees based upon the cost of acquisition of property interests, former section 30610.8 creates a separate funding mechanism for a more general public access program that does not vary the fee on any basis other than the issuance of a permit. This legislatively-determined fee provides no discretion in its application or amount. Unlike the section 30310.3 fee, this legislatively-determined fee is not measured by the cost of acquisition of interests in property and is, both formally and practically, not a substitute for a required dedication of an interest in property. The court concludes that the former section 30610.8 in-lieu fee is functionally equivalent to the art fee in *Ehrlich* and, for the same reasons as discussed in *Ehrlich* and *California Building*, imposition of this fee is not an unconstitutional condition.

Petitioners do not here assert a due process challenge of the sort discussed in Justice Werdegar's concurrence in *California Building*. Nevertheless, the court notes that, as Justice Werdegar points out, such a challenge would be in the nature of a rational basis challenge. Regardless of whatever continuing vitality *Remmenga* may have as it relates to a takings challenge after *Nollan/Dolan*, *Remmenga* provides

**MINUTE ORDER**

an answer to the rational basis question in favor of the constitutionality of former section 30610.8, bringing us full circle back to where we started.

(3)    Unanswered Questions

Based upon the foregoing, the court concludes that the Commission failed to proceed in the manner required by law by denying the Project CDP on the grounds of failing to pay the $5,000 in-lieu fee under former Public Resources Code section 30610.8 without conditioning approval upon payment of that fee or otherwise providing petitioners the opportunity to pay that fee. The court also concludes that the requirement to pay the $5,000 in-lieu fee under former section 30610.8 is not an unconstitutional condition. These conclusions do not completely resolve the issues presented in the petition because the Commission asserts other, related bases for denial of the Project CDP.

One additional issue is payment of former section 30610.8 in-lieu fees for prior CDPs for the Property. (AR 5.) Petitioners have identified the existence of the prior CDPs and the lack of payment of the former section 30610.8 fees. The Commission notes that in order to issue the Project CDP, the Commission must find that "the proposed development is in conformity with the certified local coastal program." (Pub. Resources Code, § 30604, subd. (b).) Because payment of statutory fees is required, the Commission argues that petitioners are not in conformity with the certified LCP. (See AR 5, 9, 11.) This issue is raised, but, as with the absence of a condition for payment of the $5,000 in-lieu fee applicable to the Project CDP, the record does not show to what extent the Commission determined that fees for prior CDPs must be paid to bring the Project in conformity with the LCP. Petitioner presented as in issue the finality of the prior CDP proceedings as a ground why no payment for prior CDPs are due, regardless of whether they had been owing at the time of the issuance of the prior CDPs. The amounts and circumstances are inadequately presented here for the court to make any determination as to this issue. Thus, to the extent that the Commission intends to rely upon the nonpayment of the former section 30610.8 in-lieu fees as an additional ground for denial of the Project CDP, the Commission needs to provide adequate findings and provide petitioners a condition or other opportunity to make those payments in order for the Project CDP to issue. If the Commission makes such a specific condition for payment of fees previously required but unpaid, petitioners retain their rights to challenge that condition. For the same reasons discussed above as to the nonpayment of the former section 30610.8 fee for the Project CDP, the Commission fails to proceed according to law by relying upon such nonpayment as basis for denial of the Project CPD without conditioning issuance of the Project CDP upon such payment or otherwise providing petitioners an opportunity to make such payments. Nothing herein should be construed by any party as suggesting whether, or to what extent, such prior fees may now be required for issuance of the Project CDP; the court reserves determination of that issue when, or if, presented upon a complete record.

Another, and broader, issue is noncompliance with public access conditions as a basis for outright denial of the Project CDP. "Moreover, even if the in-lieu fee had been paid in this case, LUP Policy 2-15 prohibitsissuance of CDPs for development at Hollister Ranch unless the Commission certifies that therequirements of Coastal Act Section 30610.3 have been met by each applicant or that theCommission finds that access is otherwise provided in a manner consistent with the accesspolicies of the Coastal Act." (AR 11.) "In-lieu fees have not led to any actual coastal access in Hollister Ranch. Thus, imposition of thein-lieu fee condition has not ensured that public access will be 'provided in a timely manner,' ascalled for in Coastal Act Section 30610.8" (*Ibid.*, emphasis omitted.) "Because public access and public recreational opportunities have not been provided at HollisterRanch in the manner called for by the Coastal Act and LCP, and are not proposed to be providedconcurrently with new development in this case, the requirements of Coastal Act Section30610.3have not been met, nor has access otherwise been provided in a manner consistent withthe access policies of the Coastal Act. In addition, as issues pertaining to coastal access andprivate development at Hollister Ranch arecurrently being resolved through legislative andadministrative processes, as well as in litigation, approval of expanded

**MINUTE ORDER**

development at this timewould thwart the goals and policies of the Coastal Act. Therefore, the further expansion ofdevelopment beyond the single-family dwelling would be inconsistent with the Coastal Act andLCP, as issues regarding public access and permitted future development are being resolved in acomprehensive manner. For all of these reasons, the proposed project is not consistent with LUPPolicy 2-15 and the other Coastal Act and LCP requirements cited above." (*Ibid.*, fn. omitted.)

The reasoning of the Commission in this aspect of the denial is confusing. There is no factual dispute, and the AR plainly demonstrates, that petitioners have no specific ability to provide public access to the coast. There is nothing in the AR which otherwise suggests that the Project itself would or could impede public access through a public access program in the future. It is unclear from this reasoning what petitioners can do to meet the conditions of section 30610.3 to the extent that the Commission asserts that section 30610.3 requires petitioners' individual action. Thus, to the extent that the Commission is denying the Project CDP on the grounds that petitioners themselves are not complying with section 30610.2 by failing to provide public access or by impeding future public access, the Commission is requiring an impossibility from these petitioners.

As discussed above, there is an issue of nonpayment of in-lieu fees required under section 30610.8, but the Commission appears to assert that payment of required fees are insufficient to meet the more general requirements for public access the Commission asserts under section 30610.3. This argument appears to run afoul of the statutory text of former section 30610.8: "Upon payment by theapplicant for a coastal development permit of this in-lieu fee to theState Coastal Conservancy for use in implementing the public accessprogram, the applicant may immediately commence construction ifthe otherconditions of the coastal development permit, if any, havebeen met." It is unclear from the language of section 30610.3 and former section 30610.8 how the "other conditions" provision would reasonably include a requirement that petitioners provide actual public access that they are incapable of providing.

The effect of the argument made by the Commission is that no CDPs can be issued for any development at Hollister Ranch until there is public access as contemplated by section 30610.3. But again, there is confusion in this reasoning by the statement that "issues regarding public access and permitted future development are being resolved in acomprehensive manner." This language is more in the nature of a moratorium on development. It may or may not be legally appropriate for the Commission to impose such a moratorium (if that is the Commission's intent), and different considerations may apply, but from the language used by the Commission is not possible to determine whether the basis for the denial is the lack of compliance *by petitioners* with Hollister Ranch obligations outside of their capacity or control or the basis for the denial is something broader or different. Based upon the lack of a clear explanation for which there is support in the record, the appropriate resolution is to require further proceedings for the Commission to clarify this asserted basis for the denial and to provide a sufficient record for the court to review the Commission's decision. (See, e.g., *Los Alamitos Gen. Hosp., Inc. v. Lackner* (1978) 86 Cal.App.3d 417, 425–426.)

(4)     Conclusion

For the reasons set forth above, the court will grant the petition for a writ of mandate and remand this matter to the Commission to address the issues identified herein and to conduct further proceedings consistent with this ruling. In particular, the Commission shall reconsider the appeal of the Project CDP. On reconsideration, if the Commission determines to deny the Project CDP on grounds other than the nonpayment of in-lieu fees pursuant to former Public Resources Code section 30610.8, the Commission shall specifically state the factual and legal basis for denial on such grounds. In addition, the Commission shall identify all prior in-lieu fees, if any, that the Commission asserts are now unpaid and for which approval of the Project CDP must be conditioned if all other grounds for denial were removed. As to all such prior in-lieu fees, the Commission shall give petitioners the opportunity to object or to accept the

condition of payment for approval of the Project CDP, subject to all other grounds for which the
Commission asserts for denial. The Commission shall require payment of the $5,000 in-lieu fee of former
section 30610.8 relating to the Project CDP as a condition for approval of the Project CDP, subject to all
other grounds for which the Commission asserts for denial. The court does not otherwise direct how the
Commission is to exercise its discretion on these issues.

DARREL E. PARKER, EXECUTIVE OFFICER          Minutes Prepared by:

                                             _____ , Deputy
                                                        Kristi Temple

# EXHIBIT D

Court of Appeal, Second Appellate District
Daniel P. Potter
Electronically RECEIVED on 8/16/2021 at 12:21:02 PM

Court of Appeal, Second Appellate District
Daniel P. Potter
Electronically FILED on 8/16/2021 by Sherry Claborn, Deputy Clerk

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION 6

———————————————

### No. B312912

———————————————

WALL, et al.,
Plaintiffs-Appellants,

v.

CALIFORNIA COASTAL COMMISSION,
Defendant-Respondent.

———————————————

On Appeal from the Superior Court of Santa Barbara
(Case No. 19CV03464, Honorable Donna D. Geck, Judge)

———————————————

## APPELLANTS' OPENING BRIEF

———————————————

J. DAVID BREEMER, No. 215039
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: JBreemer@pacificlegal.org

*Attorney for Plaintiffs-Appellants*
*Jack Wall and Wall Family Trust*

**TO BE FILED IN THE COURT OF APPEAL**                                          **APP-008**

| COURT OF APPEAL          SECOND **APPELLATE DISTRICT, DIVISION** 6 | COURT OF APPEAL CASE NUMBER:<br>B312912 |
|---|---|

| ATTORNEY OR PARTY WITHOUT ATTORNEY:                              STATE BAR NUMBER:  215039<br>NAME:  J. David Breemer<br>FIRM NAME: Pacific Legal Foundation<br>STREET ADDRESS: 930 G Street<br>CITY:  Sacramento                                STATE: CA       ZIP CODE: 95814<br>TELEPHONE NO.: (916) 419-7111                       FAX NO.: (916) 419-7747<br>E-MAIL ADDRESS: JBreemer@pacificlegal.org<br>ATTORNEY FOR (name):   Plaintiffs-Appellants Jack Wall and Wall Family Trust | SUPERIOR COURT CASE NUMBER:<br>19CV03464 |
|---|---|

| APPELLANT/   JACK WALL and WALL FAMILY TRUST<br>PETITIONER:<br><br>RESPONDENT/            CALIFORNIA COASTAL COMMISSION<br>REAL PARTY IN INTEREST: | |
|---|---|

| **CERTIFICATE OF INTERESTED ENTITIES OR PERSONS** | |
|---|---|
| *(Check one):*    ☒ INITIAL CERTIFICATE    ☐ SUPPLEMENTAL CERTIFICATE | |

> **Notice: Please read rules 8.208 and 8.488 before completing this form. You may use this form for the initial certificate in an appeal when you file your brief or a prebriefing motion, application, or opposition to such a motion or application in the Court of Appeal, and when you file a petition for an extraordinary writ. You may also use this form as a supplemental certificate when you learn of changed or additional information that must be disclosed.**

1.  This form is being submitted on behalf of the following party *(name* ):  Plaintiffs-Appellants Jack Wall and Wall Family Trust

2.  a.   ☒  There are no interested entities or persons that must be listed in this certificate under rule 8.208.

    b.   ☐   Interested entities or persons required to be listed under rule 8.208 are as follows:

| **Full name of interested<br>entity or person** | **Nature of interest**<br>*(Explain):* |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |

☐  Continued on attachment 2.

**The undersigned certifies that the above-listed persons or entities (corporations, partnerships, firms, or any other association, but not including government entities or their agencies) have either (1) an ownership interest of 10 percent or more in the party if it is an entity; or (2) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves, as defined in rule 8.208(e)(2).**

Date: August 16, 2021

J. David Breemer
(TYPE OR PRINT NAME)                                              ►

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
APP-008 [Rev. January 1, 2017]                    **CERTIFICATE OF INTERESTED ENTITIES OR PERSONS**             Cal. Rules of Court, rules 8.208, 8.488
*www.courts.ca.gov*

RJN 64

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED ENTITIES OR PERSONS ..................................................................2

TABLE OF CONTENTS ..................................................................3

TABLE OF AUTHORITIES ........................................................5

INTRODUCTION ..........................................................................8

STATEMENT OF THE CASE ...................................................... 11

LEGAL AND FACTUAL BACKGROUND................................. 12

ARGUMENT ................................................................................ 32

  I.  DENIAL OF THE PERMIT FOR LACK OF AN ACCESS CONDITION VIOLATES THE COASTAL ACT .......................................................... 32

    A.  Denial for Lack of Actual Access Violates the Coastal Act ................................................. 33

    B.  The Permit Could Not Be Conditioned or Denied Under the Coastal Act for Lack of a $5,000 Fee.............. 35

  II.  EVEN IF THE COASTAL ACT ALLOWS ACCESS CONDITIONS AS A GENERAL MATTER, DENIAL OF THE PERMIT IN THIS CASE FOR LACK OF ACCESS IS UNCONSTITUTIONAL ...................................................... 42

    A.  The Unconstitutional Conditions Doctrine...................... 44

    B.  The Denial of the Walls' Permit for Lack of Actual Public Access Violates *Nollan* and *Dolan* ............ 47

  III.  THE LOWER COURT'S REMAND FOR IMPOSITION OF A $5,000 IN-LIEU FEE WAS ERRONEOUS BECAUSE THE FEE ALSO VIOLATES THE UNCONSTITUTIONAL CONDITIONS DOCTRINE ....... 51

    A.  The Fee Violates *Nollan* and *Dolan* ................................. 52

B.  The Fee Violates the Pre-*Nollan* and *Dolan*
"Reasonable Relationship" Test.......................................55

CONCLUSION..............................................................................58

CERTIFICATE OF COMPLIANCE............................................59

DECLARATION OF SERVICE...................................................60

# TABLE OF AUTHORITIES

## Cases

*Alliance for Responsible Planning v. Taylor*,
  278 Cal. Rptr. 3d 376 (2021) ................................................... 53

*Associated Home Builders v. City of Walnut Creek*,
  4 Cal. 3d 633 (1971) ............................................... 47

*Association for Retarded Citizens v. Department of Developmental Servs.*,
  38 Cal. 3d 384 (1985) ............................................. 40

*Burke v. California Coastal Comm'n*,
  168 Cal. App. 4th 1098 (2008) ............................... 34

*Cedar Point Nursery v. Hassid*,
  141 S. Ct. 2063 (2021) ........................................ 53-54

*City of Carmel-by-the-Sea v. Board of Supervisors*,
  71 Cal. App. 3d 84 (1977) ...................................... 33

*Delaney v. Superior Court*,
  50 Cal. 3d 785 (1990) ........................................... 39

*Dolan v. City of Tigard*,
  512 U.S. 374 (1994) ........................................ 42, 44-46, 49, 51

*Ehrlich v. City of Culver City*,
  12 Cal. 4th 854 (1996) ...................................... 46-47

*Hollister Ranch Owners Association v. Becerra*,
  No. CV 20-00453, 2020 WL 5047903 (C.D. Cal. May 18, 2020) ................................... 13-14

*Koontz v. St. Johns River Water Management Dist.*,
  570 U.S. 595 (2013) .................................... 10, 43, 45-46, 50-51

*Lechuza Villas West v. California Coastal Comm'n*,
  60 Cal. App. 4th 218 (1997) .................................. 14

*Liberty v. California Coastal Comm'n*,
  113 Cal. App. 3d 491 (1980) ................................. 56

*Lindborg-Dahl Investors, Inc. v. City of Garden Grove*,
    179 Cal. App. 3d 956 (1986) .................................................... 33

*McAllister v. County of Monterey*,
    147 Cal. App. 4th 253 (2007).................................................. 13

*Nollan v. California Coastal Comm'n*,
    483 U.S. 825 (1987).......................................... 42, 44-45, 49, 55

*Penn Central Transp. Co. v. City of New York*,
    438 U.S. 104 (1978)............................................................... 53

*People v. Arias*,
    45 Cal. 4th 169 (2008)........................................................... 39

*Remmenga v. California Coastal Comm'n*,
    163 Cal. App. 3d 623 (1985) ................................... 14, 34, 40, 57

*San Remo Hotel L.P. v. City & County of San Francisco*,
    27 Cal. 4th 643 (2002)...................................................... 47, 55

*Schneider v. California Coastal Comm'n*,
    140 Cal. App. 4th 1339 (2006)................................................ 40

*Security National Guaranty, Inc. v.*
    *California Coastal Comm'n*,
    159 Cal. App. 4th 402 (2008)............................................. 40-41

*Surfside Colony, Ltd. v. California Coastal Comm'n*,
    226 Cal. App. 3d 1260 (1991) ................................................. 46

*Village Communities, LLC v. County of San Diego*,
    No. 3:20-cv-01896-BEN-DEB, 2021 WL 369543
    (S.D. Cal. Feb. 3, 2021) ..................................................... 52-53

*Woods v. Young*,
    53 Cal. 3d 315 (1991) ............................................................ 39

## Statutes

7 U.S.C. § 136g(a)(1)(A) ................................................................ 54

16 U.S.C. § 823b(a) ...................................................................... 54

21 U.S.C. § 374(a)(1) .................................................................... 54

42 U.S.C. § 2201(o) ...................................................................... 54

Pub. Res. Code § 30000, *et seq.* .................................................. 12

Pub. Res. Code § 30519(a) ........................................................... 12

Pub. Res. Code § 30600(a) ........................................................... 12

Pub. Res. Code § 30603(c) ....................................................... 21-22

Pub. Res. Code § 30610.3 ...................................................... 9, 14-18

Pub. Res. Code § 30610.3(e) ................................... 9, 17-18, 36, 38

Pub. Res. Code § 30610.8 ..................................................... 14-15, 18-19

Pub. Res. Code § 30610.8(a) ......................................................... 15

Pub. Res. Code § 30610.8(b) .................................................... 37, 56

## INTRODUCTION

This case arises from the California Coastal Commission's (Commission) unlawful and unconstitutional denial of a permit for a small family pool and spa on a residentially developed parcel at Hollister Ranch (Ranch), Santa Barbara County. Appellants Jack Wall and the Wall Family Trust (Walls) own a large parcel of land that was residentially developed by a prior owner decades ago. Administrative Record (AR) at 3. The lot is more than three-quarters of a mile from the beach, *id.*, surrounded by private land and not viewable or accessible from any public road or area. AR at 61. In 2018, the Walls applied to build a small family pool and spa next to their home. *Id.* at 3.

The Commission denied the permit because the Walls did not grant public beach access at the Ranch as part of their pool project. AR at 11. After the denial, the Walls sought a writ of mandamus under Code of Civil Procedure (CCP) Section 1094.5 to overturn the Commission's decision. They asserted that the denial of the pool permit for failure to provide public access at the Ranch

was illegal under the Coastal Act and unconstitutional because there is no connection between the impact of their pool and public beach access that would justify an access condition.

The Superior Court recently granted in part and denied in part the writ of mandate. The court rejected the Walls' Coastal Act and constitutional claims. Clerk's Transcript (CT) at 44-57. It nevertheless remanded the permit issue to the Commission, with instructions to approve the permit subject to condition that the Walls pay a $5,000 in-lieu (of public access) fee. CT at 59.

Neither the Commission's nor trial court's decision is correct. Under the controlling Coastal Act provision, Pub. Res. Code § 30610.3, no public access condition—whether in the form of actual public access or an in-lieu fee—is authorized for a minor addition (like the pool) to a previously developed lot. Pub. Res. Code § 30610.3(e).

Moreover, in this case, imposition of a public access condition violates the unconstitutional conditions doctrine. That doctrine forbids the government from demanding permit conditions that are unrelated or disproportionate to the impact of a development, and from denying a permit because the applicant will not submit to such a condition. *See Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 604-06 (2013). The Walls' pool and spa project, which is planned on a private, publicly unviewable, developed parcel located almost a mile from the coastline, has no impact on public beach access, and the Commission found no such impact. CT at 58-59 ("There is nothing in the AR which otherwise suggests that the Project itself would or could impede public access[.]"). Therefore, a denial of the permit for lack of an access condition is unconstitutional. *Id*.

Ultimately, it appears that the agency's treatment of the Walls was driven more by its hostility towards Hollister Ranch than by the law or facts. But the Wall family cannot be made to pay for the sins of other past, or future, Ranch property owners.

The only permit before the Commission was a permit for one pool and spa for one family. Regardless of its policy differences with the Ranch, the Commission lacks authority to require an access condition or deny the permit for lack of one. The Court should grant a writ ordering the Commission to approve the permit without any such condition.

## STATEMENT OF THE CASE

As noted above, this is an administrative mandamus action arising under Code of Civil Procedure Section 1094.5. The Commission made a final decision denying the Walls a permit on May 9, 2019. On or about July 3, 2019, the Walls filed a Verified Petition for Writ of Administrative Mandate, asserting that the Commission's decision was (1) not in accordance with law and (2) an abuse of discretion.

On June 4, 2021, the Superior Court for the County of Santa Barbara adopted a final decision remanding the Walls' permit application to the Commission. CT at 59. In so doing, it ordered the agency to "require payment of the $5,000 in-lieu fee . . . as a

condition for approval of the Project" unless the agency found (based on record evidence) that denial of the permit was warranted on other grounds (i.e., grounds distinct from the in-lieu fee issue). *Id.* This decision disposed of all of the Walls' claims, and the Walls timey appealed on June 8, 2021.

## LEGAL AND FACTUAL BACKGROUND

### The General Coastal Act Permitting Scheme

Under the California Coastal Act, Pub. Res. Code § 30000, *et seq.*, property owners must generally secure a Coastal Development Permit (CDP) before building in the coastal zone, an area which includes Hollister Ranch. Pub. Res. Code § 30600(a). The Coastal Act delegates primary authority for the issuance of most CDP's to local governments that have adopted a Local Coastal Program (LCP) certified by the Commission. Pub. Res. Code § 30519(a). When a local government has adopted a certified LCP, as is the case in Santa Barbara County, coastal development permit applicants like the Walls are required to submit their CDP

applications to the County and the County makes the initial permit decision.

In some circumstances, the Coastal Commissioners can appeal a county's final permit decision to the Commission. When this occurs, the Commission will subsequently decide whether to accept appellate jurisdiction; a process called a "substantial issue" determination. If the appeal is confirmed, the agency then reviews the underlying permit application on a de novo basis, applying the applicable Coastal Act and LCP rules. AR at 211; *see generally McAllister v. County of Monterey*, 147 Cal. App. 4th 253, 273-74 (2007).

**Hollister Ranch**

Hollister Ranch is a 14,500-acre area of property located just south of Point Conception. Originally a large cattle ranch, the Ranch was subdivided in the early 1970's into approximately 135 100-acre+ agriculturally zoned parcels, and some common areas, while remaining a working cattle ranch. AR at 213-14. *See generally Hollister Ranch Owners Association v. Becerra*, No. CV

20-00453, 2020 WL 5047903, at *1-2 (C.D. Cal. May 18, 2020). A number of the Ranch parcels are now developed with a home (only one home is allowed within a two-acre building envelope on each 100-acre parcel) and accessory structures (like stables). But many remain vacant. AR at 3.

The Pacific Ocean lies along the southwestern boundary of the Ranch. While the state owns the (wet) beach areas lying seaward of the mean high-water mark, *Lechuza Villas West v. California Coastal Comm'n*, 60 Cal. App. 4th 218, 235 (1997), the dry shorelands lying inland of the mean high-water mark are private property. There is no public road or public area in the Ranch. AR at 76; *Remmenga v. California Coastal Comm'n*, 163 Cal. App. 3d 623, 626 (1985).

The Ranch is subject to some special permitting rules that supplement the general Coastal Act permitting scheme described above. Pub. Res. Code §§ 30610.3, 30610.8. These rules originate from a 1970's-era controversy between a few Ranch owners and the State of California regarding the state's attempts to obtain public

access on private property, without just compensation. Pub. Res. Code § 30610.8(a); AR at 293:11-15. In the late 1970's, the state legislature amended the Coastal Act to address Ranch access issues, *id.*; AR at 214, by creating a program for payment of in-lieu public access fees for development of vacant Ranch lots. AR at 3-4; *see* Pub. Res. Code § 30610.3. However, disputes arose over the method for calculating the amount of the in-lieu fees mandated by Public Resources Code Section 30610.3. To settle the dispute, and avoid delays, the legislature amended the Act again, adding Public Resources Code Section 30610.8, which fixed the amount of the in-lieu access fees in Section 30610.3 at $5,000. AR at 215, 218.

These Coastal Act provisions remained unchanged until January 1, 2020. In fall of 2019, the state legislature amended Sections 30610.3 and 30610.8 by passing Assembly Bill 1680. Among other changes, this action increased the amount of the in-lieu access fee in Section 30610.8 from $5,000 to $33,000. The 2019 amendments are not applicable here, however, because the Commission decided the Walls' permit under the former version of

the statute. The controlling version is therefore set out below and is referenced throughout the Administrative Record. *See* AR at 7-9.

**Public Resources Code Section 30610.3 and Section 30610.8: Framework for In-Lieu Fees on Some Ranch Parcels**

The former version of Public Resources Code Section 30610.3 states:

> (a)  Whenever the Commission determines (1) that public access opportunities through an existing subdivided area, which has less than 75 percent of the subdivided lots built upon, or an area proposed to be subdivided are not adequate to meet the public access requirements of this division and (2) that individual owners of vacant lots in those areas do not have the legal authority to comply with public access requirements as a condition of securing a coastal development permit for the reason that some other person or persons has legal authority, the Commission shall implement public access requirements as provided in this section.

> (b)  The Commission, on its own motion or at the request of an affected property owner, shall identify an area as meeting the criteria specified in subdivision (a).[1]  After an area has been identified, the Commission shall, after appropriate public hearings adopt a specific public access program for the area and

---

[1] The Commission designated the Ranch as an area subject to Section 30610.3 in the early 1980's. AR at 214.

shall request that the State Coastal Conservancy, established pursuant to Division 21 (commencing with Section 31000), implement the program. The access program shall include, but not be limited to, the identification of specific land areas and view corridors to be used for public access, any facilities or other development deemed appropriate, the commission's recommendations regarding the manner in which public access will be managed, and the types of permitted public uses. The State Coastal Conservancy shall, pursuant to its authority, implement the public access program.

(c) The State Coastal Conservancy shall be authorized to expend funds when appropriated from the Coastal Access Account for the purchase of land and view easements and to pay for any development needed to carry out the public access program specified in subdivision (a). Not more than 5 percent of the amount of funds necessary to carry out each public access program may be provided as a grant to the State Coastal Conservancy for its administration incurred in carrying out the access program.

(d) The State Coastal Conservancy may enter into any agreement it deems necessary and appropriate with any state or local public agency or with a private association authorized to perform those functions for the operation and maintenance of any access facilities acquired or developed pursuant to this section.

(e) Every person receiving a coastal development permit or a certificate of exemption for development on any vacant lot within an area designated pursuant to this section shall, prior to the commencement of construction, pay to the commission, for deposit in the Coastal Access Account, an "in-lieu" public access fee.

The amount of each fee shall be determined by dividing the cost of acquiring the specified lands and view easements by the total number of lots within the identified area. The proportion of acquisition cost that can be allocated to lots built upon pursuant to permits that were not subject to public access conditions under this division or the California Coastal Zone Conservation Act of 1972 (former Division 18 (commencing with Section 27000)) shall be paid from the Coastal Access Account. An "in-lieu" public access fee may be in the form of an appropriate dedication, in which event the lots to which the dedication can be credited shall not be counted toward the total number of lots used in arriving at the "in-lieu" public access fee share for each remaining lot.

AR at 217-18.

The former version of Section 30610.8 states:

(a)  The Legislature hereby finds and declares that a dispute exists at the Hollister Ranch in Santa Barbara County with respect to the implementation of public access policies of this division and that it is in the interest of the state and the property owners at the Hollister Ranch to resolve this dispute in an expeditious manner. The Legislature further finds and declares that public access should be provided in a timely manner and that in order to achieve this goal, while permitting property owners to commence construction, the provisions of this section are necessary to promote the public's welfare.

(b) For purposes of Section 30610.3 and with respect to the Hollister Ranch public access program, the in-lieu fee shall be five thousand dollars ($5,000) for each permit. Upon payment by the applicant for a coastal development permit of this in-lieu fee to the State Coastal Conservancy for use in implementing the public access program, the applicant may immediately commence construction if the other conditions of the coastal development permit, if any, have been met. No condition may be added to a coastal development permit that was issued prior to the effective date of this section for any development at the Hollister Ranch.

AR at 218-19.

Santa Barbara County's certified LCP includes rules for Ranch permits that generally mirror Section 30610.3 and Section 30610.8. For instance, Santa Barbara County Land Use Plan Policy 2-15 states:

The County shall not issue permits for non-exempt development on the Hollister Ranch unless the Coastal Commission certifies that the requirements of PRC Section 30610.3 have been met by each applicant or that the Commission finds that access is otherwise provided in a manner consistent with the access policies of the Coastal Act.

AR at 219.

The Gaviota Coast Plan Development Standard REC-3 (Hollister Ranch Public Access) part of the LCP further states:

> In order to mitigate for the potential impacts to public access from the development of Hollister Ranch, a fee consistent with Section 30610.8 of the California Public Resources Code shall be required as a condition of each coastal development permit issued for development in Hollister Ranch.

*Id.*

**The Wall Property and Initial Permit Process**

The Walls own a residentially developed 101.95-acre parcel in Hollister Ranch. The property is designated as Santa Barbara County Assessor Parcel No. 083-670-011 and as Hollister Ranch Parcel No. 36. AR at 213. The parcel is not near the beach. It is located about three-quarters of a mile inland from the Pacific shoreline. AR at 153.



000088

In 1992, the former owner of the parcel applied for a permit for a well and septic system in anticipation of residential development. AR at 157. As the Walls informed the Commission, a $5,000 in-lieu fee was paid in July 1992 by the owner of the property at the time. *Id.* In any case, the County granted the first residential development permit and that approval was not appealed to the Commission. AR at 179. It therefore became final by operation of law. Pub. Res. Code § 30603(c) (A local coastal permit decision "shall become final at the close of business on the

10th working day from the date of receipt by the commission of the notice of the local government's final action, unless an appeal is submitted within that time."). In 2002, the County granted a permit for construction of a house and guest house. AR at 157. That permit was not appealed to the Commission, and it soon became final by operation of law. Pub. Res. Code § 30603(c). In 2010, the County granted a permit for a barn. That permit was not appealed to the Commission and it too became final by operation of law. Pub Res. Code § 30603(c). In reviewing the current application for a pool and spa, the County found that "[t]he subject property and development on the property is in compliance with all laws, rules and regulations pertaining to zoning uses, subdivisions, setbacks and any other applicable provisions . . . and any applicable zoning violation enforcement fees and processing fees have been paid." AR at 61. This finding was not appealed by the Commission.

In 2018, the Walls applied to the County to build a 60 ft. by 16 ft. swimming pool, with a detached 8 ft. by 12 ft. in-ground spa. The Walls' proposed pool and spa was designed for family get-

togethers and would be located adjacent to the existing residence

on the southwestern side. AR at 86, 110-11.

WALL RESIDENCE | 36 HOLLISTER RANCH ROAD, GAVIOTA, CA - APN: 083-670-011



000087



000086

On November 15, 2018, Santa Barbara County approved a coastal development permit for the pool and spa, finding it was consistent with the County's LCP. CT at 55-72. In so doing, the County did not require the Walls to pay a public access in-lieu fee.

On December 18, 2018, members of the Commission appealed the County's approval of the Wall permit to the Commission. The basis of the appeal was that the pool permit was potentially inconsistent with Coastal Act public beach access policies. AR at 162-78. The Commission's appeal did not raise any other issues. AR at 176. On February 7, 2019, the Commission found the access concerns raised a "substantial issue" justifying the agency in asserting appellate jurisdiction over the Walls' pool application. AR at 206.

The Commission staff subsequently issued a report and recommendation relating to de novo review of the Walls' pool application. AR at 208-24. In its report, the staff recommended that the Commission approve the Walls' pool permit on the condition that the Walls pay the $5,000 in-lieu fee in Public Resources Code Section 30610.8.[2] AR at 211-12.

[2] AR at 215; 221.

## The Commission's Final Decision and Findings

On May 9, 2019, the Commission held a public hearing on
its de novo review of the Walls' pool proposal. AR at 208, 287. At
that time, the Commission considered the staff recommendation
that the permit be approved subject to a $5,000 public access in-
lieu fee. The Commission also considered testimony from the
Gaviota Coastal Trail Alliance, a group of Santa Barbara County
coastal activists. The Alliance urged the Commission to ignore the
staff-recommended $5,000 in-lieu fee and to deny the Wall permit
outright unless and until actual public access was offered at the
Ranch. AR at 291-92.

At the close of the May 9, 2019, hearing, the Commissioners
rejected the staff's recommendation of permit approval subject to
a $5,000 in-lieu public access fee. One Commissioner declared that
such a fee was "not realistic." *Id.* at 294:10-12. She complained that
"they"—apparently referring to Ranch owners—had not provided
actual public access at the Ranch, and asserted that the agency
was "free to do whatever we needed to do" to get public access in

the Ranch. AR at 294:3. A second Commissioner concurred, stating that "*money is not the same as access* . . . [p]articularly this amount of money and this access for this property[.]" AR at 294:23-24 (emphasis added).

A third Commissioner similarly stated that obtaining actual "public access to this amazing resource and area has primacy over in lieu fees." *Id.* at 295:6-7. She summarized:

> [T]he Commission is signaling we believe that it is the essential elements of the Coastal Act that apply in this particular case[, w]hich is that the people of the State of California *have access*, must have access as part of the exchange between those whom must come to us, and request permits . . . .

AR at 295:1-4 (emphasis added). A fourth Commissioner agreed that the Commission "can't be continuing to approve [Ranch] project[]" permits without actual public access. *Id.* at 295:15-16.

Ultimately, the Commission denied the Walls' pool permit as inconsistent with Coastal Act and LCP public access provisions. In findings explaining the agency's rejection of the $5,000 in-lieu fee

option for approval, the Commission[3] emphasized that Public Resources Code Section 30610.8 "states that *actual public access should be provided in a timely manner.*" AR at 11 (emphasis added). The agency then found that

> even if the in-lieu fee had been paid in this case, LUP Policy 2-15 prohibits issuance of CDP's for development at Hollister Ranch unless the Commission certifies that the requirements of Coastal Act Section 30610.3 have been met by each applicant or that the Commission finds that access is otherwise provided in a manner consistent with the access policies of the Coastal Act.

AR at 11. Noting that "[i]n-lieu fees have not led to any *actual coastal access* in Hollister Ranch," *id.* (emphasis added), the Commission concluded that denial was warranted:

> Because public access and public recreational opportunities have not been provided at Hollister Ranch in the manner called for by the Coastal Act and LCP, and are not proposed to be provided concurrently with new development in this case, the requirements of Coastal Act Section 30610.3 have not been met, nor

---

[3] The Commission adopted revised findings four months after its May 9, 2019, decision and two months after the Walls filed their Petition for Writ of Mandate.

has access otherwise been provided in a manner consistent with the access policies of the Coastal Act.

AR at 11 (emphasis added; footnote omitted).

In reaching this decision, the Commission made no finding that the Walls' pool project interferes with, or harms, public beach access or the state's ability to lawfully secure it in the future. It made no finding that requiring public access as a permit condition is related, reasonable, and proportionate to the impact of the Walls' pool project.

**The Trial Court Decision**

On or about July 3, 2019, the Walls filed a Verified Petition for Writ of Administrative Mandate, asserting that the Commission's decision was not in accordance with law and an abuse of discretion.

In the ensuing Superior Court proceedings, the Commission's attorneys argued that the Commission did not deny the Walls' permit due to a failure to provide actual access, but because the Walls did not pay the $5,000 fee in Section 30610.8—

the same fee the Commission had rejected as a condition of approval at the Walls' administrative hearing. AR at 287-96.

On June 4, 2021, the Superior Court for the County of Santa Barbara adopted a final decision. CT at 59. In its decision, the Superior Court seemed to accept the Commission's post-hoc recharacterization of its administrative action, focusing on the legality of the permit denial on the purported basis that the Walls did not pay a $5,000 in-lieu fee. The court held that imposition of an in-lieu public access fee was consistent with the Coastal Act and Constitution in this case. CT at 48-57. However, it then held that denial of the permit was unlawful because the permit should have been approved subject to a $5,000 in-lieu fee condition that provided the Walls with a chance to pay it. CT at 57 ("[T]he court concludes that the Commission failed to proceed in the manner required by law by denying the Project CDP on the grounds of failing to pay the $5,000 in-lieu fee . . . without conditioning approval upon payment of that fee or otherwise providing petitioners the opportunity to pay that fee.").

The Superior Court subsequently observed that the Commission appeared to deny the permit due to the Walls' failure to provide actual access at the Ranch, but that such a condition was an "impossibility" for the Walls. CT at 58-59. Expressing some uncertainty about these issues, *id.* 58-69, the court ultimately remanded the Walls' permit to the Commission for additional review. In so doing, it instructed the Commission to "require payment of the $5,000 in-lieu fee of former section 30610.8 relating to the Project CDP as a condition for approval," CT at 59, unless the agency found other, independent and factually supported grounds for denial.

The Superior Court decision disposed of all causes of action in the Walls' Petition, and the Walls timely appealed on June 8, 2021.

# ARGUMENT

## I.

## DENIAL OF THE PERMIT FOR LACK OF AN ACCESS CONDITION VIOLATES THE COASTAL ACT

Regardless of how the Commission attempts to spin its decision after-the-fact, the record demonstrates that the agency denied the Walls' permit because they had not guaranteed actual public access or recreational opportunities at the Ranch. AR at 11, 294-95. The Commission did not deny the permit because the Walls had not or would not pay a $5,000 in-lieu fee. The Commission staff recommended such a fee, and at the time, the Walls did not object to that solution. AR at 157. The Commissioners rejected the in-lieu fee option. AR at 11; AR at 294:23-24 ("[M]oney is not the same as access. Particularly this amount of money and this access for this property . . . ."); *id.* at 294:10 (a $5,000 fee is not "realistic"), because they wanted actual public access to the Ranch as the price of a permit. AR at 295:2-4 ("[T]the people of the State of California . . . must have [actual]

access as part of the exchange between those whom must come to us, and request permits . . . .").[4]

It is the actual access condition and related permit denial that give rise to this dispute. Nevertheless, the legality of the $5,000 in-lieu fee in former Public Resources Code Section 30610.8 is also in dispute here because the trial court concluded that, on remand, the Commission could and should approve the permit subject to that in-lieu fee. CT at 51, 59. This is an improper outcome. The Coastal Act does not allow any type of public access condition on the Walls' pool permit due to the nature of the project and the property on which it is proposed.

## A. Denial for Lack of Actual Access Violates the Coastal Act

The entire point of the legislature's enactment of the $5,000 in-lieu fee requirement in Sections 30610.3 and 30610.8 was to settle disputes about whether the state could demand actual public

---

[4] The Commissioners' statements constitute relevant evidence for purposes of interpreting and reviewing the agency's findings. *Lindborg-Dahl Investors, Inc. v. City of Garden Grove*, 179 Cal. App. 3d 956, 963 n.9 (1986); *City of Carmel-by-the-Sea v. Board of Supervisors*, 71 Cal. App. 3d 84, 92 (1977).

access at the Ranch when authorizing development. AR at 3. The legislature made a deliberate choice to abandon demands for actual public access that stymied both development and access by requiring in-lieu fees it believed would allow more timely construction and progress toward access. *Remmenga*, 163 Cal. App. 3d at 626 n.1 ("Section 30610.3 provides for fees in lieu of dedication of right of way to the beach.").

The Commission cannot unilaterally override the four decades-old legislative trade-off in Sections 30610.3 and Section 30510.8 by requiring actual access from the Walls or other Ranch permit applicants. *Burke v. California Coastal Comm'n*, 168 Cal. App. 4th 1098, 1109 (2008) (concluding that a Coastal Act provision exempting coastal boundary settlements from the Commission's review deprived the agency of power to deny a fence that was in a boundary settlement). At most, the Coastal Act

authorizes in-lieu public access fees for certain Ranch development permits.[5] Pub. Res. Code § 30610.3(e).

Since the Coastal Act does not authorize actual access conditions on Ranch development, and in fact abandoned them with enactment of the in-lieu fee scheme in Sections 30610.3 and Section 30610.8, the denial of the Walls' permit on the basis that they did not provide "public access and recreational opportunities" was not in accordance with law.

> **B.    The Permit Could Not Be Conditioned or Denied Under the Coastal Act for Lack of a $5,000 Fee**

Of course, the Commission bizarrely claimed below that its permit decision was about requiring the $5,000 in-lieu fee in Section 30610.8.[6] CT at 50. While this view is plainly at odds with

_____

[5] That the Coastal Act authorizes in-lieu fees on some Ranch development permits does not answer the question of whether a fee demand is constitutional as-applied to particular circumstances. That is a different issue that is discussed more thoroughly in following sections.

[6] In the proceedings below, the Commission also made a few noises about potential lack of in-lieu fees with the original permits for the development on the Walls' lot that occurred decades ago. But the record shows that the Commission did not deny the permit based

the record, AR at 11, 287-96, the Superior Court seemed to buy the Commission's revisionist view of its decision's rationale to some degree, concluding that the $5,000 fee could and should be imposed as a condition of approval on remand. CT at 59.

This was error. Although Sections 30610.3 and 30610.8 authorize in-lieu fees for certain Ranch development, the statute does not authorize a fee on the Walls' minor development to a previously developed, non-vacant lot.

The controlling Coastal Act provision, Public Resources Code Section 30610.3(e), states:

> Every person receiving a coastal development permit or a certificate of exemption for development *on any vacant lot* within an area designated pursuant to this section shall, prior to the commencement of construction, pay to the commission, for deposit in the Coastal Access Account, an "in-lieu" public access fee.

Pub. Res. Code § 30610.3(e). The later-enacted Section 30610.8(b), set the amount of the in-lieu fee referenced in Section 30610.8 at

on objection to the terms of prior (and long-final) permits, failing to mention the issue once in the critical portion of its written findings, AR at 11, or in discussion and consideration at the Walls' hearing. AR at 287-96.

$5,000. These Coastal Act provisions conferred authority on the
Commission to impose a $5,000 in-lieu public access fee on coastal
development permits for development of "vacant" Ranch lots.
Section 30610.3(e).

The Commission proposes a broader reading. It claims the
in-lieu fee in Section 30610.8 applies to every development permit
at the Ranch, whether for development of a vacant lot, or for
improvements to a previously developed lot. It points to Section
30610.8(b), which states:

> For purposes of Section 30610.3 and with respect to
> the Hollister Ranch public access program, the in-lieu
> fee shall be five thousand dollars ($5,000) for each
> permit.

Focusing on the final portion of Section 30610.8(b)—"for each
permit"—the Commission argues that there is no "vacant lot"
limitation on the $5,000 in-lieu fee requirement in Section 30610.8.
This is untenable.

At the outset, it is important to recognize that Section
30610.8(b) cannot be read or applied without reference to Section
30610.3. As the Commission concedes, Section 30610.8 "carries

out[] Section 30610.3" and "the requirements of the two provisions are read together." AR at 11 n.1. When one applies that joint reading, the obvious and natural interpretation of the statute is that Section 30610.8(b) provides an amount ($5,000) for the monetarily undefined in-lieu fee requirement in Section 30610.3(e) for "vacant lots."

The words "each permit" do not change this conclusion. Again, those terms must be construed through the lens of Section 30610.3. AR at 11 n.1. When one looks back to Section 30610.3(e), one immediately notices that it too uses the term "permit." But it does so only to refer to a particular class, namely, a "permit . . . for development on any vacant lot." Given this context, the phrase "each permit" in 30601.8(b) simply relates back to, and is shorthand for, a "permit . . . for development on *any vacant lot*." Pub. Res. Code § 30610.3(e) (emphasis added).

To construe Section 30610.8(b) to require a $5,000 in-lieu fee for all permits, as the Commission urges, one must ignore the language and context in Section 30610.3. This is contrary to the

explicit legislative directive that Section 30610.8 operates "for purposes of Section 30610.3"—purposes which include an in-lieu fee for "vacant lots." Moreover, under the Commission contra-textual reading, the "vacant lot" qualification in Section 30610.3(e) is rendered superfluous, contrary to basic statutory construction rules. *People v. Arias*, 45 Cal. 4th 169, 180 (2008) ("[A] construction that renders a word surplusage should be avoided." (quoting *Delaney v. Superior Court*, 50 Cal. 3d 785, 799 (1990))). It is only when Section 30610.8(b) is read as a provision that simply sets a specific dollar amount for the previously adopted requirement of an in-lieu fee for "permit[s] . . . for development on any vacant lot," that that the statutory provisions work in harmony. *Woods v. Young*, 53 Cal. 3d 315, 323 (1991) (statutory ambiguities can "be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes").

Section 30610.8 was intended to establish a fixed amount for the in-lieu fee requirement applicable to "development of

vacant lots"—nothing more. The goal was to impose a one-time in-lieu fee when a Ranch parcel is converted from an open, natural lot, into a developed, fenced one that (in the legislature's view) might impede future public access. The only appellate court to consider the issue, the *Remmenga* court, adopted this conclusion, characterizing Section 30610.8 as a per-*lot* fee, rather than as a per-permit fee. *Remmenga*, 163 Cal. App. 3d at 628 (the "requirement to pay . . . $5,000 for development of one lot").[7] For

---

[7] The Commission may resort to local policies to buttress its apparent belief that it can impose public access conditions on permits for previously developed Ranch parcels, notwithstanding the contrary language in Section 30610.3(e). It may refer specifically to County Land Use Policy 2-15 and Gaviota Coast Development Standard REC-3, neither of which include a "vacant" lot limitation in Public Resources Code Section 30610.3(e). But the County and Commission cannot override or erase the provisions of Section 30610.3 when adopting and applying County Land Use Plan policies intended to implement the Coastal Act. *Schneider v. California Coastal Comm'n*, 140 Cal. App. 4th 1339, 1348 (2006) ("Administrative action that is not authorized by, or is inconsistent with, acts of the Legislature is void." (quoting *Association for Retarded Citizens v. Department of Developmental Servs.*, 38 Cal. 3d 384, 391 (1985))); *Security National Guaranty, Inc. v. California Coastal Comm'n*, 159 Cal. App. 4th 402, 419 (2008) ("[I]f the Commission takes action that is inconsistent with, or that simply is not authorized by, the Coastal Act, then its action is void.").

all these reasons, Section 30610.8(b) establishes a $5,000 in-lieu fee for "each permit" for "development on any vacant lot."

Of course, the legislature can potentially amend the Coastal Act to extend the vacant lot in-lieu fee requirement in Section 30610.3(e) to all Ranch development permits. But *the Commission* cannot. *Security National Guaranty, Inc.*, 159 Cal. App. 4th at 419 ("The Commission, like all administrative agencies, has no inherent powers; it possesses only those powers that have been granted to it by the Constitution or by statute. . . . [It] 'literally has *no power to act* . . . unless and until [the Legislature] confers power upon it.'" (citations omitted)).

The limitation of in-lieu fees to permits for "development of a vacant lot" is still the law. The Walls' lot was, of course, developed for residential use long ago by an owner pre-dating the Walls' ownership. The Walls contend that the owner at that time secured a permit that included a $5,000 in-lieu access fee. AR at 157. But ultimately, that is unimportant here. The prior permits are final, and the Walls acquired their parcel as a developed,

conforming lot, AR at 61 (unappealed County finding that the Wall

property is in conformance with all land use laws). The only permit

at issue in this case seeks to improve a previously developed area

with a small pool and spa. Such a proposal is not "development on

any vacant lot," for purposes of Section 30610.3, and it is therefore

exempt from the $5,000 in-lieu fee requirement set by Section

30610.3(e) and Section 30610.8(b). The Superior Court's decision

to remand the case to the Commission for imposition of such a fee

was erroneous.

## II.

### EVEN IF THE COASTAL ACT ALLOWS ACCESS CONDITIONS AS A GENERAL MATTER, DENIAL OF THE PERMIT IN THIS CASE FOR LACK OF ACCESS IS UNCONSTITUTIONAL

Even if imposition of a public beach access condition is

permissible under the Coastal Act in this case (it is not), such a

condition violates the unconstitutional conditions doctrine. That

doctrine arises primarily from *Nollan v. California Coastal

Comm'n*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S.

374 (1994). *Nollan* and *Dolan* forbid the government from

requiring a land use applicant to cede money or property as a condition of securing a permit unless that "exaction" is directly related and proportionate to the impact of the proposed development. *Koontz*, 570 U.S. at 606. As a corollary, the government may not deny a permit because an applicant fails to submit to a condition that violates the *Nollan / Dolan* tests. *Koontz*, 570 U.S. at 607 ("As in other unconstitutional conditions cases in which someone refuses to cede a constitutional right in the face of coercive pressure, the impermissible denial of a governmental benefit is a constitutionally cognizable injury.").

The trial court's decision is unclear as to whether the Commission could require an actual access condition on remand, but it appears to leave room for that step. CT at 59. Yet, there is no room under the unconstitutional conditions doctrine. Denial of the permit for lack of an actual access condition was unconstitutional the first time and it is still impermissible on remand. *Koontz*, 570 U.S. at 606-07.

## A.     The Unconstitutional Conditions Doctrine

In *Nollan*, the Supreme Court considered whether the Commission could constitutionally exact a public access easement from a beachfront property owner as a condition of a building permit. 483 U.S. at 834. The Court recognized that the government can constitutionally exact property in land use permitting to mitigate public harms directly arising from development. *Id.* But it held that the government may not impose a permit condition when there is no "essential nexus" between the purposes of the condition and the social impact of the proposed building project. *Id.* at 837-38. In such a case, the condition is simply a disguised, uncompensated taking of property. *Id.* Applying this rationale, the Court struck down the easement exaction in *Nollan* because the Nollans' project did not cause the need for public access. *Id.* at 838-39.

In *Dolan*, the Court elaborated on the strength of the required connection between an exaction and development impact. 512 U.S. at 386. *Dolan* involved building permit conditions that

required a hardware store owner to dedicate portions of her land to the public for a bike path and storm water run-off area. *Id.* at 377-83. The Court held that an exaction must be related and roughly proportionate "in nature and extent" to the proposed development. *Id.* at 391. Under *Nollan* and *Dolan*, the government "may choose whether and how a permit applicant is required to mitigate the impacts of a proposed development, but it may not leverage its legitimate interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality to those impacts." *Koontz*, 570 U.S. at 606.

In *Koontz*, the Court held that the *Nollan/Dolan* inquiry applies to monetary exactions, like in-lieu fees, as well as to dedications of real property. *Id.* at 613. The *Koontz* Court also confirmed that the government may not *deny* a permit because the applicant refuses a permit condition that fails the *Nollan* and *Dolan* tests. *Id.* at 606 ("The principles that undergird our decisions in *Nollan* and *Dolan* do not change depending on whether the government *approves* a permit on the condition that

the applicant turn over property or denies a permit because the applicant refuses to do so.").

The "nexus" and "rough proportionality" framework established by this line of cases is more robust than the traditional rational basis inquiry. *Nollan* and *Dolan* require a substantial connection between a permit condition and the impact of the project. *Id.* A "generalized" connection is inadequate. *Dolan*, 512 U.S. at 389. The connection between an exaction and development impacts must be direct and based on "individualized" evidence about the impacts of the particular development at issue. *Id.* at 391; *see also Ehrlich v. City of Culver City*, 12 Cal. 4th 854, 880 (1996) ("[G]overnment [must] demonstrate a *factually* sustainable proportionality between the effects of a proposed land use and a given exaction . . . ."); *Surfside Colony, Ltd. v. California Coastal Comm'n*, 226 Cal. App. 3d 1260, 1268 (1991) (holding that *Nollan* requires a "site specific" and "substantial relationship" between "the public burden" of development and a condition designed to address it).

Aside from *Nollan* and *Dolan*, an older line of California cases requires that land conditions, including those demanding fees, must "bear a reasonable relationship, in both intended use and amount, to the deleterious public impact of the development." *San Remo Hotel L.P. v. City & County of San Francisco*, 27 Cal. 4th 643, 671-72 (2002); *Associated Home Builders v. City of Walnut Creek*, 4 Cal. 3d 633, 640 (1971). "Even under [this] more deferential review, a court's inquiry into the validity of the reasonable relationship between a development fee and a development impact will not be a 'rubber stamp.'" *Ehrlich*, 12 Cal. 4th at 899 (Mosk, J., concurring).

### B.    The Denial of the Walls' Permit for Lack of Actual Public Access Violates *Nollan* and *Dolan*

The Commission found that the Walls' proposed pool was subject to denial because "public access and public recreational opportunities" were not "provided concurrently" with the development. AR at 11. This was an irrational, unreasonable, and disproportionate decision that violates the *Nollan/Dolan/Koontz*

line of cases, as well as pre-*Nollan* unconstitutional conditions tests.

The Commission concedes that the Walls' parcel and proposed pool is far from the beach—over 3/4 of a mile. AR at 3. It does not dispute that the pool will be built on wholly private, residential property. It does not claim there is a publicly accessible beach trail, road, or area nearby, because there is none. AR at 61. The Commission accordingly made no finding that Walls' pool development interferes with or diminishes public beach access interest in any way. The trial court found to the contrary: "There is nothing in the [record] which otherwise suggests that the Project itself would or could impede public access through a public access program in the future." CT at 58.

In short, there is no "nexus" between a pool and spa project on the Walls' private, publicly unviewable lot, located three quarters of a mile from the shore, and a public beach access condition. In the proceedings below, the Superior Court found that denying the Walls' permit for failure "to provide public access" was

to require an "impossibility." CT at 58-59. Obviously, imposing a

condition the agency knows or should know is impossible to

perform is unreasonable and disproportionate, if not downright

arbitrary and capricious. In any case, since there is no connection

between the effects of the Walls' family pool and spa and a

condition of public "access and recreational opportunities," the

actual access demand easily violates *Nollan*. 483 U.S. at 832-33.

Such a requirement also fails *Dolan*'s "roughly proportionate" test.

512 U.S. at 391. The Walls' pool takes up a small area of private

land that the public cannot see or access and which is not adjacent

to any beach area. Requiring the Walls to arrange for the public to

invade, use, and occupy Ranch property for beach use purposes—

effectively extracting an easement on the property—to get a pool

and spa is the epitome of disproportionate. *Dolan*, 512 U.S. at 394-

95.

　　The Commission's public access demands in this case are so

out of proportion to the nature and location of the Walls' pool

proposal that one cannot help but suspect that something else is

going on. And indeed, the record appears to show that the Commissioners rebuffed the Walls, not because of any public threat from their little pool, but because they are part of a community—the Ranch—that the Commissioners do not respect. The decision in this case was apparently meant to make an example of the Walls and to send a message to all Ranch owners: No more permits unless and until you donate public access to the state. AR at 295:2-4 ("[T]he people of the State of California . . . must have access as part of the exchange between those who[] must come to us, and request permits or other actions."); AR at 295:15-16 ("[W]e can't be continuing to approve projects without access.").

Whatever debate may exist at the outer edges of the unconstitutional conditions doctrine, one thing is clear at the center: The government may not use the permitting power to extort, coerce, or otherwise pressure property owners to forfeit their property or money to the public, without just compensation. *See Koontz*, 570 U.S. at 605 ("By conditioning a building permit on

the owner's deeding over a public right-of-way, for example, the
government can pressure an owner into voluntarily giving up
property for which the Fifth Amendment would otherwise require
just compensation."); *Dolan*, 512 U.S. at 391-96. The Commission's
permit denial in this case violates that core principle.

**III.**

**THE LOWER COURT'S REMAND FOR IMPOSITION
OF A $5,000 IN-LIEU FEE WAS ERRONEOUS
BECAUSE THE FEE ALSO VIOLATES THE
UNCONSTITUTIONAL CONDITIONS DOCTRINE**

Perhaps recognizing the validity of the foregoing analysis,
the Superior Court seemed to remand the case primarily so that
the Commission could "require payment of the $5,000 in-lieu fee of
former Section 30610.8 . . . as a condition for approval of the
Project CDP." CT at 59. The trial court arrived at this remedy after
first concluding that it would be constitutional to impose a $5,000
in-lieu public access fee on the Walls. CT at 50-56. This conclusion
was wrong, however, and therefore, so was the remand for
imposition of an in-lieu public access fee.

## A.      The Fee Violates *Nollan* and *Dolan*

Even if the Coastal Act itself allowed an in-lieu public access fee on a permit for a previously developed, non-vacant Ranch lot (it does not), the fee would be invalid here under the unconstitutional conditions doctrine for many of the same reasons that an actual access condition fails. In short, the Commission has not shown and cannot show a reasonable relation between a fee intended to advance public access and the impact of the Walls' pool proposal.

The Commission does not seriously contest this conclusion. It points to no evidence that the Walls' pool negatively effects public access now or its potential acquisition later. CT at 58. Instead, it claims the in-lieu fee survives the unconstitutional conditions doctrine as a legislated, "generally applicable" exaction that is entirely exempt. This is incorrect.

The *Nollan* and *Dolan* "nexus" and "rough proportionality" tests apply to all exactions, regardless of whether they arise from an adjudicative or legislative decision. *Village Communities, LLC*

*v. County of San Diego*, No. 3:20-cv-01896-BEN-DEB, 2021 WL 369543, at *3 (S.D. Cal. Feb. 3, 2021); *Alliance for Responsible Planning v. Taylor*, 278 Cal. Rptr. 3d 376, 386 (2021). What matters for *Nollan/Dolan* is not *who* imposes an exaction or *how many* it burdens, but whether it is a *fair* and *reasonable* mitigation tool because it is related and proportionate to project impacts.

The Supreme Court demonstrated this truth in the recent case of *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021). There, the Court considered whether a regulation granting union organizers limited access to a nursery was subject to a per se takings test, or a regulatory takings test arising from *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). The Court held that the per se approach was proper, largely because the challenged access regulation interfered with the plaintiffs' "right to exclude" others from their property. 141 S. Ct. at 2072-73. In addressing a concern that adopting a per se rule in *Cedar Point* might undermine regulations requiring health and safety

inspections as a permit condition, the Court indicated that *Nollan* and *Dolan* provided the appropriate test. *Id.*

The *Cedar Point* decision noted that "[w]hen the government conditions the grant of a benefit such as a permit, license, or registration on allowing access for reasonable health and safety inspections, both the nexus and rough proportionality requirements of the constitutional conditions framework should not be difficult to satisfy." *Id.* at 2079. To provide context, the Court pointed to several federal regulatory schemes that require inspections. *Id.* (citing 7 U.S.C. § 136g(a)(1)(A) (pesticide inspections); 16 U.S.C. § 823b(a) (hydroelectric project investigations); 21 U.S.C. § 374(a)(1) (pharmaceutical inspections); 42 U.S.C. § 2201(o) (nuclear inspections)). This discussion makes clear that *Nollan* and *Dolan* are now treated as general restraints on regulatory conditions, including those arising from generally applicable regulatory regimes. *Nollan* and *Dolan* apply and forbid the proposed $5,000 in-lieu access fee.

The in-lieu fee is, in fact, no different in effect than the actual public access condition struck down in *Nollan* itself. 483 U.S. at 838-39. As in *Nollan*, the development project at issue here—the Walls' private pool—does not create a need for public access mitigation. *Cf. Nollan*, 483 U.S. at 838-39. Requiring a fee for public access purposes is unrelated, and disproportionate, to the effect of the pool development. That the in-lieu fee is a "generally applicable" requirement (in the Commission's view) does not imbue the fee with the necessary "nexus" between project impact and fee purposes. Whether viewed as an adjudicative decision or a general, statutory mandate, the in-lieu fee is an unconstitutional condition in this case.

### B. The Fee Violates the Pre-*Nollan* and *Dolan* "Reasonable Relationship" Test

Even if the Court concludes that *Nollan* and *Dolan* do not apply to the $5,000 in-lieu public access fee, the fee remains subject to pre-*Nollan* tests that require a "reasonable relationship" between a permit condition and the subject development. *San Remo Hotel*, 27 Cal. 4th at 671. Given the lack of evidence that the

Walls' pool impacts public beach access interests in any way, and the trial court's finding to this effect, the $5,000 in-lieu fee cannot even satisfy the traditional, "reasonable relationship" test. *Liberty v. California Coastal Comm'n*, 113 Cal. App. 3d 491 (1980). There is no relation between an in-lieu fee intended to advance public access at the Ranch, Pub. Res. § 30610.8(b), and the impact of a pool built on a private lot that lies three quarters of a mile inland from the beach and which cannot be seen from any public area.

In the proceedings below, the Commission successfully argued *Remmenga* requires a contrary conclusion, i.e., that the in-lieu fee is a reasonable and constitutional mitigation measure. Such an argument fails to recognize the important differences between the development at issue in this case and in *Remmenga*. In *Remmenga*, the question was whether the Commission could impose a $5,000 in-lieu public access fee on residential development of a *vacant Ranch lot*. The *Remmenga* court did not consider the reasonableness of a fee for a minor improvement (like a pool) to an already developed lot.

The distinction is important. *Remmenga* found the in-lieu access fee reasonable in that case because it concluded that residential development of a vacant lot, combined with other similar development, "may well be a link in a chain barring access or making access more difficult and costly." 163 Cal. App. 3d at 630. But no such finding was or can be made here. Indeed, the trial court found to the contrary: that there is no evidence "that the Project itself would or could impede public access through a public access program in the future." CT at 58. The Commission has never identified administrative evidence or a finding suggesting that the Walls' pool impedes access. As a result, *Remmenga* is inapposite, and the reasonableness of the in-lieu public access fee in this case must be decided on a clean slate.

As shown above, without some evidence or finding that the Walls' pool and spa does or could impede public beach access—and there is none—there is not even a rational basis for the in-lieu public access fee requirement in former Section 30610.8 in this case.

## CONCLUSION

The Court should reverse the Superior Court's decision, grant the Petition, and issue a writ of mandate compelling the Commission to approve the Walls' permit without any public access condition.

DATED: August 16, 2021.

Respectfully submitted,


/s/ J. David Breemer
  J. DAVID BREEMER

*Attorney for Plaintiffs-Appellants*
*Jack Wall and Wall Family Trust*

## CERTIFICATE OF COMPLIANCE

Pursuant to California Rule of Court 8.204(c)(1), I hereby certify that the foregoing APPELLANTS' OPENING BRIEF is proportionately spaced, has a typeface of 13 points or more, and contains 8,684 words.

DATED: August 16, 2021.


/s/ J. David Breemer
J. DAVID BREEMER

## DECLARATION OF SERVICE

I, Tawnda Dyer, declare as follows:

I am a resident of the State of California, residing or employed in Sacramento, California. I am over the age of 18 years and am not a party to the above-entitled action. My business address is 930 G Street, Sacramento, California 95814.

On August 16, 2021, a true copy of APPELLANTS' OPENING BRIEF was electronically filed with the Court through Truefiling.com. Notice of this filing will be sent to those below who are registered with the Court's efiling system. Those who are not registered will receive a hard copy via first-class U.S. Mail, postage thereon fully prepaid, and deposited in a mailbox regularly maintained by the United States Postal Service in Roseville, California.

Andrew R. Contreiras
California Department of Justice
600 W. Broadway, Suite 1800
San Diego, CA 92101-3375
*Counsel for Defendant-Respondent California Coastal Commission*

Louise Anne Warren
California Coastal Commission
45 Fremont St., Suite 2000
San Francisco, CA 94105-2221
*Counsel for Defendant-Respondent California Coastal Commission*

Court Clerk
Supreme Court of California
350 McAllister Street
San Francisco, CA 94102-4797

Court Clerk
Santa Barbara County Superior Court
1100 Anacapa Street
Santa Barbara, CA 93121-1107

I declare under penalty of perjury that the foregoing is true

and correct and that this declaration was executed this 16 day of

August, 2021, at Roseville, California.

TAWNDA DYER

61

# EXHIBIT E

72 Cal.App.5th 943
Court of Appeal, Second
District, Division 6, California.

Jack WALL et al., Plaintiffs and Appellants,

v.

CALIFORNIA COASTAL COMMISSION,
Defendant and Respondent.

2d Civil No. B312912
|
Filed 12/16/2021

**Synopsis**
**Background:** Landowners located three-quarters of a mile from the coastline brought a petition for writ of administrative mandate, challenged California Coastal Commission's denial of their request for a coastal development permit (CDP) to construct a pool and spa. The Superior Court, Santa Barbara County, No. 19CV03464, Donna D. Geck, J., granted the petition in part, and remanded with directions for the commission to issue the CDP upon payment of $5000 in-lieu public access fee unless other factual or legal bases for denial were specified. Landowners appealed.

**Holdings:** The Court of Appeal, Tangeman, J., held that:

[1] provision in Coastal Act requiring a $5,000 in-lieu public access fee for each CDP in landowners' subdivision applied to landowners' request for CDP, and

[2] landowners waived their assertion that enforcement of $5,000 in-lieu public access fee was unconstitutional.

Affirmed.

**Procedural Posture(s):** On Appeal; Review of Administrative Decision.

West Headnotes (18)

**[1]** **Environmental Law** 🔑 Coastal areas, bays, and shorelines

The coastal development permits (CDP) issued by local agencies under the Coastal Act are not solely a matter of local law, but embody state policy. Cal. Pub. Res. Code § 30610.8.

**[2]** **Environmental Law** 🔑 Purpose

A primary goal of the Coastal Act is to maximize public access to the coast.
🚩 Cal. Pub. Res. Code §§ 30610, 30212, subd. a.

**[3]** **Mandamus** 🔑 Scope and extent in general

The scope of the Court of Appeal's review from a judgment on a petition for writ of administrative mandate is the same as that of the trial court: it reviews the agency decision directly, and independently determines whether the agency proceeded in excess of jurisdiction, whether it provided a fair hearing, and whether it abused its discretion. 🚩 Cal. Civ. Proc. Code § 1094.5(b).

**[4]** **Environmental Law** 🔑 Coastal areas, bays, and shorelines

Coastal Commission did not improperly deny landowners' coastal development permit request based on landowners' failure to provide for public access to their property; landowners' property was located three-quarters of a mile inland and could not provide for public access to coast, and isolated comments by members of Commission, bemoaning the fact that Coastal Act fee requirements had not

Wall v. California Coastal Commission, 72 Cal.App.5th 943 (2021)

287 Cal.Rptr.3d 682, 21 Cal. Daily Op. Serv. 12,560, 2021 Daily Journal D.A.R. 12,856

resulted in meaningful public access to coastline near landowners' property, were not reflected in its decision denying the CDP. Cal. Pub. Res. Code § 30610.8(a).

**[5]** Environmental Law 🔑 Water, wetlands, and waterfront conservation

The Court of Appeal's job is not to delve into the individual purposes of decisionmakers in a quasi-adjudicative proceeding, but rather to look to the findings made by the California Coastal Commission and determine whether they are supported by the record.

**[6]** Environmental Law 🔑 Coastal areas, bays, and shorelines

Provision in Coastal Act requiring a $5,000 in-lieu public access fee for each coastal development permit (CDP) in landowners' subdivision applied to landowners' request for CDP to construct a pool and spa on their property, although separate provision of Act limited such fees to developments occurring on vacant lots; provision requiring a fee "for each permit" in landowners' subdivision was enacted by legislature after subdivision landowners had blocked the state from undertaking requisite appraisals, provision had been amended without change to the requirement of a fee for each permit, and specific provision took precedence over generally applicable per-vacant-lot fee. Cal. Pub. Res. Code § 30610.3; Cal. Pub. Res. Code § 30610.8 (2018).

**[7]** Environmental Law 🔑 Water, wetlands, and waterfront conservation

Whether the Coastal Act requires landowners to pay a $5,000 in-lieu public access fee for approval of their coastal development permit (CDP) request presents a question of statutory

interpretation for the court's independent review. Cal. Pub. Res. Code § 30610.8.

**[8]** Environmental Law 🔑 Water, wetlands, and waterfront conservation

The court's fundamental task when interpreting the Coastal Act is to ascertain the legislature's intent when it adopted the Act's provisions. Cal. Pub. Res. Code § 30610.8.

**[9]** Environmental Law 🔑 Water, wetlands, and waterfront conservation

When interpreting the Coastal Act, the court begins with the words of the Act's provisions, giving them their plain, commonsense meanings. Cal. Pub. Res. Code § 30610.8.

**[10]** Environmental Law 🔑 Water, wetlands, and waterfront conservation

The court interprets the words of the Coastal Act in context, harmonizing the Act's provisions whenever possible; if harmonization is not possible, later-enacted and more specific provisions will take precedence over earlier and more general ones. Cal. Pub. Res. Code § 30610.8.

**[11]** Environmental Law 🔑 Water, wetlands, and waterfront conservation

The court will follow the Coastal Act's plain meaning unless doing so would lead to absurd results the legislature did not intend. Cal. Pub. Res. Code § 30610.8.

**[12]** Environmental Law 🔑 Water, wetlands, and waterfront conservation

If the court cannot determine the meaning of the Coastal Act from the statutory language, it will defer to the Coastal

Commission's interpretation of the Act so long as it is not clearly erroneous; it may also examine legislative history and consider the impact of an interpretation on public policy. Cal. Pub. Res. Code § 30610.8.

**[13]     Environmental Law** 🗝 Water, wetlands, and waterfront conservation

When interpreting the Coastal Act, the court can neither insert words into the Act that the legislature omitted nor omit words the legislature inserted; the court's job is not to rewrite statutes to conform to an assumed intent that does not appear from their language. Cal. Civ. Proc. Code § 1858; Cal. Pub. Res. Code § 30610.8(a).

**[14]     Statutes** 🗝 Superfluousness

Simply because a statutory provision does not apply in certain instances does not mean that that provision is surplusage; surplusage results when a provision does apply.

**[15]     Courts** 🗝 Previous Decisions as Controlling or as Precedents

Cases are not authority for propositions that are not considered.

**[16]     Mandamus** 🗝 Presentation and reservation in lower court of grounds of review

Landowners waived their assertion that it would be unconstitutional for Coastal Commission to enforce provision in Coastal Act requiring a $5,000 in-lieu public access fee for each coastal development permit (CDP) in landowners' subdivision, where landowners did not raise this argument in their petition for writ of administrative mandate before the trial court. Cal. Pub. Res. Code § 30610.8.

**[17]     Appeal and Error** 🗝 Necessity of presentation in general

A litigant may not pursue one line of legal argument in the trial court, and having failed in that approach, pursue a different, and indeed, contradictory line of argument on appeal.

1 Cases that cite this headnote

**[18]     Appeal and Error** 🗝 In general; adhering to theory pursued below

Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.

1 Cases that cite this headnote

**\*\*684**  Superior Court County of Santa Barbara, Donna D. Geck, Judge (Super. Ct. No. 19CV03464) (Santa Barbara County)

**Attorneys and Law Firms**

Pacific Legal Foundation and J. David Breemer, Sacramento, for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Daniel A. Olivas, Assistant Attorney General, Jamee Jordan Patterson and Andrew R. Contreiras, Deputy Attorneys General, for Defendant and Respondent.

**Opinion**

TANGEMAN, J.

**\*947**  The California Constitution guarantees public access to the navigable waters of the state, including those along the Pacific Coast. (Cal. Const., art. X, § 4.) For nearly five decades, enforcing this guarantee at Hollister Ranch in Santa Barbara County has been fraught with controversy, and the Legislature has enacted multiple provisions to the California Coastal Act of 1976 (Coastal Act) that aim to

ensure public access. Here, we conclude that one such provision—Public Resources Code [1] section 30610.8—requires payment of an in-lieu public access fee for each coastal development permit (CDP) applicable to Hollister Ranch.

[1]     Unlabeled statutory references are to the Public Resources Code.

The California Coastal Commission (Commission) denied a CDP request from Jack Wall and the Wall Family Trust (collectively, the Walls) to build a pool and spa on their Hollister Ranch property. The Walls challenged the Commission's denial in a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5), arguing that: (1) requiring access to their property as a condition of the CDP violates the unconstitutional conditions doctrine, (2) the **948 Coastal Act (§ 30000 et seq.) does not allow the Commission to condition a CDP on payment of a $5,000 in-lieu public access fee, and (3) if the Act does allow the fee, the Commission did not proceed in the manner required by law when it failed to approve their permit subject to payment of the fee. The trial court agreed with the Walls' third argument and ordered the Commission to reconsider its denial of the Walls' CDP request.

On appeal, the Walls contend: (1) the Coastal Act does not allow the Commission to condition approval of the CDP on access to their property, (2) the Act does not allow the Commission to condition approval of the CDP on payment of the $5,000 in-lieu public access fee, and (3) even if the Act allows these conditions, imposing them would be unconstitutional. We affirm.

FACTUAL AND PROCEDURAL HISTORY

*The Coastal Act and its permitting process*

[1]   In 1976, the Legislature enacted the Coastal Act " 'as a comprehensive **685 scheme to govern land use planning for the entire coastal zone of California.' " (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793, 149 Cal.Rptr.3d 383, 288 P.3d 717 (*Pacific Palisades*).)

The Act mandates careful planning of coastline developments, and requires "any person wishing to perform or undertake any development in the coastal zone ... [to] obtain a [CDP]" before construction commences. (*Pacific Palisades*, at pp. 793-794, 149 Cal.Rptr.3d 383, 288 P.3d 717.) Local governments implement many of the Act's provisions, including the issuance of CDPs, subject to oversight and approval by the Commission. (*Pacific Palisades*, at p. 794, 149 Cal.Rptr.3d 383, 288 P.3d 717.) The CDPs issued by local agencies are thus " 'not solely a matter of local law, but embody state policy.' [Citation.]" (*Ibid.*)

[2]   A primary goal of the Coastal Act is to maximize public access to the coast. (*Remmenga v. California Coastal Com.* (1985) 163 Cal.App.3d 623, 629, 209 Cal.Rptr. 628 (*Remmenga*).) New developments are thus generally required to provide access between the nearest public roadway and the coastline. (See §§ 30210 & 30212, subd. (a).) Where an individual landowner in a subdivision lacks authority to provide the required access, the Act requires the landowner to pay an in-lieu public access fee as a condition of CDP approval. (§ 30610.3, subd. (e).) The fee is then deposited into the Coastal Access Account (CAA) for the "purchase of lands and view easements and to pay for any development needed to carry out the public access program." (*Id.*, subds. (b) & (c).) Upon paying the fee, the landowner may "immediately commence construction if the other conditions of the [CDP] ... have been met." (§ 30610.8, subd. (b).)

*949   Local governments issue CDPs in the context of local coastal programs (LCPs). Each LCP must be developed in consultation with the Commission to ensure that it complies with Coastal Act provisions. (§ 30500, subd. (c).) Once the Commission certifies an LCP, the local government assumes primary permitting authority, with certain decisions appealable to the Commission. (§§ 30512, 30513, 30519, 30603; see also § 30625, subd. (a) [who may appeal].)

When a decision is appealed, the Commission must first determine whether the appeal raises a "substantial issue." (§ 30625, subd. (b)(2).) If it does, the Commission holds a de novo hearing at which it "may approve, modify, or deny" the CDP. (*Id.*, subd.

(a).) The Commission may approve a CDP only if it complies with the public access and public recreation policies of the Coastal Act and certified LCP. (§ 30604, subds. (b) & (c).)

### The history of Hollister Ranch

Hollister Ranch is a 14,500-acre subdivision encompassing 8.5 miles of the Santa Barbara County coastline. It is divided into 136 parcels. In the 1970s, the Commission approved several CDPs for new Hollister Ranch residences, conditioned on the dedication of easements for pedestrian trails and recreation areas. After obtaining the CDPs, however, landowners sued to invalidate the conditions.

In 1979—before any court could rule on the landowners' claims—the Legislature added section 30610.3 to the Coastal Act to provide for the in-lieu public access fee scheme described above. The Commission determined that the section applied to Hollister Ranch, and attempted to undertake a survey of area lands so it could calculate the appropriate fee amount. Several landowners then blocked the Commission from completing its survey. The Legislature was thus required to step in again, and in 1982 added section 30610.8 to the Act. This **686 provision, specific to Hollister Ranch, declared that public access to the ranch's coastline "should be provided in a timely manner." (§ 30610.8, subd. (a).) It set the amount of the in-lieu fee for the ranch at $5,000 per permit. (Id., former subd. (b).)

Later that year, Santa Barbara County adopted an LCP that was then approved by the Commission. The LCP includes provisions that implement portions of the Coastal Act. Among those provisions is Policy 2-15, which bars the County from issuing CDPs at Hollister Ranch "unless the ... Commission certifies that the requirements of ... [s]ection 30610.3 have been met by each applicant or ... finds that access is otherwise provided in a manner consistent with the access policies of the Coastal Act."

*950 The Commission subsequently approved the Gaviota Coast Plan (GCP) as part of the County's LCP. GCP Development Standard REC-3 requires the payment of "a fee consistent with [s]ection 30610.8 ...

as a condition of each [CDP] issued for development in Hollister Ranch."

Following approval of the GCP, the governor directed the Commission and several other state agencies to update the Hollister Ranch coastal access program. Simultaneously, the Legislature enacted Assembly Bill No. 1680 (Assem. Bill 1680), which, effective January 1, 2020, increased the in-lieu public access fee set forth in section 30610.8 from $5,000 to $33,000 for each permit, to be adjusted annually for inflation.[2] (See Stats. 2019, ch. 692, § 2.)

[2]     Because this increase occurred after the Commission's decision in this case, it is inapplicable here. All further references to section 30610.8 are to the version in effect when the Commission denied the Walls' CDP request.

### Denial of the Walls' CDP request

The Walls own a 102-acre parcel in Hollister Ranch. It lies about three-quarters of a mile from the Pacific Ocean. The parcel has been developed with a single-family home, guesthouse, barn, and storage structure. There is no evidence that the Walls paid an in-lieu public access fee in conjunction with any of these improvements.

In 2018, the Walls applied for a CDP to construct a pool and spa on their Hollister Ranch property. The County's director of planning and development approved the CDP without imposing an in-lieu public access fee. Two members of the Commission appealed that approval to the full Commission, citing noncompliance with the Coastal Act, LCP, and GCP.

The Walls objected to the appeal and urged the Commission to find that it raised no substantial issue. The Walls acknowledged that they had not paid in-lieu public access fees for their prior CDPs, but claimed, without evidence, that a previous owner had paid such a fee when he built a well, septic system, and cistern. The Walls said that they would be willing to pay the fee in exchange for the Commission's approval of their CDP request.

The Commission determined that the appeal raised a substantial issue and held a public hearing. During the hearing, one Commission member said that conditioning the permit on payment of the in-lieu public access fee was "not realistic" because Hollister Ranch landowners had not paid such fees historically and because the fees had not ensured timely public access to the coastline. Another member noted that LCP Policy 2-15 prohibits the issuance **\*951** of CDPs unless they are consistent with the goals and policies of the Coastal Act. A third declared that "public access to this amazing resource and area has primacy over in lieu fees." A fourth said that the Commission "can't be continuing to approve [CDPs] without access."

 **\*\*687** At the conclusion of the hearing, the 10-member Commission unanimously rejected the Walls' CDP request. The proposed CDP was not conditioned on payment of the in-lieu public access fee as required by the Coastal Act, LCP Policy 2-15, and GCP Development Standard REC-3. And even if the fee had been paid, the CDP could not issue unless the Commission found either "that the requirements of ... [s]ection 30610.3 ha[d] been met" or "that access [was] otherwise provided in a manner consistent with the access policies of the Coastal Act." Because the CDP did not include provisions for "public access and public recreational opportunities," the Commission could make neither finding. Additionally, because development and access issues at Hollister Ranch were the subject of pending legislation and administrative updates, approval of the CDP in the midst of these parallel processes would "thwart the goals ... of the Coastal Act."

The Walls challenged the Commission's denial in a petition for writ of administrative mandate. The trial court granted the petition in part, finding that the Commission did not proceed in the manner required by law because it failed to order the Walls to pay a $5,000 in-lieu public access fee in exchange for a CDP. The court also found it unclear whether the Commission's decision conditioned CDP approval on providing actual access to the ocean—something the Walls, as owners of an inland parcel, cannot provide—so clarification on that basis was required. It remanded the case to the Commission with directions to issue the CDP upon payment of the $5,000 fee unless other factual or legal bases for denial were specified.

## DISCUSSION

### Standard of review

 **[3]** The scope of our review from the judgment on the Walls' petition for writ of administrative mandate is the same as that of the trial court. (*Doe v. Westmont College* (2019) 34 Cal.App.5th 622, 634, 246 Cal.Rptr.3d 369.) We review the Commission's decision directly, and independently determine whether the Commission proceeded in excess of jurisdiction, whether it provided a fair hearing, and whether it abused its discretion when it denied the Walls' CDP request. (*Ibid*.; see Code Civ. Proc., § 1094.5, subd. (b).) The Commission abused its discretion if it did not "proceed[ ] in the manner required by law," if its "decision [was] not supported by the findings," or if "the findings [were] not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

### *\*952* Public access to the Walls' property

 **[4]** The Walls first contend the Commission erroneously denied their CDP request based on their failure to provide for public access to their property. The basis for this contention is unclear. Nowhere in the Commission's decision does it cite the Walls' failure to provide public access to their property as a reason for denying their CDP request. Rather, the Commission merely noted that the request lacked provisions for access and recreational opportunities "in a manner consistent with the access policies of the Coastal Act."

The Walls have not shown that the Commission required public access to their property. Indeed, it would defy logic had the Commission imposed such a requirement. The Walls' property is located three-quarters of a mile from the coast. Demanding access to their inland property would do little to advance the Coastal Act's goal of providing public access to the coastline.

287 Cal.Rptr.3d 682, 21 Cal. Daily Op. Serv. 12,560, 2021 Daily Journal D.A.R. 12,856

[5]   That some members of the Commission expressed frustration with Hollister **688 Ranch landowners' prior failures to pay in-lieu public access fees and the fees' failure to ensure public access to the coastline abutting the ranch does not change our conclusion. This court's job is not to " 'delve into the individual purposes of decisionmakers in a quasi-adjudicative proceeding, but rather [to] look to the findings made by the' " Commission and determine whether they are supported by the record. (*City of Perris v. Stamper* (2016) 1 Cal.5th 576, 592, 205 Cal.Rptr.3d 797, 376 P.3d 1221; see also *Landgate, Inc. v. California Coastal Com.* (1998) 17 Cal.4th 1006, 1022, 73 Cal.Rptr.2d 841, 953 P.2d 1188 [court need only determine whether a CDP denial advanced some legitimate purpose].) Moreover, the Walls rely on statements from a minority of Commission members, and do not show that these comments reflect the views of the Commission as a whole.

One of the Act's goals is to provide "public access" to the coastline along Hollister Ranch "in a timely manner." (§ 30610.8, subd. (a).) The Commission members' statements are fairly read as bemoaning that fee requirements have not resulted in meaningful public access over the past four decades. These isolated comments, like the Commission's decision, do not require public access to the Walls' property.[3]

[3]    Because the Commission did not condition approval of the Walls' CDP request on providing public access to their property, we do not consider whether such a condition would be constitutional.

### *953 The in-lieu public access fee

[6]   The Walls next contend the Coastal Act does not allow the Commission to condition approval of a CDP on the payment of a $5,000 in-lieu public access fee. We disagree.

[7]   [8]   [9]   [10]   Whether the Coastal Act requires the Walls to pay a $5,000 in-lieu public access fee for approval of their CDP request presents a question of statutory interpretation for our independent review. (*Western States Petroleum Assn. v. Board*

*of Equalization* (2013) 57 Cal.4th 401, 415, 159 Cal.Rptr.3d 702, 304 P.3d 188.) Our fundamental task is to ascertain the Legislature's intent when it adopted the Act's provisions. (*Pacific Palisades, supra,* 55 Cal.4th at p. 803, 149 Cal.Rptr.3d 383, 288 P.3d 717.) We begin with the words of those provisions, giving them their plain, commonsense meanings. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724, 122 Cal.Rptr.3d 331, 248 P.3d 1185.) We interpret the words in context, harmonizing the Act's provisions whenever possible. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663, 3 Cal.Rptr.3d 390, 74 P.3d 166 (*Mejia*).) If harmonization is not possible, later-enacted and more specific provisions will take precedence over earlier and more general ones. (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960-961, 184 Cal.Rptr.3d 60, 342 P.3d 1217 (*State Dept. of Public Health*).)

[11]   [12]   [13]   We will follow the Act's plain meaning unless doing so would lead to absurd results the Legislature did not intend. (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856, 243 Cal.Rptr.3d 569, 434 P.3d 564.) If we cannot determine that meaning from the statutory language, we will defer to the Commission's interpretation of the Act so long as it is not clearly erroneous. (*REA Enterprises v. California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 611, 125 Cal.Rptr. 201 (*REA Enterprises*).) We may also examine legislative history (*Pacific Palisades, supra,* 55 Cal.4th at p. 803, 149 Cal.Rptr.3d 383, 288 P.3d 717) and "consider the impact of an interpretation **689 on public policy" (*Mejia, supra,* 31 Cal.4th at p. 663, 3 Cal.Rptr.3d 390, 74 P.3d 166). But we can neither insert words into the Act that the Legislature omitted nor omit words the Legislature inserted (Code Civ. Proc., § 1858); our job is not to rewrite statutes to conform to an assumed intent that does not appear from their language (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545, 67 Cal.Rptr.3d 330, 169 P.3d 559).

"Whenever the [C]ommission determines (1) that public access opportunities through an existing subdivided area ... are not adequate to meet the public

Case 2:22-cv-04668-FMO-SK   Document 18-2   Filed 09/01/22   Page 132 of 134   Page ID #:255

Wall v. California Coastal Commission, 72 Cal.App.5th 943 (2021)
287 Cal.Rptr.3d 682, 21 Cal. Daily Op. Serv. 12,560, 2021 Daily Journal D.A.R. 12,856

access requirements of [the Coastal Act] and (2) that individual owners of vacant lots in those areas do not have the legal authority to comply with public access requirements as a condition of securing a [CDP] for the reason that some other person or persons has legal authority, the [C]ommission shall implement public access requirements." (§ 30610.3, subd. (a).) This **\*954** requires the Commission to identify "specific land areas and view corridors to be used for public access, any facilities or other development deemed appropriate, the ... manner in which public access will be managed, and the types of permitted public uses." (*Id.*, subd. (b).) The State Coastal Conservancy then implements the program, using funds deposited in the CAA to "purchase ... lands and view easements and to pay for any development needed to carry out the public access program." (*Id.*, subds. (b) & (c).)

The CAA is funded via in-lieu public access fees: "Every person receiving a [CDP] or a certificate of exemption for development on any vacant lot within [a designated subdivision] shall, prior to the commencement of construction, pay ... an 'in-lieu' public access fee." (§ 30610.3, subd. (e).) For most subdivisions, the amount of this fee is determined by "dividing the cost of acquiring the specified lands and view easements by the total number of lots within the identified area." (*Ibid.*) Acquisition costs, in turn, are based on a formal appraisal of subdivision lands. (*Id.*, subd. (f).) But as noted above, Hollister Ranch landowners prevented state surveyors from undertaking such an appraisal. Thus, to achieve the goal of providing the public access contemplated by section 30610 "in a timely manner" (§ 30610.8, subd. (a)), the Legislature fixed the amount of the in-lieu public access fee for CDPs issued at the Hollister Ranch: "For purposes of [s]ection 30610.3 and with respect to the Hollister Ranch public access program, the in-lieu fee shall be five thousand dollars ($5,000) *for each permit.*" (*Id.*, subd. (b), italics added.) The plain language of this provision clearly and unambiguously permits the Commission to condition approval of the Walls' requested CDP on payment of a $5,000 fee, as the trial court correctly determined.

The Walls disagree, arguing that section 30610.3, subdivision (e), limits imposition of the in-lieu public access fee set forth in section 30610.8, subdivision (b), to developments occurring on vacant lots. This

argument rests on an overly narrow reading of section 30610.8, subdivision (b). The fee the Legislature fixed in that subdivision was not only for purposes of section 30610.3, subdivision (e), as the Walls' argument presumes, but for purposes of that section as a whole and the entire Hollister Ranch public access program. (See § 30610.8, subd. (b).) The goal of section 30610.3 is to provide coastal access in subdivisions like Hollister Ranch and to do so in a timely manner. Given the recent increase of the in-lieu public access fee by more than 500 percent, it would be absurd to conclude that the Legislature believed the timely, public access desired at Hollister Ranch was achievable via a one-time fee applicable **\*\*690** only to initial developments on vacant lots.

The legislative history of relevant Coastal Act provisions reinforces this conclusion. The Legislature enacted section 30610.3 in 1979, requiring in-lieu public access fees for most subdivisions to be based on formal appraisals of **\*955** the costs of acquiring subdivision lands. (See Stats. 1979, ch. 919, § 11.) But because Hollister Ranch landowners blocked the state from undertaking the requisite appraisals, the adequacy of any per-lot, one-time fee was unknown. The Legislature thus fixed the amount of the fee at $5,000. (See Stats. 1982, ch. 43, § 23.) But instead of limiting the fees to "development[s] on any vacant lot" as it had done when adopting section 30610.3, the Legislature instead required a fee "for each permit" (§ 30610.8, subd. (b)). This per-permit fee, specific to Hollister Ranch, takes precedence over the generally applicable per-vacant lot fee set forth in section 30610.3. (📁 *State Dept. of Public Health, supra*, 60 Cal.4th at pp. 960-961, 184 Cal.Rptr.3d 60, 342 P.3d 1217.)

Moreover, had the Legislature intended for in-lieu public access fees to be paid only for the development of vacant lots at Hollister Ranch instead of for each CDP, it would have said so when it amended section 30610.8 in 2019. Prior to the adoption of that amendment, neither LCP Policy 2-15 nor GCP Development Standard REC-3 contained the per-vacant lot limitation the Walls urge us to adopt here. To the contrary, the Commission had consistently interpreted section 30610.8 as requiring the payment of a $5,000 fee for each permit. GCP Development Standard REC-3, for example, specifies that payment

of a $5,000 fee "consistent with [s]ection 30610.8" is required "*as a condition of each [CDP] issued for development in Hollister Ranch*." (Italics added.) The Commission certified this standard while the Legislature was considering Assem. Bill 1680, thereby adopting its interpretation of section 30610.8's fee scheme. And we presume the Legislature was aware of and acquiesced to this interpretation when it declined to alter the "for each permit" language in section 30610.8 the following year. (*Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1017-1018, 9 Cal.Rptr.2d 358, 831 P.2d 798.) Because that interpretation is not clearly erroneous, we must do the same. (*REA Enterprises, supra,* 52 Cal.App.3d at p. 611, 125 Cal.Rptr. 201.)

[14] This interpretation does not render the phrase "on any vacant lot" in subdivision (e) of section 30610.3 mere surplusage, as the Walls claim. (Cf. *People v. Arias* (2008) 45 Cal.4th 169, 180, 85 Cal.Rptr.3d 1, 195 P.3d 103 [courts should avoid statutory interpretations that render words surplusage].) The Walls "confuse[ ] surplusage with inapplicability." (*People v. Betts* (2020) 55 Cal.App.5th 294, 301, 269 Cal.Rptr.3d 563.) "Simply because a [statutory] provision does not apply [in certain instances] does not mean that that provision is surplusage." (*Ibid.*) "[S]urplusage results when a provision *does* apply." (*Ibid.*) Section 30610.3's general scheme for calculating in-lieu public access fees does not apply here.

[15] Finally, we reject the Walls' assertion that we previously adopted the per-vacant lot limitation the Walls advocate here when we decided *Remmenga, supra,* 163 Cal.App.3d 623, 209 Cal.Rptr. 628. Though we said, in dictum, that section 30610.8 **\*956** requires payment a "fee of $5,000 for development of one lot" (*Remmenga,* at p. 628, 209 Cal.Rptr. 628), that passing descriptor did not reflect our interpretation of the statute. Our focus in *Remmenga* was on the constitutionality of the in-lieu public access fees imposed on Hollister Ranch landowners, not the proper interpretation **\*\*691** of the fee provisions at issue here. (See *id.* at pp. 626-627, 209 Cal.Rptr. 628.) "It is axiomatic that cases are not authority for propositions that are not considered." (*California*

*Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043, 232 Cal.Rptr.3d 64, 416 P.3d 53.) The trial court correctly concluded that the Coastal Act requires payment of an in-lieu public access fee for approval of the Walls' CDP.

*Constitutionality of the in-lieu public access fee*

[16] [17] [18] The Walls alternatively contend that even if the Coastal Act requires them to pay a $5,000 in-lieu public access fee for their CDP, imposing that requirement would be unconstitutional. But the Walls did not raise this contention below. To the contrary, in their petition for writ of administrative mandate they alleged that the Commission did not proceed in the manner required by law *when they failed to approve their CDP request subject to payment of the in-lieu fee.* "It is a well-established tenet of appellate jurisprudence that a litigant may not pursue one line of legal argument in the trial court, and having failed in that approach, pursue a different, and indeed, contradictory line of argument on appeal." (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519, 161 Cal.Rptr.3d 728.) " 'Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' [Citation.]" (*Ibid.*) The Walls' contention is waived. (*Ibid.*)

DISPOSITION

The judgment is affirmed. The Commission shall recover its costs on appeal.

We concur:

GILBERT, P. J.

PERREN, J.

**All Citations**

72 Cal.App.5th 943, 287 Cal.Rptr.3d 682, 21 Cal. Daily Op. Serv. 12,560, 2021 Daily Journal D.A.R. 12,856

**Wall v. California Coastal Commission, 72 Cal.App.5th 943 (2021)**

287 Cal.Rptr.3d 682, 21 Cal. Daily Op. Serv. 12,560, 2021 Daily Journal D.A.R. 12,856

---

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.